

553 F.3d 187
553 F.3d 187
 **(Cite as: 553 F.3d 187)**

Page 1

United States Court of Appeals,
Second Circuit.
ECA and LOCAL 134 IBEW JOINT PENSION TRUST OF CHICAGO, Penn Security Bank & Trust Co., Empire Life Insurance Co. and Brian Barry, on behalf of the Barry Family LP, individually, and on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
JP MORGAN CHASE CO., Defendant-Appellee.
**No. 07-1786-cv.**

Heard: Oct. 20, 2008.
Decided: Jan. 21, 2009.

**Background:** Shareholders sued bank for alleged securities violations, contending that they were defrauded by bank's complicity in bankrupt energy company's financial scandals. The United States District Court for the Southern District of New York, Sidney H. Stein, J., 2007 WL 950132, dismissed amended complaint for failure to state claim for relief. Shareholders appealed.

**Holdings:** The Court of Appeals, Paul J. Kelly, Jr., Circuit Judge, held that:
(1) allegations that bank sought to inflate its stock price to reduce cost of its acquisition of another financial institution did not establish motive to defraud strengthening inference of fraudulent intent;
(2) shareholders did not adequately plead that bank knowingly or recklessly failed to comply with accounting standard requiring bank's financial statements to disclose material related-party transactions;
(3) mischaracterization on bank's financial statements of its prepaid transactions with related entity and energy company as trades, rather than loans, was not material misstatement supporting securities fraud claims; and
(4) bank's statements regarding its highly disciplined risk management and its standard-setting reputation for integrity were mere puffery that did not give rise to securities violations.

Affirmed.

West Headnotes

**[1] Securities Regulation 349B ⇌60.51(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(1) k. In General. Most Cited Cases
Any complaint alleging securities fraud must satisfy the heightened pleading requirements of Private Securities Litigation Reform Act (PSLRA) and fraud pleading rule by stating with particularity the circumstances constituting fraud. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(1, 2); Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[2] Securities Regulation 349B ⇌60.18**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
                    349Bk60.18 k. In General. Most Cited Cases
To succeed on securities fraud claim, plaintiff must establish that defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to plaintiff. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[3] Securities Regulation 349B ⇌60.46**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.43 Grounds of and Defenses to Liability

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

349Bk60.46 k. Materiality of Violation. Most Cited Cases

The materiality of a misstatement, for purposes of securities fraud claim, depends upon whether there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[4] Securities Regulation 349B ⚿60.28(11)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
           349BI(C)7 Fraud and Manipulation
                349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
                    349Bk60.28 Nondisclosure; Insider Trading
                       349Bk60.28(10) Matters to Be Disclosed
                          349Bk60.28(11) k. Materiality. Most Cited Cases

For misstatement underlying securities fraud claim to be "material," there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[5] Securities Regulation 349B ⚿60.46**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
           349BI(C)7 Fraud and Manipulation
                349Bk60.43 Grounds of and Defenses to Liability
                    349Bk60.46 k. Materiality of Violation. Most Cited Cases

Determination of whether alleged misrepresentation underlying securities fraud claim is material necessarily depends upon all relevant circumstances. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[6] Securities Regulation 349B ⚿60.46**

349B Securities Regulation
    349BI Federal Regulation

        349BI(C) Trading and Markets
           349BI(C)7 Fraud and Manipulation
                349Bk60.43 Grounds of and Defenses to Liability
                    349Bk60.46 k. Materiality of Violation. Most Cited Cases

**Securities Regulation 349B ⚿60.70**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
           349BI(C)7 Fraud and Manipulation
                349Bk60.70 k. Questions of Law or Fact; Jury Questions. Most Cited Cases

Given that materiality of misstatement underlying securities fraud claim is a mixed question of law and fact, complaint may not be dismissed for failure to state claim upon which relief may be granted on the ground that alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[7] Securities Regulation 349B ⚿60.45(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
           349BI(C)7 Fraud and Manipulation
                349Bk60.43 Grounds of and Defenses to Liability
                    349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
                       349Bk60.45(1) k. In General. Most Cited Cases

Defendant's requisite state of mind for securities fraud claim is an intent to deceive, manipulate, or defraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[8] Securities Regulation 349B ⚿60.45(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
           349BI(C)7 Fraud and Manipulation
                349Bk60.43 Grounds of and Defenses to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Liability
          349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
            349Bk60.45(1) k. In General. Most Cited Cases

In addition to fraudulent intent, recklessness is a sufficiently culpable mental state for securities fraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[9]** Securities Regulation 349B ⚷60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.43 Grounds of and Defenses to Liability
            349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
              349Bk60.45(1) k. In General. Most Cited Cases

"Recklessness," when serving as mental state for securities fraud, is defined as, at the least, an extreme departure from the standards of ordinary care to the extent that the danger was either known to defendant or so obvious that defendant must have been aware of it. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[10]** Securities Regulation 349B ⚷60.51(2)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
            349Bk60.51 In General
              349Bk60.51(2) k. Scienter. Most Cited Cases

To qualify as strong inference of scienter satisfying pleading requirements of Private Securities Litigation Reform Act (PSLRA), inference of scienter must be more than merely plausible or reasonable, and instead must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2).

**[11]** Securities Regulation 349B ⚷60.51(2)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
            349Bk60.51 In General
              349Bk60.51(2) k. Scienter. Most Cited Cases

In determining whether strong inference of scienter required in pleading securities fraud claim under Private Securities Litigation Reform Act (PSLRA) can be reasonably drawn, courts must consider both the inferences urged by plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collectively, asking whether, when the allegations are accepted as true and taken collectively, a reasonable person would deem the inference of scienter at least as strong as any opposing inference. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[12]** Securities Regulation 349B ⚷60.51(2)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
            349Bk60.51 In General
              349Bk60.51(2) k. Scienter. Most Cited Cases

To give rise to strong inference of scienter satisfying pleading requirements for securities fraud claims set forth in Private Securities Litigation Reform Act (PSLRA), facts alleged must support an inference of an intent to defraud plaintiffs, rather than some other group. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[13]** Securities Regulation 349B ⚷60.51(2)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
            349Bk60.51 In General
              349Bk60.51(2) k. Scienter. Most

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Cited Cases

Strong inference of scienter required by Private Securities Litigation Reform Act (PSLRA) in pleading securities fraud claim can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[14] Securities Regulation 349B ⚷60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 In General
                  349Bk60.51(2) k. Scienter. Most Cited Cases

To raise a strong inference of scienter through showing of motive and opportunity to defraud, in alleging securities fraud claim, plaintiffs must allege that defendant corporation or its officers benefited in some concrete and personal way from the purported fraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[15] Securities Regulation 349B ⚷60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 In General
                  349Bk60.51(2) k. Scienter. Most Cited Cases

Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute "motive" for purposes of establishing scienter, in support of securities fraud claim, through allegations of defendants' motive and opportunity to commit fraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[16] Securities Regulation 349B ⚷60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 In General
                  349Bk60.51(2) k. Scienter. Most Cited Cases

"Motive" showing is generally met, in pleading scienter element of securities fraud claim through allegations of defendants' motive and opportunity to commit fraud, when corporate insiders allegedly make a misrepresentation to sell their own shares at a profit. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[17] Securities Regulation 349B ⚷60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 In General
                  349Bk60.51(2) k. Scienter. Most Cited Cases

When securities fraud plaintiffs cannot make "motive" showing in support of claim's scienter element, they may raise requisite strong inference of scienter through strong circumstantial evidence of conscious misbehavior or recklessness, although the strength of the circumstantial allegations must be correspondingly greater if there is no motive. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[18] Securities Regulation 349B ⚷60.51(2)**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

       349Bk60.50 Pleading
         349Bk60.51 In General
           349Bk60.51(2) k. Scienter. Most Cited Cases

At least four circumstances may give rise to strong inference of scienter required in pleading securities fraud claim: when complaint sufficiently alleges that defendants (1) benefited in concrete and personal way from purported fraud, (2) engaged in deliberately illegal behavior, (3) knew facts or had access to information suggesting that their public statements were not accurate, or (4) failed to check information they had a duty to monitor. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[19]** Securities Regulation 349B ⚖ 60.51(2)

349B Securities Regulation
    349BI Federal Regulation
       349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
              349Bk60.51 In General
                 349Bk60.51(2) k. Scienter. Most Cited Cases

Securities and Exchange Commission (SEC) charges are not a prerequisite to pleading recklessness, in support of scienter element of securities fraud claim, with regard to accounting and financial reporting violations. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[20]** Securities Regulation 349B ⚖ 60.51(2)

349B Securities Regulation
    349BI Federal Regulation
       349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
              349Bk60.51 In General
                 349Bk60.51(2) k. Scienter. Most Cited Cases

Allegations of violations of generally accepted accounting principles (GAAP) or accounting irregularities, standing alone, are insufficient to state a securities fraud claim; only when such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[21]** Securities Regulation 349B ⚖ 60.51(2)

349B Securities Regulation
    349BI Federal Regulation
       349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
              349Bk60.51 In General
                 349Bk60.51(2) k. Scienter. Most Cited Cases

Desire to maximize corporation's profits does not strengthen inference of an intent to defraud for purposes of scienter element of securities fraud claim asserted by corporation's shareholders, inasmuch as earning "excessive" fees in a competitive marketplace benefits, rather than defrauds, shareholders. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[22]** Securities Regulation 349B ⚖ 60.51(2)

349B Securities Regulation
    349BI Federal Regulation
       349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
           349Bk60.50 Pleading
              349Bk60.51 In General
                 349Bk60.51(2) k. Scienter. Most Cited Cases

Allegations that bank sought to inflate its stock price to reduce cost of its acquisition of another financial institution did not establish motive to defraud in support of scienter element of shareholders' securities fraud claim based upon bank's failure to disclose related-party transactions as such in its financial statements, given shareholders' failure to allege a connection between related-party transactions and acquisition of institution; at most, shareholders alleged generalized desire to achieve lucrative acquisition proposal. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[23]** Securities Regulation 349B ⚖ 60.51(2)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(2) k. Scienter. Most Cited Cases

Shareholders' allegations that bank principals had motive to defraud due to their receipt of bonuses on corporate earnings and higher stock prices did not strengthen inference of fraudulent intent supporting, through showing of motive and opportunity to defraud, scienter element of securities fraud claim based upon bank's failure to disclose, as such, related-party transactions in its financial statements, given shareholders' failure to allege direct link between principals' compensation and bank's misleading statements. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[24] Securities Regulation 349B ⚖ 60.51(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(2) k. Scienter. Most Cited Cases

Shareholders did not adequately plead that bank knowingly or recklessly failed to comply with accounting standard requiring bank's financial statements to disclose material related-party transactions, and thus failed to raise strong inference of scienter supporting securities fraud claim based on circumstantial evidence of misbehavior, when shareholders alleged that bank knew that entity with which it engaged in prepay transactions involving energy company was related party but did not sufficiently allege that such transactions, which involved only minute fraction of assets on bank's balance sheets, were material, such that bank knew or should have known that it was required to make related-party disclosures; although shareholders contended that such disclosures would have revealed bank's alleged duplicity in its transactions with energy company, facts alleged did not provide basis for finding that such a chain reaction would have occurred. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2); 17 C.F.R. § 240.10b-5(b).

**[25] Securities Regulation 349B ⚖ 60.51(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(1) k. In General. Most Cited Cases

Shareholders that failed to adequately plead that transactions between bank and related entity were material, so as to raise strong inference of scienter based upon bank's alleged violation of financial accounting standard requiring disclosure of material related-party transactions, likewise failed to plead materiality element of securities fraud claim based upon bank's failure to disclose entity as related party in its financial statements. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[26] Securities Regulation 349B ⚖ 60.51(2)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 In General
                        349Bk60.51(2) k. Scienter. Most Cited Cases

In alleging that bank concealed its loan transactions with energy company in return for excessive fees, bank's shareholders failed to show an intent to defraud them, as required to state securities fraud claim against bank, as opposed to an intent to defraud energy company's shareholders, in that bank's alleged receipt of excessive fees inured to benefit of its shareholders. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[27] Securities Regulation 349B ⚖ 60.46**

349B Securities Regulation

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

349BI Federal Regulation
    349BI(C) Trading and Markets
      349BI(C)7 Fraud and Manipulation
        349Bk60.43 Grounds of and Defenses to Liability
          349Bk60.46 k. Materiality of Violation. Most Cited Cases

Mischaracterization on bank's financial statements of its prepaid transactions involving related entity and energy company as trades, rather than loans, was not material misstatement supporting securities fraud claim of bank's shareholders, notwithstanding contentions that misclassification concealed bank's collaboration in energy company's illegal activities and proper characterization would have revealed them, given that reclassification involved approximately 0.3% of bank's total assets, that underlying assets in either classification carried some default risk, that transactions were not alleged to be illegal, that transactions with energy company were not significant aspect of bank's operations, and that shareholders did not show that bank expected misclassification to result in significant market reaction, or that proper accounting would have exposed bank's dealings with energy company. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[28] Securities Regulation 349B ⚿ 60.27(4)**

349B Securities Regulation
    349BI Federal Regulation
      349BI(C) Trading and Markets
        349BI(C)7 Fraud and Manipulation
          349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
            349Bk60.27 Misrepresentation
              349Bk60.27(4) k. Facts or Opinions. Most Cited Cases

Investment bank's statements regarding its highly disciplined risk management and its standard-setting reputation for integrity were mere puffery that did not give rise to securities violations, notwithstanding contention of bank's shareholders that statements were misleading and would necessarily be relied upon by a reasonable investor, and thus were per se material, inasmuch as statements were too general to cause reasonable investor to rely upon them, and could not amount to guarantee that bank's choices would prevent failures in its risk management practices. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[29] Securities Regulation 349B ⚿ 60.40**

349B Securities Regulation
    349BI Federal Regulation
      349BI(C) Trading and Markets
        349BI(C)7 Fraud and Manipulation
          349Bk60.39 Persons Liable
            349Bk60.40 k. In General; Control Persons. Most Cited Cases

Shareholders' failure to adequately plead securities fraud claim precluded their claim for control person liability. Securities Exchange Act of 1934, §§ 10(b), 20(a), 15 U.S.C.A. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b-5.

**\*192** Craig Spiegel (Steve W. Berman, Erin K. Flory, Hagens, Berman, Sobol, Shapiro, L.L.P, Seattle, WA, Joseph H. Weiss, David C. Katz, Richard Acocelli, Weiss & Lurie, New York City, on the briefs), for Plaintiffs-Appellants.

Bruce D. Angiolillo (Thomas C. Rice, George S. Wang, Simpson, Thacher, & Bartlett, L.L.P., New York City, on the brief), for Defendant-Appellee.

**\*193** Before KEARSE, SACK, and KELLY,[FN*] Circuit Judges.

    FN* The Honorable Paul J. Kelly, Jr., of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

PAUL J. KELLY, JR., Circuit Judge.

Plaintiffs, shareholders of JP Morgan Chase & Co. (JPMC), appeal from a judgment of the United States District Court for the Southern District of New York, Sidney H. Stein, District Judge, granting JPMC's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. The basis of Plaintiffs' claim, in essence, was that they were defrauded by JPMC's complicity in Enron Corporation's financial scandals. In March 2005, the district court dismissed without prejudice Plaintiffs' First Amended Complaint (FAC) for failure to sufficiently allege scienter for all but the allegations involving JPMC's improper characterization of certain transactions (the "Mahonia transactions") as trades, and for failure to plead materiality adequately with regard to that allegation. *See In re JP Morgan Chase Sec. Litig.*, 363 F.Supp.2d 595, 619-34

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(S.D.N.Y.2005) ("*JP Morgan Chase I*"). Plaintiffs then filed a Second Amended Complaint (SAC). Again, however, the district court concluded that Plaintiffs had only sufficiently pleaded scienter with respect to JPMC's characterization of the Mahonia transactions, but that these transactions were not material. Accordingly, the district court dismissed the second amended complaint for failure to state a claim, this time with prejudice. In re JP Morgan Chase Sec. Litig., No. 02 Civ. 1282, 2007 WL 950132, at *15 (S.D.N.Y. Mar. 29, 2007) ("*JP Morgan Chase II*"). Plaintiffs now appeal the district court's dismissal. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

*Background*

The facts preceding this appeal, including the precise nature of the allegations contained in the first and second amended complaints, have been exhaustively set forth in the district court's opinions below. *See JP Morgan Chase I*, 363 F.Supp.2d at 602-14; *JP Morgan Chase II*, 2007 WL 950132, at *1-10. Therefore, we will set forth only a brief recitation of the factual background to this appeal. Because this case presents an appeal from a Fed.R.Civ.P. 12(b)(6) dismissal, the factual allegations in the complaint must be accepted as true. In re Carter-Wallace, Inc., Sec. Litig., 220 F.3d 36, 38 (2d Cir.2000).

A. The First Amended Complaint

In their FAC, Plaintiffs alleged that JPMC [FN1] and two of its officers, William Harrison, Jr., and Marc J. Shapiro, defrauded JPMC shareholders by making deliberate misrepresentations that artificially inflated the price of JPMC stock and ultimately led to a collapse of JPMC's share price. JP Morgan Chase I, 363 F.Supp.2d at 601-03. Plaintiffs alleged that JPMC created disguised loans for Enron and concealed the nature of these transactions by making false statements or omissions of material fact in its accounting and Securities and Exchange Commission (SEC) filings. Id. According to the complaint, JPMC created "Special Purpose Entities," among them an entity called Mahonia Ltd., to facilitate disguised loan transactions with Enron Corporation. ***194**Id. at 602-04; FAC ¶¶ 42, 58-61. Allegedly, the creation of Mahonia enabled Enron to conceal its debt from investors because Enron could report the cash flow from JPMC through Mahonia to Enron as revenue from prepaid commodity trades rather than as loan proceeds. JP Morgan Chase I, 363 F.Supp.2d at 604; FAC ¶¶ 61, 67-69.

> FN1. Except as necessary for clarification, we refer to the defendant as JPMC even though some of the alleged activities were undertaken by JPMC's predecessor, The Chase Manhattan Corporation. Chase Manhattan merged with JP Morgan to create JPMC prior to this litigation and, therefore, the corporate defendant can be discussed as one entity for most purposes.

Essentially, Mahonia borrowed money from JPM Chase and used that money to buy gas from Enron; Mahonia would then satisfy its debt to JPM Chase by providing the gas to JPM Chase, which would resell the gas at a fixed future price back to Enron. In reality ... neither the physical commodity nor title to it were ever intended to be transferred.

JP Morgan Chase I, 363 F.Supp.2d at 604; *see also* FAC ¶¶ 71-74. According to the complaint, the commodity transactions lacked economic substance; while a financially settled commodity swap would eliminate any price risk, the economic reality is that the transactions were loans. FAC ¶¶ 73-74. Furthermore, JPMC cooperated with Enron in these deceptive practices by mischaracterizing the transactions on its financial statements as trading assets rather than as loans. JP Morgan Chase I, 363 F.Supp.2d at 604-05; FAC ¶¶ 77-80. In return, JPMC earned exorbitant fees. JP Morgan Chase I, 363 F.Supp.2d at 602; FAC ¶¶ 49-50, 55. Moreover, the complaint alleged that JPMC repeatedly assured investors that it maintained high standards of integrity and credit-risk management throughout the period during which it engaged in transactions with Enron. JP Morgan Chase I, 363 F.Supp.2d at 608-09, 612; FAC ¶¶ 153-57, 161-62, 168-73. Following the collapse of Enron, however, the Senate investigated JPMC's role in Enron's fraudulent practices and concluded that JPMC had knowingly engaged in and actively assisted Enron in its sham transactions; the resulting disclosures caused JPMC's stock to suffer significant losses. JP Morgan Chase I, 363 F.Supp.2d at 608, 613-14; FAC ¶¶ 22, 357-72.

In sum, the FAC alleged that JPMC defrauded its shareholders by, inter alia, downplaying its En-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ron-related exposure, failing to disclose alleged violations of law in connection with the Mahonia and other transactions, falsely portraying itself as a low-risk company with a reputation for fiscal discipline and integrity, and improperly accounting for the Mahonia prepays as viable trades rather than as impaired loans on its financial statements (thereby failing to disclose the credit risk). See *JP Morgan Chase II,* 2007 WL 950132, at *2.

The district court evaluated the allegations in light of the heightened pleading standard under Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act (PSLRA) and found that the FAC failed to plead with the requisite particularity that JPMC made a materially false statement or omitted a material fact, with scienter. *JP Morgan Chase I,* 363 F.Supp.2d at 619-34. First, the court found that Plaintiffs had failed to allege scienter with any of the allegations, except the alleged improper accounting of the Mahonia transactions as trades rather than loans.[FN2] *Id.; see JP Morgan Chase II,* 2007 WL 950132, at *3-5. However, the court found that the allegedly improper accounting of the Mahonia transactions as trades rather than loans was not material. *JP Morgan Chase I,* 363 F.Supp.2d at 630-31; *see JP Morgan Chase II,* 2007 WL 950132, at *5. Accordingly, the court held that the FAC failed to state a claim pursuant to section 10(b) of the Securities and Exchange Act **195** of 1934 (Exchange Act), 15 U.S.C. § 78j. *JP Morgan Chase I,* 363 F.Supp.2d at 634. The court also dismissed Plaintiffs' other claims for relief, which included claims under section 15 of the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77o; section 11 of the Securities Act, 15 U.S.C. § 77k; and section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a). *Id.* at 635-36. Because the district court dismissed the claims without prejudice, Plaintiffs were permitted to file the SAC.

> FN2. The district court only found adequate allegations of scienter in regard to JPMC and Mr. Shapiro, not Mr. Harrison. *JP Morgan Chase I,* 363 F.Supp.2d at 627-28.

B. The Second Amended Complaint

As the district court noted in *JP Morgan Chase II,* the SAC consisted mostly of the same allegations present in the FAC, with three general exceptions. The SAC made new allegations relating to (1) JPMC's alleged downplaying of its Enron-related exposure, (2) JPMC's alleged misrepresentation of its integrity and risk management, and (3) the allegedly faulty reporting of the Mahonia transactions. *JP Morgan Chase II,* 2007 WL 950132, at *6. The latter two are of the most importance here.

The SAC included new material on Plaintiffs' allegation that JPMC had misrepresented its integrity. The SAC pointed to charges in the SEC's civil lawsuit against JPMC accusing JPMC of aiding and abetting Enron, to Senate hearings where JPMC was accused of "actively assist[ing] Enron," and to JPMC's underwriting of securities issued by WorldCom, *see generally In re WorldCom, Inc., Sec. Litig.,* 294 F.Supp.2d 392, 399-400, 403-404 (S.D.N.Y.2003), to show that JPMC, in fact, lacked integrity and did not conduct adequate due diligence as claimed in its statements on sound risk management. *Id.* at *7; SAC ¶¶ 636-39, 587-604, 188-240. The district court again dismissed Plaintiffs' allegations regarding JPMC's statements on its integrity and risk management strategy as mere "puffery." *JP Morgan Chase II,* 2007 WL 950132, at *12. The district court noted that even if these statements were not puffery, they would not be material. *Id.* Finally, the district court added that the SAC's new focus on the SEC investigation, the Senate testimony, and the WorldCom evidence was misguided because those statements pertained to misleading Enron and WorldCom shareholders, not JPMC shareholders. *Id.*

The SAC also included new allegations relating to Plaintiffs' contention that JPMC made material misstatements in reporting its transactions with Mahonia as viable trading assets. *Id.* at **8-9. Of particular importance here, the SAC alleged that not only were the Mahonia transactions wrongfully stated as viable trades rather than impaired loans, but they also should have been reported as "related-party transactions" in order to comply with Statement of Financial Accounting Standards No. 57 (SFAS 57). *Id.;* SAC ¶¶ 242-54; *see also* Related Party Disclosures, Statement of Fin. Accounting Standards No. 57 (Fin. Accounting Standards Bd.1982). Plaintiffs alleged that if JPMC had reported the Mahonia transactions as related-party transactions, it would have led to a chain reaction which would have revealed Enron's deceptive finances and JPMC's alleged complicity. *JP Morgan Chase II,* 2007 WL 950132, at *9; SAC ¶¶ 249-54. The district court rejected this argument. It found that Plaintiffs properly pleaded that Mahonia was a "related party"

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

pursuant to SFAS 57, and that JPMC may have violated generally accepted accounting principles (GAAP) by not reporting the Mahonia transactions as such. *JP Morgan Chase II,* 2007 WL 950132, at *13. But, the court noted that merely alleging a GAAP violation is insufficient to establish scienter, and that Plaintiffs had not alleged any facts suggesting fraudulent intent in the **\*196** GAAP violation. *Id.* (citing *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir.2000)). In finding a lack of scienter, the district court noted that the SEC had not charged JPMC with a violation for failing to comply with SFAS 57, suggesting that this defeated any claim of recklessness because it showed that reasonable accountants could differ as to whether SFAS 57 applied to the Mahonia transactions. *Id.* The district court then noted that even had scienter been proven, the failure to disclose these transactions as related-party transactions would not have been material. According to the district court, the percentage of JPMC's assets at issue was "quantitatively immaterial," and, despite Plaintiffs' "sweeping" allegations that proper disclosure would have brought about discovery of Enron's fraud, Plaintiffs provided no support explaining how the proper disclosure would have exposed the fraud. *Id.* at *14.

Having found that the SAC did not sufficiently allege that JPMC acted with scienter in making any material representations or omissions in connection with the purchase or sale of securities, the district court dismissed Plaintiffs' claims with prejudice. *Id.* at *15. Plaintiffs appeal the dismissal, presenting several issues. First, Plaintiffs contend that the district court erred by holding that JPMC's financial reporting concerning the Mahonia transactions and assertions regarding its integrity and risk management were immaterial. Second, Plaintiffs contend that the district court erred by holding that Plaintiffs did not adequately plead scienter. Third, Plaintiffs contend that, because we should find materiality and scienter, the district court erroneously dismissed their additional claims, asserted under sections 11 and 15 of the Securities Act and sections 14(a) and 20 of the Exchange Act.

*Discussion*

[1] We review de novo the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 194 (2d Cir.2008); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 & n. 2 (2d Cir.2007) (applying the Twombly standard in the context of a securities fraud claim). Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed.R.Civ.P. 9(b) by stating with particularity the circumstances constituting fraud. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2508, 168 L.Ed.2d 179 (2007); *ATSI Commc'ns,* 493 F.3d at 99. Under the PSLRA, the complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2); *Tellabs,* 127 S.Ct. at 2508. Therefore, "[w]hile we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss," the PSLRA "establishes a more stringent rule for inferences involving scienter" because the PSLRA requires particular allegations giving rise to a strong inference of scienter. *Teamsters Local,* 531 F.3d at 194.

**\*197** *I. Overview of Applicable Law*

[2] Plaintiffs' principal securities fraud claims are brought pursuant to section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). This provision makes it unlawful to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may proscribe." *Id.* The SEC rule implementing the statute, Rule 10b-5, prohibits "mak[ing] any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b) (2008). In order to succeed on a claim, a "plaintiff must establish that 'the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

reliance on the defendant's action caused injury to the plaintiff.' " *Lawrence v. Cohn,* 325 F.3d 141, 147 (2d Cir.2003) (quoting *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000)); *see Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir.2005); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808 (2d Cir.1996). In this case, the parties contest whether the complaint adequately alleges (1) a false statement or omission of material fact, and (2) scienter.

*A. Materiality*

[3][4][5][6] In order to determine whether a misleading statement is material, courts must engage in a fact-specific inquiry. *Basic Inc. v. Levinson,* 485 U.S. 224, 240, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The materiality of a misstatement depends on whether " 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act].' " *Id.* at 231-32, 108 S.Ct. 978 (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). In other words, in order for the misstatement to be material, " 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " *Id.* (quoting *TSC Indus.,* 426 U.S. at 449, 96 S.Ct. 2126). Therefore, the determination of whether an alleged misrepresentation is material necessarily depends on all relevant circumstances. *Ganino,* 228 F.3d at 162. Because materiality is a mixed question of law and fact, in the context of a Fed.R.Civ.P. 12(b)(6) motion, " 'a complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.' " *Id.* (quoting *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985)) (alteration in original).

The SEC has provided internal guidance in Staff Accounting Bulletin (SAB) No. 99 regarding the determination of materiality. According to SAB No. 99, both quantitative and qualitative factors should be considered in assessing a statement's materiality. SAB No. 99 begins the analysis with the quantitative factor. Under this factor, the SEC considers the financial magnitude of the misstatement; while SAB No. 99 suggests a percentage threshold below which the amount is presumptively immaterial, the SEC notes that the challenged amount can be material even though it is below that percentage threshold of assets, liabilities, revenues or net income. *See* SEC Staff Accounting Bulletin No. 99, 64 Fed.Reg. 45150, 45150-52 (1999). SAB No. 99 also sets out qualitative factors **\*198** such as, inter alia, (1) concealment of an unlawful transaction, (2) significance of the misstatement in relation to the company's operations, and (3) management's expectation that the misstatement will result in a significant market reaction. *See id.* This Court has deemed SAB No. 99 to be persuasive authority. *Ganino,* 228 F.3d at 163. While SAB No. 99 does not change the standard of materiality, we consider the factors it sets forth in determining whether the misstatement significantly altered the "total mix" of information available to investors.

*B. Scienter*

[7][8][9] In order to plead scienter adequately under the PSLRA, a plaintiff must plead "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). The requisite state of mind in a section 10(b) and Rule 10b-5 action is an intent " 'to deceive, manipulate, or defraud.' " *Tellabs,* 127 S.Ct. at 2504 (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). In addition to intent, recklessness is a sufficiently culpable mental state for securities fraud in this circuit. *Teamsters Local,* 531 F.3d at 194; *see also Novak,* 216 F.3d at 308-09. Recklessness is defined as " 'at the least, ... an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' " *Novak,* 216 F.3d at 308 (quoting *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.1978)) (other internal quotation marks omitted)).

[10][11][12] According to *Tellabs,* to qualify as a " 'strong inference,' " the inference of scienter must be "more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,* 127 S.Ct. at 2504-05 (quoting 15 U.S.C. § 78u-4(b)(2)). In determining whether this inference can be reasonably drawn, courts must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged, taken collec-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tively. *Id.* at 2504, 2509. Therefore, the court must ask, "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 2511. Moreover, the facts alleged must support an inference of an intent to defraud the plaintiffs rather than some other group. *Kalnit v. Eichler,* 264 F.3d 131, 140-41 (2d Cir.2001).

[13][14][15][16][17][18] The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *Ganino,* 228 F.3d at 168-69; *Novak,* 216 F.3d at 307. In order to raise a strong inference of scienter through "motive and opportunity" to defraud, Plaintiffs must allege that JPMC or its officers "benefitted in some concrete and personal way from the purported fraud," *Novak,* 216 F.3d at 307-08. Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute "motive" for purposes of this inquiry. *Id.* at 307; *Kalnit,* 264 F.3d at 139. Rather, the "motive" showing is generally met when corporate insiders allegedly make a misrepresentation in order to sell their own shares at a profit. *Novak,* 216 F.3d at 308. Alternatively, if Plaintiffs cannot make the "motive" showing, then they could raise a *199 strong inference of scienter under the "strong circumstantial evidence" prong, "though the strength of the circumstantial allegations must be correspondingly greater" if there is no motive. *Kalnit,* 264 F.3d at 142 (quoting *Beck v. Mfrs. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), overruled on other grounds by *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (en banc)). At least four circumstances may give rise to a strong inference of the requisite scienter: where the complaint sufficiently alleges that the defendants (1) "benefitted in a concrete and personal way from the purported fraud"; (2) "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information suggesting that their public statements were not accurate"; or (4) "failed to check information they had a duty to monitor." *Novak,* 216 F.3d at 311; *see Teamsters Local,* 531 F.3d at 194.

II. Application of the Law to Plaintiffs' Allegations

A. JPMC's Financial Accounting

On appeal, Plaintiffs contend that JPMC made false and misleading statements or omissions that were material by (1) failing to report the Mahonia transactions as related-party transactions, and (2) reporting the Mahonia transactions as trading assets rather than loans. Plaintiffs' complaint pled that JPMC's financial reports were false and misleading with regard to the Mahonia transactions because JPMC did not report them as related-party transactions.[FN3] SAC ¶¶ 242-54. Specifically, the complaint pled that the failure to identify the Mahonia transactions as related-party transactions violated GAAP because SFAS No. 57 required JPMC to disclose related-party transactions. *Id.* Plaintiffs contend that the GAAP violation renders the financial statements presumptively misleading. In addition, Plaintiff's complaint pled that JPMC's accounting of disguised loans as "trading activities" rather than as loans constitutes a false statement. SAC ¶¶ 450-52. Again, the complaint refers to the failure to conform to GAAP and Plaintiffs note that the violation renders the misstatement presumptively misleading. *Id.*

> FN3. According to one text, "[t]he potential problem with related-party transactions is that their economic substance may differ from their legal form.... As a result of the potential for misrepresentation, financial statement users are particularly interested in more details about these transactions." J. David Spiceland, James F. Sepe, Mark W. Nelson & Lawrence A. Tomassini, I Intermediate Accounting 124 (5th ed.2009). According to another text, "[a] transaction with a related party is not an arm's-length transaction.... Most auditors assess inherent risk as high for related parties and related party transactions, both because of the accounting disclosure requirements and the lack of independence between the parties involved in the transaction." Alvin A. Arens, Randal J. Elder, Mark S. Beasley, Auditing and Assurance Services 216 (12th ed.2008).

1. Failure to Report Mahonia as a Related Party

[19][20] Plaintiffs' essential claim with regard to the failure to disclose Mahonia as a related party is that JPMC violated SFAS 57, which requires that "[f]inancial statements shall include disclosures of

material related party transactions." [FN4] Related Party Disclosures, SFAS No. 57 ¶ 2 (Fin. Accounting Standards Bd.1982). The district court held that Plaintiffs adequately ***200** pled a false or misleading statement because they alleged that JPMC "created, controlled, and made decisions on behalf of Mahonia." *JP Morgan Chase II,* 2007 WL 950132, at *13. We agree that Plaintiffs alleged with particularity that Mahonia was a related party. We also agree with the district court that Plaintiffs failed to allege scienter.[FN5] *Id.* "[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.... Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *Novak,* 216 F.3d at 309 (internal quotation marks omitted). Even if there was a GAAP violation, that corresponding evidence is missing here.

> FN4. "When related-party transactions occur, companies must disclose the nature of the relationship, provide a description of the transactions, report the dollar amounts of the transactions and any amounts due from or to related parties." J. David Spiceland et al., I Intermediate Accounting 124 (citing Related Party Disclosures, SFAS No. 57 (Fin. Accounting Standards Bd.1982)).

> FN5. However, we disagree to some extent with the district court's reasoning. The court stated that the fact that the SEC had not charged JPMC with wrongly accounting for these transactions shows that reasonable accountants could differ as to whether SFAS 57 applied in these circumstances-and, therefore, that JPMC had not acted recklessly. *JP Morgan Chase II,* 2007 WL 950132, at *13. SEC charges simply are not a prerequisite to pleading recklessness with regard to accounting and financial reporting violations.

*a. Motive and Opportunity*

Plaintiffs advance several allegations which, they argue, demonstrate an adequate motive. First, Plaintiffs argue that JPMC was motivated by a desire to secure above-market interest rates and fees from Enron. SAC ¶¶ 702-24. JPMC allegedly charged an interest rate that was three percent higher than its normal rate and earned excessive fees from other transactions with Enron. SAC ¶¶ 706-09. Second, Plaintiffs suggest that there was motive to defraud because The Chase Manhattan Corporation was inflating its stock in anticipation of acquiring JP Morgan in the merger that ultimately resulted in the creation of JPMC. SAC ¶¶ 673-75. Plaintiffs argue that the allegedly artificially inflated stock allowed it to complete the merger without issuing as many shares as it would have had to issue otherwise. Third, Plaintiffs suggest that the individual defendants in the case, Mr. Harrison and Mr. Shapiro, had motive to defraud because they sought to increase their compensation and bonuses. Plaintiffs allege that the individual defendants secured significant performance-based compensation benefits based on Chase's bargain purchase of JP Morgan and based on JPMC's Enron transactions. SAC ¶¶ 696-98.

[21] Each of Plaintiffs' arguments fails. First, the desire to maximize the corporation's profits does not strengthen the inference of an intent to defraud because earning "excessive" fees in a competitive marketplace (for as long as it lasts)-far from defrauding the shareholders-actually benefits the shareholders. Earning profits for the shareholders is the essence of the duty of loyalty, and therefore it would be an unusual case where accomplishment of this objective constitutes the requisite motive to defraud the shareholders. This is not such a case. Plaintiff's argument to the contrary, based on *In re Livent, Inc. Noteholders Sec. Litig.,* 174 F.Supp.2d 144 (S.D.N.Y.2001), is unavailing. In that case, while the court did find that the excessive fees the investment bank received provided a strong inference of intent to defraud, the bank's shareholders did not bring the suit; rather, the shareholders of the company being charged excessive fees brought the suit. *Id.* at 151-53. Therefore, the case is inapposite; while it supports the contention that excessive fees show motive to defraud *another* company's shareholders, it does not support the argument that excessive **\*201** fees show motive to defraud a company's *own* shareholders.

[22] Second, in alleging that Chase inflated its stock price in order to reduce the cost of acquiring JP Morgan, Plaintiffs failed to allege a connection between the Enron dealings and the acquisition. While Plaintiffs rely on *Cohen v. Koenig,* 25 F.3d 1168, 1170-71, 1173-74 (2d Cir.1994), that case is inapplicable because it involved misstatements directly relating to the acquisition of another company. Here, the fact that the alleged misstatements began eight years

before the acquisition and ended years afterward renders any connection between the events dubious at best. At most, Plaintiffs allege a generalized desire to achieve a lucrative acquisition proposal. Such generalized desires fail to establish the requisite scienter because "the desire to achieve the most lucrative acquisition proposal can be attributed to virtually every company seeking to be acquired," Kalnit, 264 F.3d at 141, or to acquire another. In this case, the link between the acquisition and the alleged misconduct simply is not close enough to strengthen the inference of an intent to defraud.[FN6]

> FN6. We acknowledge that the artificial inflation of stock prices in order to acquire another company may, "in some circumstances," be sufficient for scienter. Rothman v. Gregor, 220 F.3d 81, 92-94 (2d Cir.2000). But the inquiry is an "extremely contextual one," In re Complete Mgmt. Inc. Secs. Litig., 153 F.Supp.2d 314, 328 (S.D.N.Y.2001), and in this case Plaintiffs simply did not allege a unique connection between the fraud and the acquisition.

[23] Finally, the allegation that Mr. Harrison and Mr. Shapiro had the requisite motive because they received bonuses based on corporate earnings and higher stock prices does not strengthen the inference of fraudulent intent. See Kalnit, 264 F.3d at 139; Novak, 216 F.3d at 307-08. Again, Plaintiffs do not make the particularized showing that existed in the case on which they rely. In Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 661-62 (8th Cir.2001), the plaintiffs made a showing of a direct link between the compensation package and the fraudulent statements because of the magnitude of the compensation and the defendants' motive to sweep problems under the rug given one defendant's expiring contract. Here, the complaint is much more generalized and appears to present the type of allegation that Kalnit dismissed as insufficient. If scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions. '[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated.' " Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir.1995) (quoting Ferber v. Travelers Corp., 785 F.Supp. 1101, 1107 (D.Conn.1991)). Therefore, even taking the allegations as a whole, as Tellabs requires, Plaintiffs have failed to create a strong inference of scienter based on motive and opportunity.

*b. Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness*

[24] Plaintiffs contend that JPMC and the individual defendants knew or had access to information that Mahonia was a related party, yet violated GAAP by failing to disclose the Mahonia transactions as related-party transactions. Plaintiffs argue that they sufficiently alleged JPMC's knowledge because JPMC had created and controlled Mahonia. Furthermore, Plaintiffs argue that SFAS 57 clearly required **\*202** reporting these transactions as related-party transactions. Because JPMC knew that Mahonia was related but did not report it as such, Plaintiffs contend, the allegations in the complaint give rise to a strong inference of scienter.[FN7]

> FN7. While Plaintiffs couch their arguments in terms of "knowledge," we also consider whether the complaint adequately alleges recklessness, given our holdings that recklessness is sufficient to show scienter. See Teamsters Local, 531 F.3d at 194.

However, Plaintiffs fail to allege sufficient facts to support an inference that JPMC knew that the failure to report Mahonia as a related party was inaccurate. In order to support this inference, Plaintiffs would have to allege facts showing that JPMC's transactions with Mahonia were "material," because the disclosure requirements of SFAS 57 only relate to material related-party transactions. *See* Related Party Disclosures, SFAS No. 57 ¶ 2 (Fin. Accounting Standards Bd.1982); *see also* Am. Inst. of Certified Pub. Accountants, Codification of Statements on Auditing Standards AU § 334.11 (2008) ("Related Parties"); Alvin A. Arens et al., Auditing and Assurance Services 216. However, Plaintiffs did not do so. As discussed more fully below in relation to JPMC's accounting for the Mahonia transactions as trading assets rather than as loans, Plaintiffs failed to plead materiality adequately. Here, the prepay transactions through Mahonia were, as the district court noted, "a minute fraction of assets" on JPMC's balance sheet. JP Morgan Chase I, 363 F.Supp.2d at 630-31. As im-

portant, if JPMC had disclosed that Mahonia was a related party, it would only mean that it would have disclosed (1) the nature of the relationship between JPMC and Mahonia; (2) that JPMC engaged in prepay transactions with Mahonia; (3) the dollar amount of the transactions with Mahonia; and (4) the amount of outstanding obligations. *See* SAC ¶ 245; *JP Morgan Chase II,* 2007 WL 950132, at *14.* These disclosures would not have materially altered the "total mix" of information available to investors. *Basic,* 485 U.S. at 231-32, 108 S.Ct. 978. While the SAC pleaded that disclosure of these transactions as related-party transactions would have revealed JPMC's alleged duplicity with respect to Enron, Plaintiffs fail to plead this allegation with any particularity. Proof of the facts alleged would not give a fact-finder a basis on which it could find that such a chain reaction would have occurred.

[25] Because Plaintiffs have not adequately pleaded that the related-party transactions with Mahonia were material, they did not adequately plead that JPMC knowingly or recklessly failed to comply with SFAS 57. Given that they failed to plead the materiality of the Mahonia transactions,[FN8] Plaintiffs certainly did not plead that defendants had knowledge of the transactions' materiality. Moreover, Plaintiffs failed to plead recklessness. To plead recklessness through circumstantial evidence, Plaintiffs would have to show, **\*203** " 'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' " *Kalnit,* 264 F.3d at 142 (quoting *In re Carter-Wallace,* 220 F.3d at 39 (other internal quotation marks omitted)). Plaintiffs have not done so here.

> FN8. In determining that Plaintiffs fail to plead materiality under SFAS 57, we also conclude that Plaintiffs necessarily fail to plead materiality for their Rule 10b-5 claim. The Financial Accounting Standards Board specifically stated that it did not "intend to introduce a new concept of materiality." Related Party Disclosures, SFAS No. 57, Appx. A, ¶ 19 (Fin. Accounting Standards Bd.1982) (consideration of comments on exposure draft). Therefore, a failure to adequately plead that the related party transaction was material for purposes of SFAS 57-necessary to show scienter in this case-is also a failure to plead materiality for purposes of section 10(b) and Rule 10b-5. Accordingly, we hold that Plaintiffs not only failed to plead scienter regarding the failure to disclose Mahonia as a related party, but also failed to plead the materiality of the failure to disclose Mahonia as a related party.

[26] Finally, we note that Plaintiffs' arguments regarding scienter-at least those that rely on JPMC's alleged intent to defraud-suffer from a basic problem concerning plausibility. Plaintiffs fail to show an intent to defraud JPMC's shareholders rather than Enron's shareholders. Even if the alleged violation of SFAS 57 could give rise to an inference of intent to defraud Enron's shareholders (on the remote assumption that the JPMC statements might have helped conceal Enron's financial quandary), such an intent would not necessarily relate to JPMC's shareholders. Indeed, Plaintiffs have argued that JPMC concealed its transactions with Enron in return for excessive fees (which, as discussed, actually inured to Plaintiffs' benefit). It seems implausible to have both an intent to earn excessive fees for the corporation and also an intent to defraud Plaintiffs by losing vast sums of money. *See Atl. Gypsum Co. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 514 (S.D.N.Y.1990) ("Plaintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent."). As the district court noted, Plaintiffs "fail to allege facts explaining why, if it was aware of Enron's problems, [JPMC] would have continued to lend Enron billions of dollars." *JP Morgan Chase I,* 363 F.Supp.2d at 621. Even if JPMC was actively engaged in duping other institutions for the purposes of gaining at the expense of those institutions, it would not constitute a motive for JPMC to defraud its own investors. *See Kalnit,* 264 F.3d at 141.

*2. Accounting for the Mahonia Transactions as Trades Rather than as Loans*

[27] Plaintiffs contend that JPMC's accounting of disguised loans as "trading activities" rather than as loans constitutes a false statement. The district court found that the Mahonia transactions were indeed mischaracterized on JPMC's financial disclosures, *JP Morgan Chase I,* 363 F.Supp.2d at 626. However, the district court also held that treating the prepaid trans-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

actions as trades rather than as loans was immaterial. Id. at 630.

Plaintiffs allege that the misclassification of the loans was material in light of the qualitative factors set out in SAB No. 99. First, according to the complaint, this accounting and reporting misstatement concealed an unlawful transaction because it hid JPMC's collaboration with Enron's illegal activities. Allegedly, the disclosure of the true nature of the prepay transactions would have exposed JPMC's role in the Enron accounting debacle. SAC ¶¶ 249-54. Accordingly, the misstatement was material because its purpose was to deceive investors and conceal misconduct. SAC ¶¶ 249, 254. Second, according to the complaint, the misstatement was material because, after JPMC's actions became public, JPMC stock immediately fell nearly nineteen percent. SAC ¶¶ 251, 588, 603, 606. Third, the complaint alleges that the misstatement was material because it related to JPMC's relationship with Enron, a relationship which Plaintiffs argue constituted a significant aspect of JPMC's operations and profitability because Enron was JPMC's single largest client. SAC ¶¶ 51, 54, 702-19, 726. Accordingly, Plaintiffs contend that three of SAB No. 99's qualitative **204 factors point to the materiality of the alleged misstatement.

However, the classification of the loans as trading assets was immaterial in this case. Under the legal standard set forth in *Ganino,* both quantitative and qualitative factors must be considered in determining materiality. Here, the quantitative factor strongly supports JPMC's argument that the classification error, if it was one, was immaterial. Although $2 billion in prepay transactions may sound staggering, the number must be placed in context-reclassifying $2 billion out of one category of trading assets (derivative receivables) totalling $76 billion into another category (loan assets) totalling $212 billion does not alter JPMC's total assets of $715 billion. J.App. 406 (JMPC Annual Report 2000). Moreover, the underlying assets in either classification carry some default risk. As the district court said about this same information, "[c]hanging the accounting treatment of approximately 0.3% of JPM Chase's total assets from trades to loans would not have been material to investors." JP Morgan Chase I, 363 F.Supp.2d at 631.

While *Ganino* held that bright-line numerical tests for materiality are inappropriate, it did not exclude analysis based on, or even emphasis of, quantitative considerations. Ganino, 228 F.3d at 164. According to *Ganino,* an alleged misrepresentation relating to less than two percent of defendant's assets, when taken in context, could be immaterial as a matter of law. Id.; see also Parnes v. Gateway 2000, Inc., 122 F.3d 539, 547 (8th Cir.1997) (finding alleged misrepresentations with regard to two percent of total assets were immaterial as a matter of law); In re Westinghouse Sec. Litig., 90 F.3d 696, 715 (3d Cir.1996) (stating that a misstatement was immaterial where only one percent of assets was allegedly misclassified). And as the SEC stated in SAB No. 99, "[t]he use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption that ... a deviation of less than the specified percentage with respect to a particular item on the registrant's financial statements is unlikely to be material." SEC Staff Accounting Bulletin No. 99, 64 Fed.Reg. at 45,151. Here, the five percent numerical threshold is a good starting place for assessing the materiality of the alleged misstatement. In this case, the alleged misrepresentation does not even come close to that threshold. An accounting classification decision that affects less than one-third of a percent of total assets does not suggest materiality. However, this preliminary inquiry under the quantitative factor must be supplemented. See Ganino, 228 F.3d at 163. We go on to consider qualitative factors that might contribute to a finding of materiality.

Contrary to Plaintiffs' assertions, however, the qualitative factors do not adequately demonstrate the materiality of the decision to classify the prepay transactions as loans. On appeal, Plaintiffs point to three factors set forth in SAB No. 99 as supporting their argument of materiality. The first qualitative factor is whether the misstatement concealed an unlawful transaction. Plaintiffs have not shown that this factor is present. Although they allege that the transaction should have been described differently, *see, e.g.,* SAC ¶ 261, there is no allegation that the transaction itself was illegal. The second qualitative factor, the misstatements' relation to a significant aspect of JPMC's operations, also favors JPMC. While Plaintiffs allege that Enron is a "key client" of JPMC, it appears clear that JPMC's transactions with Enron were not a significant aspect of JPMC's operations, considering the fact that JPMC earned less than .1% of its revenues from Enron-related transactions **205 each year. *See* SAC ¶ 54 and J.App. 405 (showing that while JPMC earned $30.1 million and $29.8 million in relationship revenues from Enron in 1999 and 2000 respectively, it

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

earned $29.484 billion and $31.557 billion in total net revenues in those years). Finally, the third qualitative factor that Plaintiffs rely on is the market reaction to the public disclosures of JPMC's role in the Enron collapse. SAB No. 99, while alluding to market reactions as a valid consideration in analyzing materiality, warned that market volatility alone is "too blunt an instrument to be depended on in considering whether a fact is material." SEC Staff Accounting Bulletin No. 99, 64 Fed.Reg. at 45,152 (internal quotation marks omitted). Indeed, SAB No. 99 limits the usefulness of this factor to instances where management expects "that a known misstatement may result in a significant positive or negative market reaction." *Id.* Plaintiffs have not alleged facts that would permit the inference that JPMC expected that the alleged misclassification of the loans might result in a significant market reaction. For this reason, the market reaction to Enron's collapse and JPMC's involvement in this collapse does not point towards qualitative materiality under SAB No. 99.

These qualitative factors are intended to allow for a finding of materiality if the quantitative size of the misstatement is small, but the effect of the misstatement is large. *See Ganino,* 228 F.3d at 163. Here, Plaintiffs have failed to allege properly that despite the relatively small size of the allegedly misstated transactions, reporting these transactions as loans instead of trades would have made a qualitative difference in JPMC's financial statements. To be sure, misclassification of assets does matter (as Plaintiffs point out, it has implications for ratio analysis), but the tenor of the SAC is that JPMC knew that the prepays were worthless all along-an argument that is not only implausible, but also counter-intuitive.

Plaintiffs also argue that, had the transactions been reported properly, the "subterfuge that JPMC and Enron created" would have been exposed, leading to the public becoming aware of JPMC's involvement with Enron's misdeeds. *See* SAC ¶¶ 249, 254. As set forth in the complaint, this allegation is wholly conclusory. While Plaintiffs make the assertion that the proper accounting would have revealed JPMC's collusion with Enron, that hardly suggests how the whole arrangement with Enron would have come to light.[FN9] And, given that assets in either category carry some default risk, we cannot reasonably infer that there was a substantial likelihood that JPMC's reporting of the transactions as loans rather than as trades would have been viewed by a reasonable investor as having significantly altered the total mix of information made available.

> FN9. We also note that JPMC did in fact make at least some minimal disclosure regarding the nature of the trades. JPMC's Annual Report stated, "Loans held for trading purposes are included in Trading Assets and are carried at fair value, with the gains and losses included in Trading Revenue." J.App. 414. So even if JPMC did not conform to GAAP, it did provide some notice to investors that its trading assets contained loans.

*B. JPMC's Statements Regarding Its Integrity and Risk Management*

[28] Plaintiffs allege that JPMC made numerous misrepresentations regarding its "highly disciplined" risk management and its standard-setting reputation for integrity. SAC ¶ 3 (internal quotation marks omitted). Plaintiffs point to statements such as the assertion that JPMC had " 'risk management processes [that] are highly disciplined and designed to preserve the integrity of the risk management process,' ***206** "*id.;* that it " 'set the standard' for 'integrity,' " *id.;* and that it would " 'continue to reposition and strengthen [its] franchises with a focus on financial discipline,' " *id.* ¶ 391 (emphasis omitted). *See also id.*¶¶ 336, 354, 380, 400, 472, 474, 479, 481. These statements, according to Plaintiffs, were misleading because JPMC's poor financial discipline led to liability in the WorldCom litigation and involvement in the Enron scandal. *Id.* at ¶¶ 188-240, 636-39.Furthermore, Plaintiffs argue that the statements were material because they related to the integrity and risk-management practices of an investment bank. According to Plaintiffs, the significance of a bank's reputation is undeniable. Therefore, because the misleading statements at issue related to the bank's reputation, Plaintiffs conclude that the statements would necessarily be relied upon by a reasonable investor and qualify per se as material.

The statements highlighted by Plaintiffs are no more than "puffery" which does not give rise to securities violations. *See Lasker v. N.Y. State Elec. & Gas Corp.,* 85 F.3d 55, 59 (2d Cir.1996). The statements are too general to cause a reasonable investor to rely upon them. As in Lasker, these statements did not, and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

could not, amount to a guarantee that its choices would prevent failures in its risk management practices. See id. at 58 ("The Company could not guarantee and did not guarantee ... that its investment choices would yield increased future earnings."(internal quotation marks omitted)). JPMC's statements were merely generalizations regarding JPMC's business practices. Such generalizations are "precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable." Lasker, 85 F.3d at 59; see also San Leandro, 75 F.3d at 811 (stating that "such puffery cannot have misled a reasonable investor").

Plaintiffs conflate the importance of a bank's reputation for integrity with the materiality of a bank's statements regarding its reputation. While a bank's reputation is undeniably important, that does not render a particular statement by a bank regarding its integrity per se material. In Lasker, it was undisputed that the "financial integrity" of the utility was important to its investors; but we still found that the "broad, general" statements regarding the utility's financial integrity could not reasonably be relied upon as a guarantee that the company's "actions would in no way impact [its] finances." Lasker, 85 F.3d at 59 (internal quotation marks omitted). Here also, JPMC's statement that it " 'set the standard for best practices in risk management techniques,' " SAC ¶ 336,-like its other similar statements-is so general that a reasonable investor would not depend on it as a guarantee that JPMC would never take a step that might adversely affect its reputation. No investor would take such statements seriously in assessing a potential investment, for the simple fact that almost every investment bank makes these statements. See Lasker, 85 F.3d at 58. Finding that JPMC's statements constitute a material misrepresentation would bring within the sweep of federal securities laws many routine representations made by investment institutions. We decline to broaden the scope of securities laws in that manner.

*C. Plaintiffs' Other Claims*

[29] Because we have concluded that Plaintiffs failed to allege any misstatements or omissions by JPMC that could be found to be material, Plaintiffs' claims under section 14(a) of the Exchange Act and section 11 of the Securities Act must also fail. See Koppel v. 4987 Corp., 167 F.3d 125, 131-32 (2d Cir.1999) (section 14(a) claim); McMahan & Co. v. Wherehouse Entm't, Inc., 65 F.3d 1044, 1047-48 (2d Cir.1995) (section 11 claim). Moreover, ***207** having found that Plaintiffs failed to state a claim under sections 10(b) and 14(a) of the Exchange Act and section 11 of the Securities Act, their control person liability claim pursuant to section 15 of the Securities Act and section 20 of the Exchange Act must also fail for want of a primary violation. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir.1996) ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person."); Demarco v. Edens, 390 F.2d 836, 841 (2d Cir.1968).

*III. Conclusion*

Because Plaintiffs have failed to adequately plead that JPMC made a materially false statement or omitted a material fact with scienter, the district court correctly held that Plaintiffs' SAC cannot survive JPMC's Fed.R.Civ.P. 12(b)(6) motion to dismiss.

AFFIRMED.

C.A.2 (N.Y.),2009.
ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.
553 F.3d 187

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.