*Attorneys at Law*

# POMERANTZ
## HAUDEK·BLOCK
## GROSSMAN·GROSS LLP

**Joshua B. Silverman**
Jbsilverman@pomlaw.com

One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
T 312.377.1181
F 312.377.1184

100 Park Avenue
New York, NY 10017-5516
T 212.661.1100
F 212.661.8665

1025 Connecticut Ave. N.W.
Suite 1000
Washington, DC 20036
T 202.327.5420  F 202.327.5422

March 3, 2009

Hon. Denis R. Hurley
United States District Judge
United States District Court for the
    Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722-4438

Re:   *In re Symbol Technologies Securities Litigation*, 05-cv-3923 (DRH)

Dear Judge Hurley:

We write on behalf of Lead Plaintiff and the putative class in the above-captioned litigation, in response to Defendants' letter dated February 23, 2009. Like Defendants' earlier letter to this Court dated July 2, 2008, Defendants simply cite a case which has nothing whatsoever to do with the facts of this case, and ignore the well-pleaded allegations of the Amended Complaint.

Even a cursory comparison of the facts at issue in *ECA & Local 134 IBIEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) with those alleged here demonstrates that the two are completely unrelated. *ECA* dealt with JPM Chase's inaccurate accounting of loans to Enron-related entities that constituted a minute fraction of its business.

*ECA* hinged on the fact that the transactions involved were immaterial to the bank.[1] The plaintiffs in *ECA* alleged that the bank had misclassified only "approximately

---

[1] Defendants incorrectly attempt to conflate materiality with scienter. *See* Defendants' Letter at 1. Defendants erroneously assert that a securities fraud plaintiff must demonstrate with respect to each asserted misrepresentation that each defendant knew it to be material. *Id.* But *ECA* held no such thing. Instead, the quoted part of *ECA* stands only for the limited and unremarkable proposition that where the accounting principle in question applies only to material items, the fact that immaterial items are accounted for differently does not manifest an intent to bypass accounting principles. 553 F.3d at 202. The limited holding has no application here. Accordingly, materiality and scienter remain separate issues. Regardless, as set forth at length in Plaintiffs' briefs (and letter submissions) in opposition to the motion to dismiss, Plaintiffs here allege specific facts demonstrating the scienter of each Defendant.

*Attorneys at Law*

**POMERANTZ**
HAUDEK·BLOCK
GROSSMAN·GROSS LLP

Hon. Denis R. Hurley
March 3, 2009
Page 2

0.3% of JPM Chase's total assets" (as trading assets when they should have been booked as loans). 553 F.3d at 204. Plaintiffs there did not allege that the net income or total assets of JPM Chase were affected (either materially or immaterially) by the misclassification. *Id.* Moreover, as the Second Circuit noted, both classifications "carry some default risk." *Id.*

In this case, unlike *ECA*, the statements in question substantially misrepresented two aspects of Symbol Tech's core operations that were critically important to investors: (1) the Company's financial prospects; and (2) whether the Company had restored corporate integrity and put its tarnished past behind it. *E.g.,* ¶¶ 4-5, 77-126.

With respect to the first category of misrepresentations, the Complaint alleges that by mislabeling sales targets as "projections" of actual sales, despite the fact that salespersons were required to commit to high targets regardless of the actual prospects, the Company materially overstated its revenue growth and earnings prospects. *Compare* Amended Complaint, ¶ 118 (mischaracterizing sales targets hoping for revenue growth of nearly $15 million quarter-over-quarter as an actual projection) with ¶ 127 (actual revenue growth was only $7.5 million, or approximately 50% less than the mislabeled projections); *compare* ¶ 130 (rolling the mislabeled "projections" into earnings guidance of $0.05-$0.07) with ¶ 138 (actual projected range was $0.02-$0.05, a reduction of 60% on the bottom end of the range and over 28% on the top end of the range); *see also* ¶ 140 (attributing discrepancies, in large part, to weaknesses in sales forecasting processes).[2]

On a purely quantitative basis, the 28%-60% discrepancies alleged here are several orders of magnitude more important to Symbol Tech's results than the **0.3%** misclassification in *ECA*. While the Second Circuit noted that a 0.3% accounting irregularity was far below the threshold for the quantitative presumption of materiality under SEC Staff Accounting Bulletin 99, *ECA*, 553 F.3d at 204, the substantial discrepancies alleged here are not.

Qualitatively, the discrepancies alleged here are also patently more important than those at issue in *ECA*. *ECA* involved only a "misclassification" between two asset subcategories. Here, the mischaracterized "projections" related to Symbol Tech's most important operating metrics. Moreover, as alleged in the Amended Complaint, the financial press confirmed the materiality of these discrepancies, reporting that if the true

---

[2] All of these figures are contained in the cited paragraphs of the Amended Complaint. That Defendants would prefer to ignore them does not support Defendants' naked assertion that the Amended Complaint is somehow deficient for lack of quantification. *See* Defendants' Letter at 2.

*Attorneys at Law*

## POMERANTZ
### HAUDEK·BLOCK
### GROSSMAN·GROSS LLP

Hon. Denis R. Hurley
March 3, 2009
Page 3

figures were disclosed earlier, it would have "spelled disaster" for Symbol Tech shares. ¶ 143.

*ECA* similarly fails to support Defendants' attempts to attack the materiality of statements regarding corporate reforms. *ECA* did not hold, as Defendants incorrectly represent, that all misrepresentations about corporate governance are immunized from liability. Instead, *ECA* merely held that, under the facts of that case, the very generalized statements about integrity made by those defendants were puffery. 553 F.3d at 206.

Here, however, the Defendants did not just make "vague" and "general" statements about corporate integrity – they made a specific promise to investors that it would be their primary mission to "improve the authenticity and transparency of [Symbol Tech's] financial reporting," and thereby become a "leading example of good corporate governance." ¶ 4. The context is important. Unlike JPM Chase, which enjoyed a sterling reputation, Defendants' misrepresentations came at a time when Symbol Tech was embroiled in controversy. ¶¶ 3-4. That is why Defendants used every opportunity to hype, albeit falsely, a restoration of corporate integrity. *E.g.,* ¶¶ 4-5, 86, 92-93, 103, 114.

Defendants here did not speak in platitudes, as did JPM Chase, but rather promised (then falsely said they had delivered), substantial improvements in the efficacy of disclosure and reporting controls, including forecasting controls. *Id.* When it became clear that these improvements were illusory, the revelation damaged not only the price of Symbol Tech shares, *e.g.,* ¶ 146, but also Symbol Tech's customer relationships and revenues, ¶ 147 (quoting an industry newsletter explaining that: "[p]art of the current revenue generation problem has to be attributed to some customers who have simply decided that they no longer want to do business with a scandal-ridden company.").

Taken as true, as these well-pleaded allegations must be for purposes of this motion to dismiss, there can be no question that the misrepresentations in this case were highly material to the total mix of information available to Symbol Tech investors. Accordingly, the Second Circuit decision in *ECA* has no bearing on the pending motion to dismiss, which should be denied in its entirety for the reasons set forth in Plaintiffs' briefs.

Respectfully submitted,

Joshua B. Silverman

cc: William K. Dodds
    Patrick V. Dahlstrom