**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------- X
                                  :
                                  :
                                  :
IN RE SYMBOL TECHNOLOGIES, INC.    :  Civil Action 05-CV-3923
SECURITIES LITIGATION             :  (DRH-AKT)
                                  :
                                  :  ECF CASE
                                  :
                                  :
                                  :
------------------------------------------------------------------------- X

## DEFENDANTS' ANSWER TO LEAD PLAINTIFF'S
## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Andrew J. Levander
(andrew.levander@dechert.com)
Kathleen N. Massey
(kathleen.massey@dechert.com)
Yelena Shreyberg
(yelena.shreyberg@dechert.com)

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Defendants*

## ANSWER

Defendants Symbol Technologies, Inc. ("Symbol"), William R. Nuti ("Nuti"), Salvatore Iannuzzi ("Iannuzzi"), Mark T. Greenquist ("Greenquist"), Todd Abbott ("Abbott"), Arthur O'Donnell ("O'Donnell") and James M. Conboy ("Conboy") (the "Individual Defendants," and collectively with Symbol, "Defendants"), by and through their attorneys Dechert LLP, respectfully submit their Answer, with affirmative defenses, to the Consolidated Amended Class Action Complaint, dated August 30, 2006 (the "Complaint").

### INTRODUCTORY STATEMENT

In responding to the allegations in the Complaint, any factual allegations admitted below are admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculation, which are in the allegations or the Complaint as a whole.

Defendants respectfully submit that the Complaint contains numerous purported allegations that constitute legal conclusions. As Defendants are not required to respond to legal conclusions in their Answer, Defendants neither admit nor deny those purported allegations. To the extent a response is required, Defendants deny such allegations, unless otherwise stated.

Defendants further respectfully submit that the headings, sub-headings and unnumbered paragraphs used in the Complaint do not require a response but, for the avoidance of doubt, to the extent they contain allegations against Defendants, any such allegations are denied.

Each Defendant further respectfully submits that, unless otherwise noted, it or he intends to respond only to the allegations directed to each one individually, and none of the Defendants should be deemed to be responding to allegations that are directed solely to other Defendants.

The Complaint is replete with references to purported descriptions and/or summaries of, and purported quotations from, various documents, including Securities and Exchange

1

Commission ("SEC") filings, press releases, investor conference calls, analyst reports, financial accounting standards and professional standards. In appropriate cases, Defendants respectfully refer the Court to the relevant documents for a complete and accurate statement of their contents without admitting the truth thereof or the admissibility of the documents. To the extent that those purported descriptions, summaries and quotations are taken from sources not specifically identified in the Complaint or not in Defendants' possession, or which are otherwise unclear, Defendants deny knowledge or information sufficient to form a belief as to the truth of the relevant allegations and, in the case of quotations, as to the accuracy of such quotations.

The comments and objections in this Introductory Statement are incorporated into each numbered paragraph of this Answer.

<u>SPECIFIC RESPONSES</u>

1.      To the extent the allegations in Paragraph 1 state legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 1, except admit that Lead Plaintiff purports to bring this action as a class action on behalf of investors who purchased Symbol securities during the period between April 29, 2003 and August 1, 2005, and that Symbol, Nuti, Iannuzzi, Greenquist, Abbott, O'Donnell and Conboy are named as defendants in this action.

2.      Defendants deny the allegations in Paragraph 2, except admit that prior to January 9, 2007, Symbol maintained its headquarters in Holtsville, New York, and manufactured and sold, *inter alia*, bar code scanners, point-of-sale systems, radio frequency identification tags and readers, handheld computers and inventory management software.

3.      To the extent the allegations in Paragraph 3 state legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 3,

except admit that the Department of Justice and the United States Postal Inspection Service conducted an investigation of Symbol's accounting practices during the period from 1999 to 2001, criminal charges were filed against former Chief Executive Officer Tomo Razmilovic ("Razmilovic") and several other former Symbol executives in or around May 2004, and several former Symbol executives entered pleas of guilty to criminal charges, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 concerning the whereabouts of Razmilovic.

4.     Defendants deny the allegations in Paragraph 4, except admit that Symbol implemented various initiatives to improve its corporate governance and financial reporting.

5.     To the extent the allegations in Paragraph 5 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 5.

6.     To the extent the allegations in Paragraph 6 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 6, and respectfully refer the Court to the Federal Accounting Standards Advisory Board for a complete discussion of GAAP accounting principles and to Regulation S-X for its entire contents.

7.     Defendants deny the allegations in Paragraph 7, except admit that on November 15, 2004, Symbol filed a Form 10-Q quarterly report for the third quarter of 2004 and that the Form 10-Q described certain deficiencies in internal controls and remedial measures taken; and respectfully refer the Court to the Form 10-Q for its entire contents.  Defendants further deny the allegations in Paragraph 7 concerning Nuti, except admit that on December 30, 2004, Nuti sold 400,000 shares of Symbol common stock at $16.45 per share pursuant to a Rule 10b5-1 trading plan filed with the SEC on September 7, 2004, but still retained ownership of 195,000 shares.

8.      Defendants deny the allegations in Paragraph 8, except admit that on June 27, 2005, Symbol filed a Form 10-K/A (Amendments 1 and 2) for the period ended December 31, 2002, Form 10-Q/A for the period ended March 31, 2004, Form 10-Q/A for the period ended June 30, 2004, and Form 10-Q/A for the period ended September 30, 2004; and respectfully refer the Court to the SEC filings for their entire contents.

9.      To the extent the allegations in Paragraph 9 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 9.

10.      Defendants deny the allegations in Paragraph 10, except admit that on March 1, 2005, Symbol issued a press release that projected revenue of approximately $465 million for the first quarter of 2005; and respectfully refer the Court to the March 1, 2005 press release for its entire contents.

11.      Defendants deny the allegations in Paragraph 11, except admit that on May 3, 2005, Symbol reported revenues of $457.5 million for the first quarter of 2005 and projected revenues in the range of $460 million to $470 million for the second quarter of 2005.

12.      Defendants deny the allegations in Paragraph 12, except admit that on June 28, 2005, Symbol revised its projected second quarter 2005 earnings to approximately $440 million. Defendants further admit that Nuti discussed the projected earnings on an analyst conference call on June 28, 2005, and respectfully refer the Court to the conference call transcript for the entirety of Nuti's statements.

13.      Defendants deny the allegations in Paragraph 13, except admit that on July 14, 2005, Symbol revised its projected second quarter 2005 earnings to approximately $425 million to $430 million and announced the resignation of Greenquist.

14.     Defendants deny the allegations in Paragraph 14, except admit that on August 1, 2005, Symbol issued press releases announcing net revenue of $427.8 million and a net loss of $30.5 million for the second quarter of 2005, and also announcing the resignation of Nuti; and respectfully refer the Court to the press releases for the entirety of their contents.  Defendants further admit that Symbol's stock price closed at $11.64 a share on July 29, 2005, opened at $11.13 a share on August 1, 2005, closed at $9.85 a share on August 1, 2005, opened at $9.77 a share on August 2, 2005, and closed at $9.41 a share on August 2, 2005.

15.     Defendants deny the allegations in Paragraph 15, except admit that Lead Plaintiff purports to bring this action under §§10(b) and 20(a) of the Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

16.     To the extent the allegations in Paragraph 16 state legal conclusions, no response is required.  To the extent a response is required, Defendants admit that Lead Plaintiff purports to bring this action under a Federal statute which confers subject matter jurisdiction upon this Court.

17.     To the extent the allegations in Paragraph 17 state legal conclusions, no response is required.  To the extent a response is required, Defendants admit that Symbol had its principal place of business in this District and that certain acts alleged by Lead Plaintiff to have occurred took place in this District, which makes venue proper in this District.

18.     To the extent the allegations in Paragraph 18 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 18, except admit that Symbol's stock traded on a national securities exchange during the alleged relevant period.

19.     Defendants deny the allegations in Paragraph 19, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purchases of Lead Plaintiff, except admit that on October 17, 2005, Lead Plaintiff filed a Certification stating that it had purchased Symbol common stock on December 2, 2004, more than seven months after the start of the alleged relevant period, on December 15, 2004, and on June 9, 2005.

20.     Defendants deny the allegations in Paragraph 20, except admit that Symbol is a Delaware corporation.

21.     Defendants deny the allegations in Paragraph 21, except admit that Nuti served as Symbol's President and Chief Operating Officer from the beginning of the alleged relevant period to December 30, 2003, he served as Chief Executive Officer and Board Member thereafter, and Symbol announced Nuti's resignation on August 1, 2005.

22.     Defendants deny the allegations in Paragraph 22, except admit that Greenquist served as Symbol's Chief Financial Officer from the beginning of the alleged relevant period to July 14, 2005, and Symbol announced Greenquist's resignation on July 14, 2005.

23.     Defendants deny the allegations in Paragraph 23, except admit that Iannuzzi was the non-executive Chairman of the Symbol Board of Directors from December 30, 2003 to April 7, 2005; at various times, served on the Nominating, Audit and Compensation committees; and was appointed Senior Vice President and Chief Administrative and Control Officer on April 11, 2005, Chief Financial Officer on July 14, 2005, Interim President and Chief Executive Officer on August 1, 2005, and President and Chief Executive Officer effective January 12, 2006.

24.     Defendants admit the allegations in Paragraph 24.

25.     Defendants deny the allegations in Paragraph 25, except admit that O'Donnell was Senior Vice President of Operations, General Manager of Global Services, and Division Chief Quality Officer at Symbol from July 21, 2003 to the end of the alleged relevant period.

26.     Defendants deny the allegations in Paragraph 26, except admit that Conboy was Vice President Controller and Chief Accounting Officer at Symbol from February 9, 2004 to May 27, 2005.

27.     To the extent the allegations in Paragraph 27 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 27, except admit that Lead Plaintiff purports to refer collectively to Nuti, Greenquist, Iannuzzi, Abbott, O'Donnell and Conboy as "Individual Defendants."

28.     To the extent the allegations in Paragraph 28 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 28, except admit that prior to January 9, 2007, Symbol was a publicly-held company registered with the SEC and traded on the New York Stock Exchange.

29.     To the extent the allegations in Paragraph 29 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 29.

30.     To the extent the allegations in Paragraph 30 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 30.

31-44.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 31 through 44.

45.     To the extent the allegations in Paragraph 45 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 45.

46.     Defendants deny the allegations in Paragraph 46, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 concerning CI #1.

47.     Defendants deny the allegations in Paragraph 47, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 concerning CI #1, and admit that Catherine Garrity served, at various times, as a director at Symbol.

48.     Defendants deny the allegations in Paragraph 48, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 concerning CI #1, and admit that John Leone served, at various times, as a manager at Symbol.

49.     Defendants deny the allegations in Paragraph 49, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 concerning CI #3.

50.     Defendants deny the allegations in Paragraph 50, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 concerning CI #3, and admit that Deloitte & Touche served, at various times, as Symbol's external auditor and that Symbol had a distribution facility in McAllen, Texas.

51.     Defendants deny the allegations in Paragraph 51, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51

concerning CI #2, and admit that Symbol had warehouses located on Lakewood Avenue and Orville Drive in Bohemia, New York and on Andrea Road in Holbrook, New York.

52.     Defendants deny the allegations in Paragraph 52, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 concerning confidential informants, including CI #4, and admit that ScanSource was a large distribution partner to Symbol.

53.     Defendants deny the allegations in Paragraph 53, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 concerning CI #4.

54.     Defendants deny the allegations in Paragraph 54, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 concerning CI #4 and CI #5.

55.     Defendants deny the allegations in Paragraph 55, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 concerning CI #6.

56.     Defendants deny the allegations in Paragraph 56, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 concerning CI #7.

57.     Defendants deny the allegations in Paragraph 57, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 concerning CI #7, and admit that Vibha Kapoor was Controller in Charge of Distribution during the alleged relevant period, and Manisha Reck worked, at various times, in accounting.

58.     Defendants deny the allegations in Paragraph 58, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 concerning CI #7.

59.     Defendants deny the allegations in Paragraph 59, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 concerning CI #7, and admit that Jan Burton served, at various times, as Vice President of Worldwide Channels.

60.     Defendants deny the allegations in Paragraph 60, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 concerning CI #7.

61.     To the extent the allegations in Paragraph 61 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 61.

62.     Defendants deny the allegations in Paragraph 62, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 concerning CI #12, admit that the SEC and Symbol entered into a consent judgment so ordered by the Court on June 9, 2004, and respectfully refer the Court to the consent judgment for its entire contents.  To the extent the allegations in Paragraph 62 state legal conclusions, no response is required.

63.     Defendants deny the allegations in Paragraph 63, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 concerning CI #12, and admit that Symbol employed a monthly process for forecasting revenue from sales.

64.     Defendants deny the allegations in Paragraph 64, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 concerning CI #12.

65.     To the extent the allegations in Paragraph 65 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 65.

66.     Defendants deny the allegations in Paragraph 66, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 concerning CI #8, and admit that, at various times, Symbol utilized a commit system for sales forecasting.

67.     Defendants deny the allegations in Paragraph 67, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 concerning CI #8, and admit that account managers provided sales projections on a weekly basis in connection with sales forecasting using the commit system.

68.     Defendants deny the allegations in Paragraph 68, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 concerning CI #9.

69.     Defendants deny the allegations in Paragraph 69, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 concerning CI #9, and admit that sales projections gathered using the commit system were considered, among other factors, in the process of revenue forecasting.

70.     Defendants deny the allegations in Paragraph 70, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 concerning CI #11.

71.     Defendants deny the allegations in Paragraph 71, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 concerning CI #11.

72.     Defendants deny the allegations in Paragraph 72, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 concerning CI #12.

73.     Defendants deny the allegations in Paragraph 73, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 concerning CI #11 and CI #12, and admit that Symbol entered into a sales contract with Nestle in December 2005 valued at approximately $55-70 million.

74.     Defendants deny the allegations in Paragraph 74, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 concerning CI #8 and CI #10, and admit that sales projections gathered using the commit system were considered, among other factors, in the process of revenue forecasting.

75.     Defendants deny the allegations in Paragraph 75, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 concerning CI #11.

76.     Defendants deny the allegations in Paragraph 76, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 concerning CI #13, and admit that prior to January 9, 2007, Symbol manufactured equipment

and services that companies used to manage inventories, and admit that Symbol engaged in physical inventory counts at various times.

77.     Defendants deny the allegations in Paragraph 77, except admit that Symbol issued a press release on April 29, 2003, announcing that, before the impact of a restatement, revenue was $357.4 million for the first quarter of 2003 as compared to $301.3 million for the first quarter of 2002, that inventories were $310.4 million, and that the inventory turnover ratio increased from 2.7 in the previous quarter to 2.8; admit that Nuti was quoted in the April 29, 2003 press release; and respectfully refer the Court to the press release for its entire contents.

78.     To the extent the allegations in Paragraph 78 state legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 78.

79.     Defendants deny the allegations in Paragraph 79, except admit that Symbol issued a press release on October 8, 2003, announcing that revenue for the second quarter was $375 million, which represented a 15% increase over the restated second quarter 2002 revenue, and net earnings were $9 million; admit that Nuti was quoted in the October 8, 2003 press release; and respectfully refer the Court to the press release for its entire contents.

80.     Defendants deny the allegations in Paragraph 80, except admit that Richard Bravman served, for a certain period, as Symbol's Interim Chairman and CEO and was quoted in the October 8, 2003 press release, and respectfully refer the Court to the press release for its entire contents.

81.     Defendants admit the allegations in Paragraph 81 and respectfully refer the Court to the October 8, 2003 conference call transcript for the entirety of Nuti's statement.

82.     To the extent the allegations in Paragraph 82 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 82.

83.     Defendants deny the allegations in Paragraph 83, except admit that Symbol issued a press release on November 4, 2003, announcing that revenue for the second quarter was $382 million, which represented a slight increase from the restated third quarter 2002 revenue of $380 million and a 2% increase over the second quarter 2003 revenue of $375 million, and respectfully refer the Court to the press release for its entire contents.

84.     To the extent the allegations in Paragraph 84 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 84.

85.     Defendants admit the allegations in Paragraph 85 and respectfully refer the Court to the February 20, 2004 press release for its entire contents.

86.     Defendants deny the allegations in Paragraph 86, except admit that on February 25, 2004, Symbol issued a press release announcing that it would file Form 10-Q quarterly reports for the first three quarters of 2003 on the same day; admit that Nuti was quoted in the February 25, 2004 press release; and respectfully refer the Court to the press release for its entire contents.

87.     To the extent the allegations in Paragraph 87 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 87.

88.     Defendants deny the allegations in Paragraph 88, except admit that Symbol filed Form 10-Q quarterly reports for the first three quarters of 2003 on February 25, 2004, reporting

revenue of $1.137 billion for the period ended September 30, 2003, that the Form 10-Q quarterly reports were signed by Greenquist, Nuti and Conboy, and that Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the quarterly reports and certifications for their entire contents.

89.     Defendants admit the allegations in Paragraph 89 and respectfully refer the Court to the referenced quarterly reports for their entire contents.

90.     Defendants deny the allegations in Paragraph 90, except admit that Symbol's Form 10-Q for the period ended September 30, 2003 stated that since December 30, 2002, inventory levels had decreased by $63,912,000 to $197,184,000.

91.     To the extent the allegations in Paragraph 91 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 91.

92.     Defendants deny the allegations in Paragraph 92, except admit that Symbol issued a press release on March 4, 2004, announcing revenue for the fourth quarter of 2003 and fiscal year 2003, and announcing fourth quarter revenue of $393 million, that the reported revenue was $7 million lower than the projection contained in the February 20, 2004 press release, and that revenue for fiscal year 2003 was $1.53 billion compared to $1.4 billion for fiscal year 2002; admit that Nuti was quoted in the March 4, 2004 press release; and respectfully refer the Court to the press release for its entire contents.

93.     Defendants deny the allegations in Paragraph 93, except admit that Nuti spoke at the March 4, 2004 investor conference call, and respectfully refer the Court to the conference call transcript for the entirety of its contents.

94.     To the extent the allegations in Paragraph 94 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 94, except admit that Symbol's stock price closed at $17.99 a share on March 4, 2004, opened at $15.50 a share on March 5, 2004, and closed at $15.50 a share on March 5, 2004.

95.     Defendants deny the allegations in Paragraph 95, except admit that on March 12, 2004, Symbol filed a Form 10-K annual report for 2003 that was consistent with the figures and statements contained in the March 4, 2004 press release, the Form 10-K was signed by Nuti, Iannuzzi, Greenquist and Conboy, and Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the annual report and certifications for their entire contents.

96.     Defendants admit the allegations in Paragraph 96 and respectfully refer the Court to the referenced Form 10-K for its entire contents.

97.     To the extent the allegations in Paragraph 97 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 97.

98.     Defendants deny the allegations in Paragraph 98, except admit that Symbol issued a press release on May 10, 2004, announcing that revenue for the first quarter of 2004 was $419.7 million, which represented an increase of 9% over the first quarter of 2003 revenue and an increase of 7% over the fourth quarter of 2003 revenue, and that net earnings were $6.8 million as compared with a net loss of $31 million in the first quarter of 2003; admit that Greenquist was quoted in the May 10, 2004 press release; and respectfully refer the Court to the press release for its entire contents.

16

99.     Defendants deny the allegations in Paragraph 99, except admit that on May 10, 2004, Symbol filed a Form 10-Q quarterly report for the first quarter of 2004 that was consistent with the figures and statements contained in the May 10, 2004 press release, the Form 10-Q was signed by Nuti, Greenquist and Conboy, and Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the quarterly report and certifications for their entire contents.

100.     To the extent the allegations in Paragraph 100 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 100.

101.     Defendants deny the allegations in Paragraph 101, except admit that J.P. Morgan issued an analyst report on May 11, 2004 that rated Symbol "Overweight," and respectfully refer the Court to the analyst report for its entire contents.

102.     Defendants deny the allegations in Paragraph 102, except admit that Symbol issued a press release on July 28, 2004, announcing revenue of $432.8 million for the second quarter of 2004 and net earnings of $28.8 million, and that the inventory turnover ratio increased from 4.2 in the previous quarter to 4.4; admit that Greenquist was quoted in the July 28, 2004 press release; and respectfully refer the Court to the press release for its entire contents.

103.     To the extent the allegations in Paragraph 103 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 103, except admit that Symbol filed a Form 10-Q for the second quarter of 2004 on July 30, 2004, the Form 10-Q contained a revenue recognition policy and was signed by Greenquist, Nuti and Conboy, and Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of

the Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the Form 10-Q and certifications for their entire contents.

104.    To the extent the allegations in Paragraph 104 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105, except admit that J.P. Morgan issued an analyst report on July 27, 2004 pertaining to Symbol's announcement of its acquisition of Matrics Inc. and that the analyst report rated Symbol "Overweight," and respectfully refer the Court to the analyst report for its entire contents.

106.    Defendants deny the allegations in Paragraph 106, except admit that on December 30, 2004, Nuti sold 400,000 shares of Symbol common stock at $16.45 per share pursuant to a Rule 10b5-1 trading plan adopted on August 31, 2004, and filed with the SEC on September 7, 2004.

107.    Defendants deny the allegations in Paragraph 107, except admit that Symbol issued a press release on October 26, 2004, announcing revenue for the third quarter of 2004, that net earnings were $21.1 million and that the inventory turnover ratio was 4.4; and respectfully refer the Court to the press release for its entire contents.

108.    To the extent the allegations in Paragraph 108 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109, except admit that Symbol issued a press release on November 8, 2004 that announced a two-week delay in the filing of Symbol's Form 10-Q quarterly report for the third quarter of 2004, stated that Symbol may be

required to amend one or both of its previously filed first and second quarter Form 10-Q

quarterly reports for 2004, and described two discrete events that contributed to the filing delay

and potential amendment; and respectfully refer the Court to the press release for its entire

contents.

110.    Defendants deny the allegations in Paragraph 110, except admit that Symbol's

stock price closed at $15.20 a share on November 5, 2004, opened at $14.34 a share on

November 8, 2004, and closed at $14.11 a share on November 8, 2004.

111.    Defendants deny the allegations in Paragraph 111, except admit that Symbol

issued a press release on November 15, 2004, announcing that revenue for the third quarter of

2004 was $429.2 million, net earnings were $17.8 million, and the inventory turnover ratio was

4.1; and respectfully refer the Court to the press release for its entire contents.

112.    Defendants deny the allegations in Paragraph 112, except admit that Symbol filed

a Form 10-Q quarterly report for the third quarter of 2004 on November 15, 2004, that the Form

10-Q contained a revenue recognition policy and was signed by Greenquist, Nuti and Conboy,

and that Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of the

Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the quarterly report and

certifications for their entire contents.

113.    Defendants deny the allegations in Paragraph 113, except admit that the quoted

language appears in the Form 10-Q quarterly report filed on November 15, 2004, and

respectfully refer the Court to the quarterly report for its entire contents.

114.    To the extent the allegations in Paragraph 114 state legal conclusions, no response

is required.  To the extent a response is required, Defendants deny the allegations in Paragraph

114 and respectfully refer the Court to the November 15, 2004 quarterly report for its entire contents.

115.     To the extent the allegations in Paragraph 115 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 115.

116.     Defendants deny the allegations in Paragraph 116, except admit that The Buckingham Research Group issued an analyst report on November 8, 2004 that rated Symbol as "Strong Buy," and respectfully refer the Court to the analyst report for its entire contents.

117.     Defendants deny the allegations in Paragraph 117, except admit that on December 30, 2004, Nuti sold 400,000 shares of Symbol common stock at $16.45 per share pursuant to a Rule 10b5-1 trading plan adopted on August 31, 2004, and filed with the SEC on September 7, 2004, but that he retained ownership of 195,000 shares after the sale.

118.     Defendants deny the allegations in Paragraph 118, except admit that Symbol issued a press release on March 1, 2005, announcing that revenue for the fourth quarter of 2004 was $450.5 million, net earnings were $28.5 million, annual revenue was $1.73 billion, annual net earnings were $81.8 million, projected first quarter 2005 revenue was approximately $465 million and earnings per share for the first quarter of 2005 was $0.10 to $0.11; and respectfully refer the Court to the press release for its entire contents.

119.     Defendants deny the allegations in Paragraph 119, except admit that Nuti and Greenquist were quoted in the March 1, 2005 press release and that the quoted language appears in the press release; and respectfully refer the Court to the press release for its entire contents.

120.     Defendants deny the allegations in Paragraph 120, except admit that Symbol filed a Form 10-K annual report for 2004 on March 11, 2005, that the Form 10-K contained disclosure

on internal controls pursuant to Section 404 of the Sarbanes-Oxley Act of 2002 and a revenue recognition policy, was signed by Nuti, Iannuzzi, Greenquist and Conboy, and that Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the Form 10-K and certifications for their entire contents.

121.   Defendants deny the allegations in Paragraph 121 and respectfully refer the Court to the referenced Form 10-K for its entire contents.

122.   Defendants admit the allegations in Paragraph 122 and respectfully refer the Court to the referenced Form 10-K for its entire contents.

123.   Defendants admit the allegations in Paragraph 123 and respectfully refer the Court to the March 7, 2005 conference call transcript for its entire contents.

124.   To the extent the allegations in Paragraph 124 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 124.

125.   Defendants deny the allegations in Paragraph 125, except admit that Symbol issued a press release on April 11, 2005, announcing the appointment of Iannuzzi to Senior Vice President, Chief Administrative and Control Officer, that Iannuzzi had previously served as non-executive Chairman of the Board of Directors of Symbol, and that Nuti and Iannuzzi were quoted in the press release; and respectfully refer the Court to the press release for its entire contents.

126.   To the extent the allegations in Paragraph 126 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 126.

127.     Defendants deny the allegations in Paragraph 127, except admit that Symbol issued a press release on May 3, 2005, announcing revenue for the first quarter of 2005 of $457.5 million and net earnings of $22.2 million, and stating that revenue growth for fiscal year 2005 would likely be at the lower end of the previously disclosed 10 percent to 15 percent range; and respectfully refer the Court to the press release for its entire contents.

128.     Defendants deny the allegations in Paragraph 128, except admit that Symbol's stock price closed at $12.98 a share on May 3, 2005, opened at $11.90 a share on May 4, 2005, and closed at $10.97 a share on May 4, 2005.

129.     Defendants deny the allegations in Paragraph 129.

130.     Defendants admit the allegations in Paragraph 130 and respectfully refer the Court to the May 3, 2005 press release for its entire contents.

131.     Defendants deny the allegations in Paragraph 131, except admit that on May 6, 2005, Symbol filed a Form 10-Q for the first quarter of 2005 that was consistent with the figures and statements contained in the May 3, 2005 press release, that the Form 10-Q contained a revenue recognition policy and was signed by Nuti, Greenquist and Conboy, and that Nuti and Greenquist signed certifications pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002; and respectfully refer the Court to the Form 10-Q and certifications for their entire contents.

132.     Defendants deny the allegations in Paragraph 132, except admit that the quoted language appears in the Form 10-Q quarterly report filed on May 6, 2005, and respectfully refer the Court to the Form 10-Q for its entire contents.

133.    To the extent the allegations in Paragraph 133 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 133.

134.    Defendants deny the allegations in Paragraph 134, except admit that The Buckingham Research Group issued an analyst report on May 4, 2005 that reduced Symbol's rating from "Strong Buy" to "Accumulate," and respectfully refer the Court to The Buckingham Research Group analyst report for the entirety of its contents.

135.     Defendants deny the allegations in Paragraph 135, except admit that Symbol issued a press release on June 15, 2005, announcing that Elise Kirban had been named Chief Ethics and Compliance Officer, which was a newly created position; admit that Nuti was quoted in the press release; and respectfully refer the Court to the press release for its complete and accurate contents.

136.    To the extent the allegations in Paragraph 136 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 136.

137.     Defendants deny the allegations in Paragraph 137, except admit that on June 27, 2005, Symbol filed an amended Form 10-K for fiscal year 2003 and amended Forms 10-Q for the first three quarters of 2004, and respectfully refer the Court to the Form 10-K and Forms 10-Q for their entire contents.

138.     Defendants deny the allegations in Paragraph 138, except admit that Symbol issued a press release on June 28, 2005, announcing a reduction in its guidance for the second quarter of 2005 from the $460 to $470 million range to approximately $440 million and earnings per share from the $0.07 to $0.09 per share range to approximately $0.02 to $0.05 per share, and

announcing a total pre-tax, non-recurring charge in the range of $75 to $95 million; and respectfully refer the Court to the press release for its entire contents.

139.   Defendants deny the allegations in Paragraph 139, except admit that Symbol's stock price closed at $10.47 a share on June 28, 2005, opened at $9.55 a share on June 29, 2005, closed at $9.72 a share on June 29, 2005, and further admit that on June 29, 2005, Bear Stearns issued an analyst report concerning Symbol, and respectfully refer the Court to the Bear Stearns analyst report for its entire contents.

140.   Defendants deny the allegations in Paragraph 140, except admit that an analyst conference call took place on June 28, 2005, and that Nuti spoke during the call; and respectfully refer the Court to the conference call transcript for its entire contents.

141.   To the extent the allegations in Paragraph 141 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 141.

142.   Defendants deny the allegations in Paragraph 142, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning James Cramer, and admit that on July 14, 2005, Symbol's stock price opened at $12.38 a share and closed at $12.46 a share.

143.   Defendants deny the allegations in Paragraph 143, except admit that Symbol issued a press release on July 14, 2004, announcing a reduction in its guidance for the second quarter of 2005 from approximately $440 million to approximately $425 to $430 million and the resignation of Greenquist; except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Trader Daily article; and respectfully refer the Court to the press release for its entire contents.

144.    Defendants deny the allegations in Paragraph 144, except admit that an analyst conference call took place on July 14, 2005, and that Nuti and Iannuzzi spoke during the call; and respectfully refer the Court to the conference call transcript for its entire contents.  To the extent the allegations in Paragraph 144 state legal conclusions, no response is required.

145.    Defendants deny the allegations in Paragraph 145, except admit that on July 15, 2005, J.P. Morgan and The Buckingham Research Group issued analyst reports that reduced Symbol's rating to "Neutral," and respectfully refer the Court to the J.P. Morgan and The Buckingham Research Group reports for their entire contents.

146.    Defendants deny the allegations in Paragraph 146, except admit that Symbol's stock price closed at $12.46 a share on July 14, 2005, opened at $11.31 a share on July 15, 2005, and closed at $11.11 a share on July 15, 2005.

147.    Defendants deny the allegations in Paragraph 147, except admit that The WCCN Letter published in August 2005 contained the quoted language, and respectfully refer the Court to The WCCN Letter for its entire contents.

148.    To the extent the allegations in Paragraph 148 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 148, except admit that Symbol issued a press release on August 1, 2005, announcing the resignation of Nuti, and respectfully refer the Court to the press release for its entire contents.  Defendants further admit that Symbol's stock price closed at $11.64 a share on July 29, 2005, opened at $11.13 a share on August 1, 2005, closed at $9.85 a share on August 1, 2005, opened at $9.77 a share on August 2, 2005, and closed at $9.41 a share on August 2, 2005.

149.    To the extent the allegations in Paragraph 149 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph

149, except admit that Lead Plaintiff purports to bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased Symbol securities during the period of April 29, 2003 through August 1, 2005, both dates inclusive, and who were damaged thereby.

150.    To the extent the allegations in Paragraph 150 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 150, except admit that Symbol's common stock was traded on the NYSE during the alleged relevant period, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning the geographic diversity of purported class members and the beliefs of Lead Plaintiff.

151.    To the extent the allegations in Paragraph 151 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 151.

152.    To the extent the allegations in Paragraph 152 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 152.

153.    To the extent the allegations in Paragraph 153 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 153.

154.    To the extent the allegations in Paragraph 154 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 154.

155.    To the extent the allegations in Paragraph 155 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 155, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning Lead Plaintiff's intentions as to the element of reliance.

156.    To the extent the allegations in Paragraph 156 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 156.

157.    Defendants repeat and incorporate each and every response above as if fully set forth herein.

158-165.    To the extent the allegations in Paragraphs 158 through 165 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraphs 158 through 165.

166.    Defendants repeat and incorporate each and every response above as if fully set forth herein.

167-169.    To the extent the allegations in Paragraphs 167 through 169 state legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraphs 167 through 169.

<u>PRAYERS FOR RELIEF</u>

Defendants deny that Lead Plaintiff or any putative class member is entitled to any of the relief requested in the Complaint's Prayers for Relief or otherwise.

<u>JURY DEMAND</u>

No response to the jury demand is necessary, though Defendants reserve the right to move to strike the jury demand pursuant to Fed. R. Civ. P. 39(a)(2) as to issues on which a jury trial is not properly demanded.

<u>AFFIRMATIVE DEFENSES</u>

Without admitting any wrongful conduct on the part of Defendants and without conceding that Defendants have the burden of proof on any of the following defenses, Defendants assert the following defenses to the Complaint:

<u>First Affirmative Defense</u>
(Failure to State a Claim for Relief)

Lead Plaintiff's claims for relief are barred, in whole or in part, because they fail to state a claim against Defendants upon which relief may be granted.

<u>Second Affirmative Defense</u>
(Timing of Purchases)

Lead Plaintiff's claims for relief are barred, in whole or in part, because they are based upon alleged conduct that concluded before, or began after, Lead Plaintiff's securities purchases.

<u>Third Affirmative Defense</u>
(Standing)

Lead Plaintiff's claims for relief are barred, in whole or in part, insofar as Lead Plaintiff lacks standing to assert the claims alleged in this action.

<u>Fourth Affirmative Defense</u>
(Various Equitable Doctrines)

Lead Plaintiff's claims are barred, in whole or in part, under various equitable doctrines, including waiver, unclean hands, estoppel, ratification, or failure to use due care.

<u>Fifth Affirmative Defense</u>
(No Disclosure Obligation Beyond that Imposed by Law)

Lead Plaintiff's claims for relief are barred, in whole or in part, because Lead Plaintiff

seeks to impose upon the Defendants disclosure obligations that are inconsistent with, or in

excess of, those imposed by the federal securities laws, including but not limited to the Securities

Act of 1933, the Securities Exchange Act of 1934, and the rules and regulations promulgated by

the SEC.

<u>Sixth Affirmative Defense</u>
(Bespeaks Caution Doctrine)

Lead Plaintiff's claims for relief are barred, in whole or in part, because some or all of the

alleged public disclosures bespoke caution and/or contained sufficient cautionary language and

risk disclosure as to be non-actionable under the PSLRA.

<u>Seventh Affirmative Defense</u>
(No Material Misrepresentation)

Lead Plaintiff's claims for relief are barred, in whole or in part, because the public filings

and written and oral statements by Defendants did not contain any actionable misrepresentations

or omissions, all statements alleged to have been made had a reasonable basis in fact, and

because any alleged misrepresentations or omissions were not material.

<u>Eight Affirmative Defense</u>
(Scienter/Culpable Participation)

Lead Plaintiff's claims for relief are barred in whole or in part because Lead Plaintiff has

failed to allege, and cannot prove, any facts showing that Defendants acted with the requisite

scienter or culpably participated in the alleged misconduct.

<u>Ninth Affirmative Defense</u>
(Good Faith)

Lead Plaintiff's claims for relief are barred, in whole or in part, because at all times

mentioned in the Complaint and with respect to all matters contained therein, Defendants acted

in good faith and exercised reasonable care and diligence and did not know, and in the exercise

of reasonable care could not have known, of any alleged misconduct, untruth, omission, or any

other action in the Complaint that allegedly gives rise to liability.

<u>Tenth Affirmative Defense</u>
(Justifiable Reliance)

Lead Plaintiff's claims for relief are barred, in whole or in part, because Defendants

justifiably relied on information and advice provided to them by others.  Defendants relied in

good faith on: (i) the professional judgments and advice of in-house and outside professionals

and others with respect to the contents of Symbol's financial statements, the sufficiency of

disclosures, and adequacy of internal controls; (ii) the certifications provided to them by Symbol

officers and employees concerning the foregoing subjects, as well as Symbol's quality control,

identification of risks, and adherence to standards; and (iii) Symbol's procedures and processes

for, among other things, preparation of disclosures and quality control.  In addition, Symbol had

in place reasonable processes and procedures designed to ensure that its public disclosures

complied with all applicable legal requirements, and Defendants reasonably relied on these

processes and procedures.

## Eleventh Affirmative Defense
### (Reasonable Diligence)

Lead Plaintiff's claims for relief are barred, in whole or in part, because, in connection with the making of any statements to any purchasers of the securities of Symbol, Defendants exercised reasonable diligence to ensure that any public disclosures they made complied with all applicable legal requirements.

## Twelfth Affirmative Defense
### (Unreasonable Reliance)

Lead Plaintiff's claims for relief are barred, in whole or in part, because Lead Plaintiff did not rely on any material statements, acts, or omissions alleged in the Complaint, or on the price of Symbol securities as affected by any alleged misrepresentations or omissions, and because any such reliance, if proven, was unreasonable.

## Thirteenth Affirmative Defense
### (No Fraud on the Market)

Lead Plaintiff's claims for relief are barred, in whole or in part, because the fraud on the market theory is not applicable to the claims alleged in this action.

## Fourteenth Affirmative Defense
### (No Loss Causation)

Lead Plaintiff's claims for relief are barred, in whole or in part, because Lead Plaintiff cannot prove loss causation.

## Fifteenth Affirmative Defense
### (No Compensatory Damages)

Lead Plaintiff's claims for relief are barred, in whole or in part, because Lead Plaintiff suffered no damages.

Sixteenth Affirmative Defense
(Offset)

Any judgment against Defendants is subject to offset in the amount of any benefit, tax or

otherwise, received by Lead Plaintiff through its investments.

Seventeenth Affirmative Defense
(No Attorneys' or Experts' Fees)

Lead Plaintiff is precluded from recovering attorneys' fees or experts' fees from

Defendants under applicable provisions of law.

Eighteenth Affirmative Defense
(Preclusion)

Lead Plaintiff's claims against Defendants are barred, in whole or in part, by the

doctrines of claim and issue preclusion.

Nineteenth Affirmative Defense
(Control Person Liability)

The Individual Defendants are not liable for control person liability under Section 20(a)

of the Exchange Act, 15 U.S.C. § 78t(a), as Defendants and their subordinates did not

disseminate or make any false or misleading statements or omit any material facts required to be

disclosed.

Twentieth Affirmative Defense
(Inducement)

Defendants are not liable for control person liability under Section 20(a) of the Exchange

Act, 15 U.S.C. § 78t(a), as Defendants and their subordinates did not directly or indirectly induce

any act alleged to constitute a violation of Section 20(a) of the Exchange Act.

<u>Twenty-First Affirmative Defense</u>
(Statutes of Limitations and Repose)

Lead Plaintiff's claims for relief are barred, at least in part, by the applicable statute of limitation and statute of repose.

<u>Additional Defenses Reserved</u>

Defendants hereby give notice that they may rely on other defenses if and when such defenses become known during the course of litigation, and hereby reserve the right to amend their Answer and to assert any additional defenses, cross-claims, counterclaims, and third party claims as they become known or available.

**WHEREFORE**, Defendants respectfully seek judgment as follows:

A.      That Lead Plaintiff takes nothing by virtue of the Complaint;

B.      That Lead Plaintiff's claims against Defendants are dismissed with prejudice as to Defendants;

C.      That Defendants be awarded the costs of defending this action, including reasonable attorneys' fees, costs and disbursements; and

D.      For such other and further relief as this Court may deem just and proper.

<u>DEMAND FOR JURY TRIAL</u>

The Defendants hereby demand a jury trial.

Dated: January 31, 2014
      New York, New York

Respectfully submitted,

DECHERT LLP

  s/  Kathleen N. Massey        
By:  Andrew J. Levander
     (andrew.levander@dechert.com)
     Kathleen N. Massey
     (kathleen.massey@dechert.com)
     Yelena Shreyberg
     (yelena.shreyberg@dechert.com)

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Defendants*