**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

IN RE SYMBOL TECHNOLOGIES, INC.
SECURITIES LITIGATION

**MEMORANDUM AND ORDER**
CV 05-3923 (DRH) (AKT)

----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Lead Plaintiff Iron Workers Local #580 Pension Fund ("Plaintiff" or "the Fund") commenced this action against Defendants Symbol Technologies, Inc. ("Symbol"), William R. Nuti ("Nuti"), Salvatore Iannuzzi ("Iannuzzi"), Mark T. Greenquist ("Greenquist"), Todd Abbott ("Abbott"), Arthur O'Donnell ("O'Donnell") and James M. Conboy ("Conboy"), (collectively, the "Defendants") for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-5 ("Rule 10b-5"), 17 C.F.R. § 240.10b-5, as well as Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  *See generally* Complaint [DE 1].  Plaintiff brings the instant motion seeking to compel Defendants' production of documents pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.3.  *See* Plaintiff's Memorandum of Law in Support of Motion to Compel Production of Documents ("Pl's. Mem.") [DE 107] at 1.[1]  For the reasons stated below, Plaintiff's motion to compel is DENIED, without prejudice, and with leave to refile upon Defendant's compliance with the directives in this Memorandum and Order.

---

[1]    For purposes of this motion, the Court presumes familiarity with the background facts and procedural posture of this case which are set forth in detail in Judge Hurley's December 5, 2013 Memorandum and Order [DE 80] adjudicating Defendants' Rule 12(b)(6) Motion to Dismiss.

## II. PROCEDURAL HISTORY

On November 7, 2014, the Fund filed the instant motion to compel production of certain documents related to an internal investigation conducted in the wake of a revenue misstatement for which Symbol has asserted work product privilege.[2] *See* DE 106. Specifically, Plaintiff seeks "documents collected or created in the course of the internal investigation into the cause of [Symbol's] October 26, 2004 misstatement of revenues . . ." *Id*. Also on November 7, 2014, by and through its counsel, Symbol submitted its opposition to Plaintiff's motion to compel production. *See* DE 109-111. The Fund submitted its Reply on that same date. *See* DE 112-113. On April 23, 2015, the Fund filed a supplemental submission in further support of its motion to compel. *See* DE 124-126. On May 22, 2015, Symbol filed a further memorandum in opposition responding to Plaintiff's supplemental submission. *See* DE 129.[3] The Court now turns its attention to the substance of the motion.

---

[2] On October 26, 2004, Symbol issued a press release which reported its third quarter revenue for that year. *See* April 23, 2015 Decl. of Michael J. Wernke in Support of Plaintiff's Motion to Compel ("Wernke Decl") [DE 125], Ex. A at 9. Between October 29, 2004 and November 1, 2004, Symbol performed an annual physical count of its inventory at its Bentonville, Arkansas warehouse which revealed a discrepancy between the value of inventory reported and that which was actually present. *Id*. The misstated revenue totaled approximately $10 million. *Id*. While an internal audit ensued with respect to this internal inventory discrepancy, one of Symbol's primary suppliers, ScanSource, alerted Symbol that it had underreported $3.3 million in inventory which further downgraded Symbol's third quarter revenue. *Id*. at 4. An internal investigation followed and resulted in Symbol retaining outside counsel to address the potential errors in its third quarter revenue statement. *Id*. at 9. In addition, on November 7, 2004, Symbol alerted the Department of Justice and the SEC to the revenue discrepancy. *Id*. at 9; *see* Declaration of Kathleen N. Massey, dated October 27, 2014 [DE 111] ("Massey Decl."), Ex. D, E. These events frame Plaintiff's instant motion to compel production of documents related to this internal investigation.

[3] The Court notes that Plaintiff never sought leave to file these supplemental materials, in violation of this Court's Rules. Plaintiff's assertion that such materials included newly

## III. THE PARTIES' CONTENTIONS

Plaintiff asserts two primary arguments in support of its motion to compel: (1) the internal documents being sought are not protected by the work product doctrine since they were not prepared in anticipation of litigation, and (2) even if the work product privilege did apply Symbol nevertheless waived the protections afforded by the privilege when it released the documents to the Securities & Exchange Commission ("SEC") as well as to the public. Pl.'s Mem. at 6, 9.

With respect to its first argument, Plaintiff claims that Symbol's internal investigation was not conducted because of "impending litigation" but rather was the result of "the immediate aftermath of the discovery of the misreporting of inventory[.]" *Id*. at 6. In this context, Plaintiff claims that Symbol "acted pursuant to business imperatives to determine the amount of the discrepancy, how exactly it happened, and [to engage] in corrective action to prevent recurrence, which would have been done irrespective of any threatened prospective litigation." *Id*. Plaintiff further argues that given Symbol's less than stellar record with respect to its internal controls and revenue recognition issues, the actions it took in the wake of the revenue misstatement were done "in order to protect [Symbol's] business reputation." *Id*. at 6-7.

In support of its "waiver" argument, Plaintiff contends that Symbol's public disclosure of the results of the investigation – as well as the fact that Symbol voluntarily disclosed the investigation's details to the SEC – "waived any work product protection that may have existed as to documents created pursuant to the Investigation, in particular, any documents necessary to verify the adequacy of the investigation and management's ignorance of the inventory

---

discovered evidence relevant to the adjudication of the instant motion is all the more reason why leave to file the supplement should have been sought.

adjustments." *Id*. at 9. Further, Plaintiff claims that because Symbol used the thoroughness of the investigation, coupled with management's asserted lack of knowledge, as a proverbial sword, it cannot also claim that "the documents needed to verify their statements are shielded by the work product doctrine." *Id*. at 10.

Symbol interposes three substantive arguments in response to Plaintiff's contentions. First, Symbol asserts that contrary to Plaintiff's characterization, (*i.e.* that the documents created pursuant to Symbol's internal investigation were created in the ordinary course of business), such documents were in fact prepared in anticipation of litigation. *See* Symbol Technologies, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion to Compel Production of Documents ("Def.'s Opp'n") [DE 109] at 5. Specifically, Symbol claims that in light of the history of Government investigations of Symbol, the shareholder litigation, the Deferred Prosecution Agreement with the United State Attorney's Office for the Eastern District of New York ("USAO") and the Consent Judgment Symbol entered into with the SEC, "there can be no serious question [] that Symbol's outside counsel was retained to conduct an independent investigation because of anticipated litigation." *Id*. In further support of its argument, Symbol maintains that any violation of the Deferred Prosecution Agreement could have made it susceptible to future litigation by the USAO. In any event, Symbol argues, whether the documents at issue were created both for a business purpose as well as in anticipation of litigation is irrelevant since the documents "would not have been created in similar form absent the threat of litigation." Def.'s Opp'n at 6. *See* October 27, 2014 Declaration of Kathleen N. Massey ("Massey Decl."), [DE 111], Ex. D (Deferred Prosecution Agreement), E (SEC Consent Judgment).

4

In addition, Symbol claims that it never waived its protections under the work product privilege because: (1) the privilege as to source documents is not waived through disclosure to the SEC unless "those specific materials are explicitly identified, cited, or quoted in information disclosed to the SEC[;]" (2) to the extent Plaintiff seeks to compel production regarding disclosures to the SEC about conclusions counsel reached as a result of the internal investigation, Plaintiff cannot point to any explicit identification, citation or quotation of source material warranting additional production; and (3) since Symbol has not placed any work product at issue or affirmatively relied on any work product, "let alone in a manner prejudicial to Plaintiff," there is no basis for a finding of subject matter waiver. Def.'s Opp'n at 7-9.

Finally, Symbol asserts that Plaintiff cannot overcome the protections afforded under the work product doctrine since "Plaintiff has not made even the barest attempt, much less a showing, to establish any substantial need for the fact work product created by Symbol's attorneys or to show undue hardship in obtaining the substantial equivalent." *Id.* at 10. Specifically, Symbol states that Plaintiff has not attempted to seek out the testimony of relevant parties nor has it explained why the information sought is unavailable given the extensive discovery that has taken place to date. *Id.*

In its Reply, the Fund argues that despite Symbol's assertions that the documents it seeks to withhold are protected under the work product doctrine, the evidence it relies upon fails to meet its "heavy burden and mandates a rejection of Symbol's claim of privilege." Plaintiff's Reply Memorandum in Support of Motion to Compel Production of Documents ("Pl.'s Reply") [DE 112] at 1. Specifically, the Fund alleges that Symbol, in an attempt to carry its burden, "relies exclusively on a conclusory self-serving declaration from [its] counsel [asserting] that the

5

Investigation was conducted in anticipation of litigation." *Id*. In addition, the Fund claims that Symbol is unable to establish that the documents in question "would not have been prepared in substantially similar form but for the prospect of litigation[,]" and therefore its claim of privilege fails. *Id*. at 2.

In its supplemental submission, the Fund argues that during the March 5, 2015 deposition of Douglas Jensen ("Jensen"), the Independent Examiner retained by Symbol in the wake of the October 26, 2004 revenue overstatement incident, Symbol voluntarily disclosed to Jensen all aspects of the internal investigation (including the substance of all interviews conducted as well as the attorney's mental impressions of the investigation). Plaintiff's Supplemental Submission of Newly Discovered Evidence in Support of Motion to Compel Production of Documents ("Pl.'s Supp. Mem.") [DE 124] at 1.

The Fund contends that Jensen's deposition testimony establishes that "Symbol as well as Andrew Levander and Gene Ingoglia at Dechert updated Jensen regularly on the status of the Investigation, and specifically as to what was learned in the Investigation interviews[.]" *Id*. at 3. According to the Fund, such voluntary disclosures to the government of the substance of internal investigations waive any claims of privilege in subsequent private litigation. *Id*. In addition, Symbol "disclosed every aspect of its Investigation to Independent Examiner Jensen . . . which Jensen and [Symbol] also disclosed in telephone conversation with the USAO and SEC." *Id*. at 4. As such, the Fund concludes that even in the event work product privilege ever attached to the withheld documents, "the protection was waived by [the] voluntary disclosure to the Independent Examiner." *Id*.

6

In its response to the Fund's supplemental submission, Symbol argues that any disclosure of materials to the Independent Examiner did not constitute waiver since the Independent Examiner did not hold a position adverse to Symbol for purposes of the work product doctrine. *See* Symbol Technologies Inc.'s Memorandum in Response to Lead Plaintiff's Supplemental Submission in Support of Motion to Compel the Production of Documents ("Def's Supp. Mem.") [DE 129] at 1-2. Though Symbol concedes that some "tension" may have existed between itself and the Independent Examiner, Symbol maintains that this type of adversarial relationship is not the type contemplated by courts when determining if the work product privilege applies. Given the confidentiality agreement in place with the Independent Examiner, Symbol states that in any event, any disclosure of materials pursuant to that agreement is not sufficient to support a waiver of privilege. *Id*. at 5.

Symbol next asserts that even if its disclosure could support a finding of waiver, no waiver occurred in this case because the Fund's newly discovered evidence fails to support a finding that Symbol disclosed the substance of its counsel's investigation. Specifically, Symbol claims that (1) Jensen's deposition testimony does not establish that Symbol explicitly identified, cited or quoted the underlying materials which the Fund seeks and (2) the transcript does not show that Symbol disclosed the substance of interviews or its attorney's mental impressions with respect to the investigation. *Id*. at 6. Symbol further argues that Jensen's deposition testimony does not demonstrate that any disclosure by Symbol or its counsel was detailed enough to establish that Jensen was provided with the substance of the interviews conducted during the investigation. At most, according to Symbol, Jensen's testimony suggests only that Symbol and its counsel kept Jensen apprised of who was being interviewed and provided minimal insight into

7

facts as they were uncovered throughout the investigation. *Id*. at 7-8. In short, Symbol maintains that Jensen's testimony "does not permit the Court to determine what Symbol told Jensen, [and therefore] Plaintiff cannot establish a waiver of work product protection over counsel's interview memoranda or notes." *Id*. at 8.

Symbol also makes the argument that the Fund's request for any documents covered by the work product privilege should be denied because the Fund has not established the requisite "substantial need." Since the Fund's sole argument for release of the documents is that its need for such disclosure is "self-evident," the Fund has not met the threshold for disclosure according to Symbol. *Id*. at 9. Symbol asserts that since (1) the Fund is in possession of extensive documentation regarding the investigation, (2) the Fund will have the opportunity to obtain testimony from other persons likely to have relevant information about the revenue overstatement, and (3) the Fund has not shown that the witnesses whose interview memoranda it seeks are not unavailable to be deposed, the Fund cannot establish "substantial need" and its claim should fail. *Id*. at 10-11.

## IV. THE WORK PRODUCT PRIVILEGE

The so-called "work product privilege" is codified in Federal Rule of Civil Procedure 26(b)(3) which provides, in part, as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable . . . ; and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> . . . .

If a court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other legal representative concerning the litigation. Fed. R. Civ. P. 26(b)(3).

Essentially, the work product privilege "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003)); *see also United States v. Adlman*, 134 F.3d 1194, 1196–97 (2d Cir. 1998) (noting that "work product privilege 'is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). The party asserting the privilege bears the "heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F. 3d at 183.

"Because the work product protection arises only for materials 'prepared in anticipation of litigation,' the doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'" *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015) (quoting *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)). Significantly, work product protection does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation. . . ." *Adlman*, 134 F.3d at 1202. In making a determination, a court must ask "not merely whether [the party invoking the privilege] contemplated litigation when it generated the materials at issue, but rather whether these materials 'would have been prepared in essentially similar form irrespective of litigation.'" *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) (quoting *Adlman*, 134 F.3d at 1204).

The burden of establishing that the doctrine applies rests on the party asserting the privilege, and, as such, it is that party who is tasked with showing what "would have" happened in these circumstances. *Wultz*, 2015 WL 362667, at *11. As the court noted in *Allied Irish Banks*,

> it is not easy for a factfinder to determine what "would have" happened in some hypothetical situation. . . . Nonetheless, this is the question that the *Adlman* test requires us to answer and it is an exercise that courts have regularly performed.

240 F.R.D. at 106; *see Verizon Directories Corp. v. Yellow Book USA, Inc.*, No. 04-CV-251, 2004 WL 4054842, at*2 (E.D.N.Y. July 22, 2004) (e-mail released where no showing made that it would not have been created in essentially similar form irrespective of the litigation); *DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, No. 04 Civ. 4099, 2006 WL 357825, at *1 (S.D.N.Y. Feb. 15, 2006) (documents created by management consultant not work product where consultant "would have created" them in similar form "even if the potential for litigation had been remote"); *In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.*, No. 03 Civ. 4304, 2005 WL 1473925, at *1 (S.D.N.Y. June 22, 2005) (factual statement prepared following collision of boats not work product where "business reasons for obtaining a statement from their captain's" would have compelled the report regardless of litigation).

## V.    DISCUSSION

In order to properly determine the outcome of the instant motion, the Court is required to analyze two issues — whether the work product doctrine applies in the first instance, and, if so, whether despite its application it was nevertheless waived due to the alleged disclosures made on the part of Symbol to third parties, including the Government and Symbol's own Independent Examiner. However, after reviewing the parties' submissions, the Court's ability to review the merits of this motion is limited by the record before it. For the reasons which follow, the Court, in an exercise of caution, must answer the first question in the affirmative but cannot answer the second question unless and until the proper information and materials are provided.

In its Memorandum of Law, the Fund characterizes the documents it seeks as "factual documents generated during the Investigation, including but not limited to, summaries and notes of witness interviews as well as drafts of reports and presentations." Pl.'s Mem. at 5. The Fund

11

further asserts that it is "not seeking production of analyses of litigation strategies contemplated by Symbol." *Id*. Despite the Fund's proffer, Symbol takes issue with such assertion and claims that "[i]t does not appear that Plaintiff has any genuine complaint about the production of so-called factual documents . . . [since] Symbol has already produced or will shortly produce relevant, non-privileged documents collected from, or found in the custodial files of, Symbol employees, including documents that relate to an internal investigation of the overstatement by Symbol's internal audit personnel." Def.'s Opp'n at 9. In addition, Symbol claims that because the Fund seeks to compel Symbol to produce counsel's notes, interview memoranda and draft communications to the SEC, "Plaintiff really seeks production of documents that reflect counsel's mental impressions, conclusions, opinions and legal theories." *Id*. at 9-10. The Fund counters that its "ability to more specifically address the issue of work product protection as it relates to specific documents withheld has been hindered by Symbol's failure to produce a privilege log. . . ." Pl.'s Mem. at 5 n. 1.

The circumstances within which the documents at issue were created appear to stem from Symbol's investigation into its overstatement of revenue beginning in November 2004 – an investigation for which it retained representation by outside counsel. *See* Wernke Decl., Ex. A at 9; Pl.'s Mem. at 5. In cases such as this, where an attorney-assisted investigation has been conducted, "the court must make a 'fact specific inquiry' to determine if and when an investigation changed from being within the ordinary course of business to being because of litigation."[4] *Koumoulis v. Indep. Fin. Mktg. Group, Inc.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013),

---

[4] Symbol appears to acknowledge that at a minimum, the investigation conducted by its outside counsel was conducted for both a business purpose and because of anticipated litigation. Def.'s Opp'n at 6.

12

*aff'd* 29 F. Supp. 3d 142 (E.D.N.Y. 2014); *see U.S. Fid. & Guar. Co. v. Braspetro Oil Srvs. Co.*, No. 97 Civ. 6124, 2000 WL 744369, at *9 (S.D.N.Y. June 8, 2000) ("Although at some point, a company's investigation may shift from the ordinary course of business to an anticipation of litigation, there is no hard and fast rule as to when this occurs; rather, a fact-specific inquiry is required to determine when this shift occurs."); *see also Adlman*, 134 F.3d at 1202 (recognizing that a document falls within the ambit of the work product doctrine where "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.") (emphasis in original) (internal quotations and citation omitted).

At this juncture, the Court is hampered by the fact that it does not have sufficient factual information concerning the particular documents at issue in order to make such a factual determination. To date, Symbol has not produced the required privilege log in this case particularizing the documents being withheld based on privilege. Nor has either party requested an *in camera* review of the documents at issue so that the Court can properly engage in a case-specific assessment whether the work product privilege is applicable here in the first instance.

While "[c]ourts have a degree of discretion in assessing whether a claim of privilege has been adequately supported," a party's privilege log, supporting affidavits and an *in camera* review of the documents themselves are generally required to permit a proper inquiry. *CSC Recovery Corp. v. Daido Steel Co., Ltd.*, 94 CIV. 9294, 1997 WL 661122, at *2 (S.D.N.Y. Oct. 22, 1997); *see Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y. 2003) (examining privilege log as well as documents themselves in order to determine applicability of the privilege); *In re OM Securities Litigation*, 226 F.R.D. 579, 583 (N.D. Ohio 2005) (ordering

production of documents for *in camera* review along with consideration of privilege log and a "statement setting forth the specific facts, evidence, and law showing why documents are protected" in order to properly determine whether privilege applied); *Koumoulis*, 295 F.R.D. at 43 (relying on both privilege log and partial *in camera* review of documents and ultimately determining that with respect to documents not provided for *in camera* review "this Court cannot determine . . . whether these documents are protected by the . . . work-product privilege").

Indeed, "[w]hen faced with claims of privilege, courts often undertake in camera review in order to supplement the parties' privilege logs and determine the content of the documents." *Weber v. Paduano*, No. 02 Civ. 3392, 2003 WL 161340, at *13 (S.D.N.Y. 2003); *see Safeco Ins. Co. of America v. M.E.S., Inc.*, No. 09-CV-3312, 2013 WL 1680684, at *4 (noting that "*[i]n camera* review is 'a practice both long-standing and routine in cases involving claims of privilege.'") (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)); *see, e.g.*, *In re Dow Corning Corp.*, 261 F.3d 280, 282–83 (2d Cir. 2001) (submitting documents to district court for *in camera* review of attorney-client and work product claims); *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (reviewing documents *in camera* to evaluate claims of attorney-client and work product protection); *Adlman,* 134 F.3d at 1204 (conducting *in camera* review of memorandum for which work product protection was asserted); *In re Six Grand Jury Witnesses*, 979 F.2d 939, 942 (2d Cir. 1992) (reviewing cost analyses *in camera* where witnesses claimed preparation was at behest of counsel and constituted work product); *In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991*, 959 F.2d 1158, 1162, 1167 (2d Cir. 1992) (affirming district court's

finding, after *in camera* review, that subpoenaed telephone company records did not constitute attorney work product).

It is true that the burden rests squarely with Symbol to establish the necessary factual basis for its assertion of the work product doctrine. *See CSC Recovery Corp.*, 1997 WL 661122, at *2 ("The law is clear that the burden is on [the party raising the privilege] to establish the factual basis for its claim. . . ."); *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y. 2003) (recognizing that even where the party asserting existence of the privilege "anticipated [] litigation at the time each document was created . . . [it] must still bear the 'burden of demonstrating that the documents would not have been prepared but for the litigation.'") (internal citation omitted). However, a decision as to whether Symbol can meet its burden in the instant case is premature where the Court lacks the necessary information and documentation to make such a determination. Indeed, not even the parties themselves seem able to explicitly articulate what documents are actually it issue other than through the sweeping descriptions contained in their respective briefs.

To be sure, as the party asserting the existence of work product privilege, Symbol was required to serve a privilege log contemporaneously with its document production setting forth the specific documents it contends are privileged. Federal Rule of Civil Procedure 26 states, in pertinent part, the following:

> **(5)** ***Claiming Privilege or Protection Trial Preparation Materials***.
> *(A) Information Withheld*. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and

> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

In addition, Local Civil Rule 26.2 provides:

> (a) Unless otherwise agreed by the parties or directed by the Court, where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion,
>
> (1) The person asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and
>
> (2) The following information shall be provided in the objection, or (in the case of a deposition) in response to questions by the questioner, unless divulgence of such information would cause disclosure of the allegedly privileged information:
>
> (A) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;
>
> (B) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.
>
> (b) Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing at the time of the

>response to such discovery or disclosure, unless otherwise ordered
>by the Court.

Local Civil Rule 26.2(a)(2)(A); *see also Koumoulis*, 295 F.R.D. at 36. In addition to the privilege log, Symbol also carries the affirmative burden to assert facts in order to establish that the privilege applies. *See Wultz*, 304 F.R.D. at 394.

In light of the foregoing factors, the Court finds it entirely premature to engage in a determination of the merits whether the work product privilege applies and, if so, whether it was nevertheless waived. The supporting documentation, which would enable such an inquiry, is lacking here. Though the parties seemingly would have this Court make a sweeping "all or nothing" determination as to privilege, such a blanket approach simply does not comport with the fact-intensive inquiry required in such cases. Symbol's resistance here has complicated the progress of discovery. The Fund has been placed at a disadvantage because of Symbol's failure to provide a privilege log. However, that fact alone is not a sufficient reason for this Court to compel production of documents that may be protected by the work product privilege, either in whole or in part — particularly since once such documents are released, the proverbial bell has been rung and cannot later be unrung.

In this regard, the case of *Koumoulis v. Independent Financial Marketing Group, Inc.* is instructive. In *Koumoulis*, the defendant asserted work product privilege to attempt to shield various documents from production. *Koumoulis*, 295 F.R.D. at *33. Though the defendant in that case provided a privilege log and some documents for *in camera* review, the court noted that the defendant had ultimately failed to meet its burden since "[a]s to the documents written or partially written by an attorney, the privilege log provides insufficient information to determine whether an attorney created these documents because of litigation or whether, absent the threat

17

of future litigation, no comparable communications would have been created." *Id*. at *43. The Court went on to state that this deficiency, coupled with the lack of any affidavits which could have otherwise demonstrated support, provided a sufficient reason to deny defendant's claim of privilege. *Id*. Despite such an assertion, however, the court in *Koumoulis* took a more cautious approach, stating:

> In an abundance of caution, the Court will allow Defendants to amend their privilege log to include the required information for the documents that were not reviewed *in camera. See* Fed.R.Civ.P. 26(b)(5)(A). The Parties should then re-consider whether the production of any withheld documents is warranted. . . .

*Id*. Although Symbol has not produced a privilege log in the first instance in this action, this Court finds that the cautious reasoning set forth in *Koumoulis* is nonetheless applicable. The Court therefore adopts the approach utilized in *Koumoulis* and applies it here.

Within 21 days of this Memorandum and Order, Symbol shall produce a privilege log in conformity with Fed. R. Civ. P. 26 and Local Civil Rule 26.2 with respect to any document that it is withholding on a claim of privilege. Upon production of the privilege log, the parties shall meet and confer within the following 21 days with respect to those documents listed on Symbol's log to which the Fund claims the privilege should not apply. If, after that meet-and-confer, Plaintiff still seeks to refile its motion to compel, Plaintiff will have until Nov. 24, 2015 to file its motion. At that juncture, Symbol will be required to simultaneously provide the documents at issue to the Court for an *in camera* review.

## V. CONCLUSION

For the reasons set forth in this Memorandum and Order, Plaintiff's motion to compel is DENIED, without prejudice, and with leave to renew once the parties have complied with the directives in this Memorandum and Order.

**SO ORDERED.**

Dated: Central Islip, New York
September 29, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge