**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

IN RE SYMBOL TECHNOLOGIES, INC.    **MEMORANDUM AND ORDER**
SECURITIES LITIGATION
                                  CV 05-3923 (DRH) (AKT)

----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Lead Plaintiff Iron Workers Local #580 Pension Fund ("Plaintiff" or "the Fund") commenced this action against Defendants Symbol Technologies, Inc. ("Symbol"), William R. Nuti ("Nuti"), Salvatore Iannuzzi ("Iannuzzi"), Mark T. Greenquist ("Greenquist"), Todd Abbott ("Abbott"), Arthur O'Donnell ("O'Donnell") and James M. Conboy ("Conboy"), (collectively, the "Defendants") for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-5 ("Rule 10b-5"), 17 C.F.R. § 240.10b-5, as well as Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). *See, generally*, Complaint ("Compl.") [DE 1]; Amended Class Action Complaint ("Am. Compl.") [DE 26]. Plaintiff brings the instant motion seeking sanctions based upon Symbol's alleged spoliation of evidence [DE 115] at 1.[1]

---

[1]     For purposes of this motion, the Court presumes familiarity with the background facts and procedural posture of this case which are set forth in detail in Judge Hurley's December 5, 2013 Memorandum and Order [DE 80] adjudicating Defendants' Rule 12(b)(6) Motion to Dismiss.

## II. RELEVANT PROCEDURAL HISTORY[2]

On August 16, 2005, the Fund filed a Class Action Complaint against the Defendant in this Court. *See* DE 1. Approximately one year later, on August 30, 2006, the Fund filed its Consolidated Amended Class Action Complaint which lengthened the class period and asserted further allegations of wrongdoing on the part of Defendants. *See* DE 26. Following Judge Hurley's denial of Defendant's motion to dimiss pursuant to Rule 12(b)(6) [DE 80], the undersigned, by Electronic Order dated December 9, 2013, directed the parties to appear for a discovery status conference on February 21, 2014. At that conference, after discussion with counsel, this Court implemented a discovery plan. On July 24, 2014, the Court "so ordered" the parties' proposed Case Management and Scheduling Order *nunc pro tunc*. *See* DE 92.

Plaintiff filed the instant letter motion on February 3, 2015 pursuant to Local Civil Rule 37.3, seeking sanctions against Symbol for the alleged spoliation of evidence. *See* DE 15. On February 6, 2015, Symbol responded to Plaintiff's allegations. Plaintiff then filed a supplemental submission on April 15, 2015 in support of its initial letter motion. *See* DE 121.[3] On April 24, 2015, Symbol filed a letter with supporting materials responding to Plaintiff's supplemental filing. *See* DE 127.[4]

---

[2] Given the long and complex procedural history of this case, the Court will focus only on the procedural history relevant to the disposition of the issues raised in this spoliation motion.

[3] Plaintiff styled DE 121 as a "motion for discovery," and not as a supplemental submission relating to DE 115. In any event, the Court notes that Plaintiff never sought leave to file this submission since it is clearly not a separate and distinct letter motion requiring independent adjudication apart from Plaintiff's DE 115 submission. As such, it will be considered accordingly.

[4] Defendant did not seek leave of the Court before filing a response to Plaintiff's supplemental materials.

Having reviewed the relevant procedural history, the Court turns its attention to the instant motion.

## III. PLAINTIFF'S MOTION FOR SANCTIONS BASED UPON SPOLIATION OF EVIDENCE

### A. The Parties' Contentions

#### 1. *The Fund's Initial Letter Motion*

By letter motion dated February 3, 2015, the Fund moved for sanctions based upon Defendant Symbol's alleged spoliation of evidence. The Fund argued that Symbol did not properly preserve documents from its Regional and Area Sales Managers and that without these documents, "Plaintiff has no visibility into how the commits[5] from account managers were created before being rolled up through Regional Managers and Sales Directors to management." Plaintiff's Letter Motion for Sanctions against Defendant Symbol Technologies, Inc. for Spoliation of Evidence ("Pl.'s Mot.") [DE 115] at 3. Specifically, the Fund claims that Symbol failed to: (1) preserve documents from six of the seven sales custodians identified in the Amended Class Action Complaint concerning how the "commits" from account managers were created; (2) preserve the files of Symbol's Chief Executive Officer William R. Nuti during the

---

[5] The Consolidated Class Action Complaint alleges, in part, that "Defendants [] deceived investors and artificially inflated Symbol [] shares by issuing wildly optimistic revenue guidance that they either knew at the time was unreasonable and unattainable, or recklessly promised to investors, even though such guidance lacked any reasonable basis." Am. Compl. ¶ 9. Further, the crux of Symbol's revenue forecasting methodology was based upon "tiers of 'commitments,' each of which was structured to enhance sales figures rather than derive accurate results." *Id*. ¶ 66. This system was dependent upon Symbol's sales representatives who were "required to provide a weekly 'commit' number for each of his or her accounts, representing the amount of sales expected to close that week for the account." *Id*. ¶ 67. Once per week regional sales managers held "commit" conference calls with their sales representatives. In turn, these regional "commit" numbers were presented on a weekly basis to exective level manangement. *Id*. ¶ 69. These regional "commit" figures "would be rolled into a composite number, which became the basis for the erratic forecasts that Defendant provided to the public, even though they knew and understood that the procedure was unreliable and inaccurate." *Id*. It is pursuant to this factual backdrop that Plaintiff makes the instant motion.

period of October 23, 2004 through August 1, 2005; (3) preserve 614 email attachments from the period April 1, 2005 through May 27, 2005; and (4) issue an adequate litigation hold. *Id*. at 2-3. William R. Nuti was Symbol's President and Chief Operating Officer until December 29, 2003, at which time he became Symbol's Chief Executive Officer, President and Director. Nuti resigned on August 1, 2005. Am. Compl. ¶ 21.

With respect to the alleged missing documents, including Nuti's missing files, the Fund maintains that on December 1, 2014, "Plaintiff discovered that Symbol had produced a total of only 11 documents from the files of six of the seven sales custodians."[6] *Id*. at 2. *See* February 3, 2015 Declaration of Michael J. Wernke, Esq., in Support of Lead Plaintiff's Motion for Sanctions Against Symbol Technologies, Inc. for Spoliation of Evidence ("Wernke Decl."), [DE 116] ¶ 6. In addition, the 11 documents produced were all from a single custodian – Peggy Davison. Wernke Decl. ¶ 6; Pl.'s Mot. at 2. Attorney Wernke, utilizing metadata in the production provided by Symbol, caused a further search to be conducted. Wernke Decl. ¶ 6. That search purportedly revealed that of the 75,769 documents Symbol had produced, no documents were produced from the files of custodians Dwight Ogletree, John Chris, John Carlson, Scott Armour or Susan Bugden. *Id*. Likewise, no documents were produced from the files of Defendant's CEO, William Nuti. *Id*. Using the same process, Attorney Wernke caused a further investigation to be conducted into whether any of the custodians for whom documents were produced were the 13 Area Sales Directors or 23 Regional Sales Managers. *Id*. ¶ 8. The Fund discovered that "of the 75,769 documents produced [by Symbol], only 43 were from the

---

[6] By letter dated April 2, 2014, Plaintiff identified a list of proposed search terms that applied to the twenty-one (21) custodians from whom Plaintiff sought documents. These custodians included the seven sales directors and managers whom Plaintiff references in his letter motion – namely Dwight Ogletree, John Chris, Pegg Davison, John Carlson, Scott Armour, and Susan Bugden. Wernke Decl., Ex. A; Pl.'s Ltr. Mot. at 2.

4

files of Western Sales Directors or Regional Managers, and zero documents were preserved from files of sales personnel from Distribution, Northeast, Southeast, Government, Canada and Latin America. Pl.'s Mot. at 2; *see* Wernke Decl. at ¶¶ 6, 8.

The Fund asserts that Symbol has failed to preserve 614 email attachments from the 1,049 emails covering the period April 1, 2005 through May 27, 2005. Pl.'s Mot. at 2 n. 2; Wernke Decl. ¶ 25. In support of this contention, Plaintiff attaches as Exhibit M to the Wernke Declaration a chart entitled "Empty Non-Mime Files Dated April 1, 2005 through August 1, 2005" which itself was attached to a letter sent by Symbol's counsel dated February 2, 2015. Wernke Decl., Exs. K, M. From this information, the Fund argues that the 614 attachments identified in the chart have not been preserved and that a review of the file names establishes their relevance with respect to the Fund's claims. Pl.'s Mot. at 2 n. 2.; Wernke Decl., Ex. M. The Fund points out that Symbol's own records management policy states that emails are archived daily and that these archives are retained for two years "beyond the 'subject's' active status." Pl.'s Mot. at 2.; Wernke Decl., Exs. P, Q.

Though not addressed by The Fund in its letter motion or the Wernke Declaration, Symbol's correspondence to the Fund dated February 2, 2015 provides a proper context for the chart identified by the Fund. In that February 2 letter, Symbol's counsel stated that "[a]s we explained to you in our letter dated December 22, we believe that some of the Empty Non-Mime files may not be legitimate GroupWise email attachments with content at the source, are corrupted files, or are present due to the failure to capture certain data when the information was harvested from GroupWise. . . ." Wernke Decl., Ex. K. The letter further highlighted that "since the second quarter of 2005 is of particular interest to Plaintiff, we provided to you a chart

5

identifying the Empty Non-Mime files within the production dated between April 1, 2005 and August 1, 2005." *Id*.

Finally, the Fund maintains that Symbol's litigation hold was deficient since it "did not require the preservation of documents related to [Symbol's] 'commit' system or communications between its sales staff [but instead only] . . . focused on the finance/operations side of the Company – financial forecasts and accounting procedures." Pl.'s Mot. at 2; Wernke Decl., Ex. R.

The Fund claims that Symbol's conduct with respect to the above allegations was "knowing or grossly negligent." Pl.'s Mot. at 3. According to The Fund, "[there is no excuse for Symbol's failure to preserve these files, Nuti's files, or email attachments during the most critical time period of the litigation." *Id*. Based on these arguments, the Fund contends that Symbol should be sanctioned by ordering the company to pay the Fund's costs and fees for bringing this motion and by granting the request for an adverse inference. *Id*.

### 2. *Symbol's Response*

In response, Symbol argues that though the Fund's motion is styled as a motion seeking sanctions for spoliation of evidence, the primary issue is one regarding document production for which Symbol has produced "almost 300,000 pages of documents, including documents to and from all of the key players and related to all of the potentially relevant issues." Defendant's Letter Brief in Opposition to Plaintiff's Motion for Sanctions ("Def.'s Opp'n") [DE 118] at 1; February 6, 2015 Declaration of Kathleen N. Massey ("Massey Decl.") [DE118-1] ¶¶ 8, 10-11, 13. Counsel for Symbol further asserts that she corresponded with the Fund throughout the discovery process advising "there would be and were technical challenges associated with the production given the age of the case and the manner in which data was maintained between 2003

and 2005. Def.'s Opp'n at 1; Massey Decl. ¶¶ 3-10. Symbol's counsel also stateed that with respect to technical issues involving production, "Plaintiff ignores what Symbol has done to work around the technical issues and refuses to discuss what else the parties might do to address the issues." Def.'s. Opp'n at 1; Massey Decl. ¶¶ 14-23.

Based upon this exchange, Symbol claims that although the Fund has alleged Symbol failed to preserve evidence, "Plaintiff's real complaint, to the extent there is one, is that Symbol failed to produce certain emails from the 'custodial files' of seven individuals and certain email attachments." Def.'s Opp'n at 1.[7]

Notwithstanding the above arguments, Symbol asserts that the Fund has not met its burden with regard to the three-part test for spoliation since the Fund fails to establish that Symbol did not preserve evidence, acted with bad faith, was grossly negligent or otherwise acted in a negligent manner with respect to any such preservation failure and cannot establish the required showing of relevance. As such, Symbol argues the Fund is not entitled to sanctions. *Id.* at 2-3.

With respect to the duty to preserve, Symbol maintains that "it preserved documents after it realized it had overstated revenue for the third quarter of 2004 and anticipated litigation over that issue. *Id.* at 2; February 6, 2015 Declaration of Kimberly Polito ("Polito Decl.") [DE 118-

---

[7] In a footnote on page 1 of Defendant's letter brief in opposition, Symbol argues that although the Fund has alleged that Symbol has not produced documents from unnamed sales personnel, *see* Pl.'s Mot. at 2, the Fund has never brought this to Symbol's attention previously and the parties have not engaged in the required good faith meet-and-confer regarding this issue. Def.'s Opp'n at 1 n. 2. In addition, Defendant further asserts that the Fund never requested that it produce documents from "every salesperson in the company" and that "by Plaintiff's own admission, it requested that Symbol produce documents for specified individuals." *Id. See* Wernke Decl., Ex A, Schedule B (list of 21 custodians to which search terms were to be applied as appended to Plaintiff's letter dated April 2, 2014). As these individuals were not identified, Symbol believed that "[t]hese personnel were presumably not on that list, and Symbol produced regular reports that aggregate sales information from personnel throughout the company." Def.'s Opp'n at 1 n. 2; Massey Decl., Exs. K, L.

7

14] at ¶¶ 3-4. In addition, Symbol preserved documents upon learning of the filing of the first class action lawsuit on August 16, 2005. Def.'s Opp'n at 2; Polito Decl. ¶ 5. With respect to Symbol's alleged failure to produce custodial documents for the seven individuals cited in Plaintiff's motion, Symbol claims that these individuals left Symbol prior to the filing of the class action suit on August 16, 2005 and that Symbol "had no reason to believe the documents of six of the seven were potentially relevant until Plaintiff mentioned them in the Consolidated Class Action Complaint filed on August 30, 2006." Def.'s Opp'n at 2. Symbol maintains that upon learning of this litigation, it took reasonable steps to preserve documents. *Id*.

Symbol also asserts that despite Plaintiff's claims, Symbol acted appropriately to preserve documents and hence did not act negligently, grossly negligently or in bad faith. *Id*. Specifically, Symbol outlines the steps it took with respect to its duty to preserve, which included: issuing document retention memoranda, using back-up tapes and hard drives to preserve data, identifying and interviewing persons who could be in possession of relevant documents and collected any such documents from those persons and obtaining ghosted images from the hard drives of certain individuals. *Id*. at 2; Polito Decl. ¶¶ 3-14.[8]

In addition, Symbol claims that the Fund has not met its burden to establish the necessary "relevance" of any of the allegedly missing information. According to Symbol, the demonstration of relevance is relegated to "one sentence in [the Fund's] motion asserting that evidence submitted in support of the motion demonstrate[s] that missing documents would have been favorable to Plaintiff's case." Def.'s Opp'n at 2. Symbol maintains that this single sentence fails to meet Plaintiff's "burden of articulating what that evidence is with some degree of detail." Def.'s Opp'n at 3 (quoting *Alter v. Rocky Mountain Sch. Dist.*, No. 13-1100, 2014

---

[8] Symbol also outlines further steps taken after it received the Fund's document requests, which included restoration of 10 backup tapes, 7 hard drives, 64 archived mailboxes with email data and 6 backup tapes containing financial data. Def.'s Opp'n at 2; Polito Decl. ¶ 14.

WL 4966119, at *12 (E.D.N.Y. Sept. 30, 2014)). Likewise, according to Symbol, that singular assertion is insufficient to establish "affirmatively that the missing documents would have been favorable to Plaintiff and unfavorable to Symbol." Def.'s Opp'n at 3 (citing *GenOn Mid-Atlantic, LLC*, 282 F.R.D. at 357-60 (S.D.N.Y. 2012)). Moreover, the documents the Fund relies on to establish relevance are either inapposite or are at best neutral with respect to establishing the overstatement of revenue as well as the Fund's other allegations. Def.'s Opp'n at 3.

### 3. The Fund's Supplemental Submission

On April 15, 2015, the Fund filed a supplemental letter and additional materials in support of the instant motion. *See* DE 121-122. This "newly discovered evidence," according to the Fund, consisted of the Rule 30(b)(6) testimony of Kimberly Polito, the Senior Litigation Paralegal at Symbol, who was examined with respect to Symbol's document preservation efforts. *See* Plaintiff's Supplement to its Letter Motion for Sanctions against Defendant Symbol Technologies, Inc. for Spoliation of Evidence ("Pl.'s Supp. Ltr.") [DE 121] at 1. From taking Ms. Polito's Rule 30(b)(6) deposition, the Fund asserts it learned that "[f]ollowing the filing of the Complaint in August 2005, Symbol took no affirmative action to preserve emails. As a result, Symbol deleted all of its 2005 email archives." Pl.'s Supp. Ltr. at 1. (emphasis omitted).

The Fund alleges that during 2005, Symbol migrated its email platform from GroupWise to Microsoft Outlook and that during this period of migration "[t]he GroupWise system was archived monthly and the Outlook system was archived daily. *Id*. In addition, both systems "continued to be archived during the transfer." *Id*. However, the Fund claims that "[d]espite the availability of all emails to be preserved, the only action Symbol took upon the filing of the Complaint was an email blast to every employee." *Id*. The Fund contends that Symbol did not:

(1) alert its IT department; (2) create a "mirror image" of either email server; (3) or preserve "the most recent" backup tapes including those from the GroupWise server which were simply "dumped in a storage facility along with 6,000 other tapes dating back to 2001 all of which were completely unlabeled." *Id*. at 1.

Further, the Fund asserts that Symbol did not timely alert its third-party vendor, Bluepoint Data, which was responsible for the Outlook system, to preserve emails. Consequently, from December 2005 through March 2006, emails more than 30 days old were deleted. *Id*. at 1-2. *See* March 24, 2015 Rule 30(b)(6) Deposition of Kimberly Polito ("Polito Dep."), attached as Ex. LL to Wernke Decl. at 65-66.[9] The Fund maintains that due to Symbol's failure to properly preserve emails, it has been unable to obtain documents concerning Symbol's "commit" system, information regarding Symbol's revenue forecasting, and emails concerning sales and finance. *Id*. at 2.

The Fund characterizes Symbol's preservation failures as "reckless, if not willful" and again urges this Court to impose "an adverse inference against Symbol and award costs, including attorney's fees. . . ." *Id*. at 3.

### 4. *Symbol's Response to the Supplemental Submission*

On April 24, 2015, Symbol filed its response to the Fund's supplemental submission. *See* DE 127-128. Out the outset, Symbol vehemently denies Plaintiff's assertions regarding its document retention efforts, particularly the claims that (1) Symbol took no affirmative action after the Fund filed its Complaint to preserve documents, and (2) that Symbol deleted its 2005 email archives. *See* Symbol's Supplemental Letter Brief in Response to Plaintiff's Supplemental Submission Concerning its Motion for Sanctions ("Def.'s Supp. Ltr.") [DE 127] at 1.

---

[9] The transcript of Kimberly Polito's Deposition is also attached as Exhibit M to the April 24, 2015 Declaration of Kathleen N. Massey.

Symbol first asserts that despite the Funds's allegation that it took no affirmative action to preserve documents after the Complaint was filed, its actions prove otherwise. Specifically, Symbol states that it: (1) issued a company-wide litigation hold instructing its employees (including employees in its IT department) to "retain, among other things, all potentially relevant emails then in existence and created thereafter[;]" (2) retained monthly back-up tapes which contained snapshots of employee emails; (3) issued a supplementary litigation hold after the Consolidated Class Action Complaint was filed on August 30, 2006 and upon Symbol's acquisition by Motora Solutions, Inc.; (4) identified and interviewed key employees and collected pertinent documents; (5) collected documents from other functional areas of the company; (6) retrieved hard copy documents from storage and reviewed for production; (7) interviewed IT personnel regarding Symbol's document retention and backup; and (8) took 25 "ghosted images" of the computer hard drives. *Id*. at 1-2. *See* April 24, 2015 Supplemental Declaration of Kathleen N. Massey ("Massey Decl. II") [DE 128] at ¶¶ 4-8.

Symbol also maintains that it did not delete any of its emails from 2005. Def.'s Supp. Ltr. at 3. The Company did perform an email migration from GroupWise to Outlook in 2005, and, in conjunction with this migration, it retained the services of a third-party network service provider to "perform a limited daily backup of the Outlook data following the migration." *Id*.; Massey Decl. II ¶ 9. Symbol further concedes that "[i]n or about March 2006, Symbol's IT [department] discovered that the service provider was recycling backup tapes older than 30 days." Def.'s Supp. Ltr. at 3; Massey Decl. II ¶ 10. However, Symbol states that upon being notified, its legal department "immediately informed and directed the service provider to stop recycling" and it "entered into a new service provider agreement to ensure the preservation of backup tapes." Def.'s Supp. Ltr. at 3; Massey Decl. II ¶ 10. Symbol maintains that this issue

was limited to certain Outlook backup tapes and did not otherwise affect GroupWise backup tapes which were "not recycled and continued to be backed up during the entire alleged class period, through November 2005." Def.'s Supp. Ltr. at 2. These tapes have been retained.

With respect to the accessibility and functionality of the GroupWise backup tapes, Symbol's counsel states that when the initial Complaint was filed in 2005, Symbol created monthly email backup tapes for GroupWise emails and those tapes were preserved. However, when Symbol attempted to retrieve them, it "learned that the tapes were not labeled in a manner that permitted Symbol to select tapes relating to this litigation." *Id*. Further, despite the Fund's demands that Symbol "should have restored approximately 6,000 backup tapes so that the subset of tapes relating to this litigation could be located . . . the data on those tapes is not reasonably accessible given the cost and burden of restoring the backup tapes and the risk that the quality of the tapes may have detiorated over the past 10 years." *Id*. Notwithstanding this scenario, Symbol argues that it nevertheless took alternative steps to obtain relevant data by "harvesting" data from other sources and that, as a result of these efforts, "Symbol was able to produce documents from numerous backup tapes, hard drives, archived mail boxes, email captures, and ghosted images." *Id*. at 2-3.

Symbol also argues that the Fund, despite claiming that Symbol's conduct was either reckless or willful based on a lack of production of relevant emails, completely overlooks the fact that Symbol has "produced more than ten thousand emails" regarding individuals identified by the Fund as well as "a significant volume of documents containing information about Plaintiff's claims." *Id*. at 3. As such, Symbol contends that the Fund cannot support its assertion that Symbol's conduct was either reckless or willful. *Id*.

Finally, Symbol asserts that the extrinsic evidence the Fund relies on to establish relevance (1) is insufficient since it fails to support any of the Funds's assertions relating to the third quarter 2004 overstatement of revenue, (2) does not show that Symbol's forecasting processes were poor, (3) does not establish that Symbol's sales force harbored a "when in doubt commit" mentality and (4) otherwise fails to show that Symbol's sales personnel "committed to sales when they were not sufficiently confident in them." *Id*. As such, Symbol claims the Fund's motion for sanctions should be denied. *Id*. at 4.

**B. Discussion**

The Court initially points out that no prior motion to compel production of the documents / ESI at issue was ever submitted by the Fund to the Court for intervention before this spoliation sanctions motion was filed. In addition, after a review of the parties' papers, the Court finds that the motion is inappropriately filed as a spoliation motion when, at its core, it seeks production of documents. Without having sought initial relief on this issue, the Court finds a motion for spoliation procedurally improper at this juncture.

In addition, the evidentiary proffer provided by the Fund, consisting of a declaration from counsel supported primarily with written correspondence between the Fund and Symbol, is insufficient for the Court to make a proper determination on the merits of the the motion. The Court also notes that filing this request for relief as a "letter motion" — given the additional submission of a declaration and multiple exhibits — belies the purpose of letter motions. Particularly in light of the seriousness of the relief being sought here, the motion should properly have been brought as a formal motion under the Federal Rules. Further, the Fund filed an improper "supplement" to its initial letter motion without first seeking leave of the Court to do

so.  Attempting to make the submission appear to be an altogether independent motion to obtain discovery does not make it so.  *See* DE 121.

For the foregoing reasons the Court hereby DENIES Plaintiff's motion, without prejudice.  The parties are directed to appear for an evidentiary hearing on the issues of document preservation and production on October 30, 2015 at 1:30 p.m.  The Court will hear testimony from any Symbol employees and/or former employees (including IT personnel) as well as any third-party vendors whom Symbol chooses to present as to the manner in which records were kept, litigation holds were issued, the current status of the information and records at issue and what exactly has been produced with respect to ESI in this case.  To the extent that Symbol intends to raise any arguments about costs involved in retrieving any of the information at issue, the Court expects Symbol to produce a witness who can address what the retrieval would entail logistically as well as the dollar amount of the prospective expense involved.  The Court reminds counsel that the burden of establishing spoliation and/or failure to produce responsive documents rests with the Fund.  Therefore, the Fund will proceed with its case first.  To the extent witnesses are needed, the parties are directed to ensure that those witnesses are available at the hearing.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED, without prejudice.  The parties are directed to appear for an evidentiary hearing on October 30, 2015 at 1:30 p.m. in Courtroom 910.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge