**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

IN RE SYMBOL TECHNOLOGIES, INC.                    **MEMORANDUM AND ORDER**
SECURITIES LITIGATION                                          CV 05-3923 (DRH) (AKT)


----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.       PRELIMINARY STATEMENT**

        Lead Plaintiff Iron Workers Local #580 Pension Fund ("Plaintiff" or "the Fund")

commenced this action against Defendants Symbol Technologies, Inc. ("Symbol"), William R.

Nuti ("Nuti"), Salvatore Iannuzzi ("Iannuzzi"), Mark T. Greenquist ("Greenquist"), Todd Abbott

("Abbott"), Arthur O'Donnell ("O'Donnell") and James M. Conboy ("Conboy"), (collectively,

the "Defendants" or "Symbol") for violations of Section 10(b) of the Securities Exchange Act of

1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-

5 ("Rule 10b-5"), 17 C.F.R. § 240.10b-5, as well as Section 20(a) of the Exchange Act,

15 U.S.C. § 78t(a).  *See generally* Complaint [DE 1].  The eight individual investor actions were

subsequently consolidated on October 31, 2005 under docket number CV 05-3923.

*See* October 31, 2005 Electronic Order.  At that time, Plaintiff was directed to file an Amended

Complaint.  *Id*.  Plaintiff filed its Amended Class Action Complaint ("Am. Compl.") on

August 30, 2006.  DE 26.

        Since the filing of the Amended Complaint, the parties have been embroiled in protracted

motion practice and discovery issues spanning more than a decade.  The latest chapter in this

saga involves Defendants' motion to compel Plaintiff's production of documents and

information pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.3.

1

*See* Defendants' Notice of Motion to Compel Documents and Information Relating to the Confidential Informants [DE 183] at 1.[1] For the reasons stated below, Defendants' motion to compel is GRANTED, in part, and DENIED, in part.

## II.    RELEVANT BACKGROUND

In order to provide the proper context for its analysis, the Court will briefly summarize the factual background which bears directly on the instant motion as well as the parties' respective positions.

### 1. Factual Background

#### a.    Plaintiff's Reliance on Confidential Informants in Framing the Allegations in its Amended Complaint

This action was brought "on behalf of investors who purchased Symbol Tech securities during the period between April 29, 2003 and August 1, 2005 . . . for violations of federal securities laws." Am. Compl. ¶ 1. Specifically, Plaintiff asserts that Defendants

> (a) engaged in various ship-and-store, double-counting, and other schemes to artificially inflate revenues and understate inventories; (b) maintained and implemented internal controls that were wholly deficient and ineffective, notwithstanding their repeated public statements to the contrary; (c) issued false certifications in SEC filings attesting to the efficacy of such controls and the Company's compliance with Generally Accepted Accounting Principles ("GAAP"); and (d) consistently published revenue guidance that they either knew to be false or which lacked any reasonable basis.

*Id*. ¶ 5. In addition to these practices, Plaintiff states that "Defendants also deceived investors and artificially inflated Symbol Tech shares by issuing wildly optimistic revenue guidance that

---

[1]    For purposes of this motion, the Court presumes familiarity with the background facts and procedural posture of this case which are set forth in detail in Judge Hurley's December 5, 2013 Memorandum and Order [DE 80] adjudicating Defendants' Rule 12(b)(6) Motion to Dismiss.

they either knew at the time was unreasonable and unattainable, or recklessly promised to investors, even though such guidance lacked any reasonable basis.  *Id*. ¶ 9.

In order to support the allegations, Plaintiff utilized 13 individuals as Confidential Informants ("CIs").  *Id*. ¶ 31; Lead Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel Production of Documents and Information Relating to the Confidential Informants ("Pl.'s Opp'n") [DE 184] at 4.  Plaintiff asserts that each of these CIs "held positions in which they would reasonably be expected to know the information they disclosed."  Am. Compl. ¶ 31.  According to the Amended Complaint, these CIs were employed by Symbol or its distribution partners as follows:[2]

| CI # | Employer | Position | Dates of Employment |
|------|----------|----------|---------------------|
| 1 | Symbol | Inventory Manager | 1993-2004 |
| 2 | Symbol | Distribution Supervisor | 1994-2003 |
| 3 | Eagle Global Logistics | Operations Logistics Manager | 2002-2003 |
| 4 | Comstor | Marketing Manager | 2001-2006 |
| 5 | Symbol | Inventory Control Manager | Until April 2004 |
| 6 | Scansource | Product Manager | Until August 2003 |
| 7 | Symbol | Senior Marketing Manager For Global Channels | 2004-2005 |
| 8 | Symbol | Product Manager (in Marketing Dept. of Mobile Computing Division) | 2003-2005 |
| 9 | Symbol | Account Manager (Direct Sales Division) | 2002-2005 |
| 10 | Symbol | Human Resources Director (Sales Division) | 2004-2005 |
| 11 | Symbol | Account Manager | 2001-2005 |

---

[2]     The chart appearing here was prepared by the Court based upon information contained in paragraphs 31-44 of the Amended Complaint.

| 12 | Symbol | Vice President and General Manager (Mobile Computing Division) | Jul. – Dec. 2005 |
| 13 | Symbol | Materials Clerk (El Paso, TX Warehouse Facility) | 2003-2006 |

*Id.* ¶¶ 31-44. A review of the Amended Complaint reveals that Plaintiff relied almost exclusively on information gleaned from the CIs in order to frame its allegations relating to Defendants' (1) fraudulent scheme to inflate revenues and underreport inventories, *id.* ¶¶ 45-60, and (2) ineffective internal controls. *Id.* ¶¶ 61-76.

The 13 CIs identified in the Amended Complaint were contacted and ultimately interviewed by Plaintiff's private investigator, Suzanne Clarke ("Clarke"). *See* Pl.'s Opp'n at 4; Curriculum Vitae of Suzanne Clarke, attached as Exhibit ("Ex.") B to the May 26, 2016 Declaration of Michael J. Wernke in Opposition to Defendants' Motion to Compel ("Wernke Decl.") [DE 183-1] ¶ 4. According to her Curriculum Vitae, since 2005, Clarke has owned and operated her own investigative agency, Suzanne Clarke, LLC, which "[c]onduct[s] investigations for law firms, corporate counsel and larger investigative agencies." *Id.*, Ex. B. Clarke's agency specializes in "consumer and shareholder class action, corporate fraud and white collar crime" as well as "environmental and criminal defense litigation support." *Id.*

Upon making contact with each CI, Clarke conducted an interview with each one which was then "memorialized in writing in the Interview Memoranda" provided to Plaintiff's counsel. Pl.'s Opp'n at 4; Wernke Decl., Exs. O-AA (copies of the 13 Interview Memoranda). Plaintiff's counsel then utilized that information to frame the factual allegations contained in the Amended Complaint. Pl.'s Opp'n at 4; *see, e.g.*, Am. Compl. ¶¶ 45-76 (referring to and quoting CIs'

statements as memorialized in the Interview Memoranda).  The 14 Interview Memoranda[3] were

produced by Clarke between February 2006 and June 2006.  *See* Wernke Decl., Exs. O-AA

(Interview Memoranda); Plaintiff's Privilege Log, attached as Ex. A to the May 5, 2016

Declaration of Kathleen N. Massey ("Massey Decl.") [DE 183-2] ¶ 4.

> **b.  Defendants' Efforts to Obtain Documents and Information Relating to the Confidential Informants**

Defendants initially sought discovery concerning the CIs during a meet-and-confer

session on February 28, 2014.  Massey Decl. ¶ 31.  A formal request for discovery was made on

March 4, 2014, which included a request for "documents concerning the Confidential Informants

referred to in the Complaint, including documents setting forth their knowledge, information or

beliefs concerning the allegations in the Complaint."  *Id*. ¶ 32, Ex. U (Defendants' Initial

Request for Production of Documents by Lead Plaintiff).  In addition to their initial request for

documents, on March 4, 2014, Defendants served their first set of interrogatories, which

requested, in part, that "Plaintiff identify the thirteen CIs and provide contact information for

each of them."  *Id*. ¶ 33, Ex. V (Defendants' First Set of Interrogatories to Lead Plaintiff).

Although Plaintiff responded to these requests, it "did not produce any documents or provide any

information concerning the CIs" and it "objected to producing responsive documents on the basis

that they were protected from discovery by the work product doctrine."  *Id*. ¶ 34, Ex. W (Lead

Plaintiff's Responses and Objections to Defendants' Initial Request for Production of

Documents).  Similarly, Plaintiff objected to Defendants' interrogatory seeking the identities and

contact information for each of the CIs relied upon in the Amended Complaint on the grounds

---

[3]     CI #1 was interviewed on three separate occasions resulting in two Interview Memoranda being produced.  Thus, although Plaintiff identifies 13 CIs, 14 Interview Memoranda were ultimately generated by Clarke.  *See* Wernke Decl., Ex. O (containing two separate Interview Memoranda for CI #1).

that the request was "'unduly broad' and sought 'information that is protected by the attorney client and/or work product privilege.'" *Id.* ¶ 35, Ex. X (Lead Plaintiff's Second Amended Responses and Objections to Defendants' First Set of Interrogatories to Lead Plaintiff).

The parties held another meet-and-confer session on April 14, 2014 and discussed Plaintiff's objections concerning the production of documents and information related to the CIs. *Id.* ¶ 37. Specifically, Plaintiff informed Defendants that: (1) the CIs had been interviewed by Plaintiff's investigator (2) no documents had been provided by the CIs and (3) Plaintiff "refused to identify which of the individuals in the Initial Disclosures were which of the CIs." *Id.* Thereafter, on April 28, 2014, Defendants sent Plaintiff a letter requesting that a privilege log be provided "describing the documents Plaintiff was withholding from discovery" and that the CIs be properly identified. *Id.* ¶ 38, Ex. Z (Defendants' April 28, 2014 Letter). Plaintiff responded on May 6, 2014, and agreed to provide the requested privilege log "identifying the Memoranda that Plaintiff was withholding from discovery" but refusing to "produce documents concerning the CIs [and] to identify which individuals listed in the Initial Disclosures corresponded to each of the thirteen CIs referred to in the [Amended] Complaint." *Id.* ¶ 39.

Despite a further telephonic meet-and-confer session which took place on May 15, 2014, Plaintiff "remained steadfast in its refusal to produce the Memoranda or to identify the CIs by name." *Id.* ¶ 40. Notwithstanding Plaintiff's position, Defendants, through their own efforts, were "ultimately able to identify [the CIs] based on a process of elimination." *Id.* ¶ 41. In addition, through the use of their own private investigator, Defendants were successful in locating "a number of the CIs." *Id.* On March 31, 2015, Defendants sent a letter to Plaintiff requesting that it "confirm the name of each of the CIs Defendants had identified and provide additional contact information . . . so that Defendants could locate and subpoena all of the CIs."

*Id.* ¶ 42.  In addition, Defendants renewed their request "that Plaintiff provide copies of the Memoranda so Defendants could prepare adequately for the depositions [of the CIs]."  *Id.*

During further telephonic meet-and-confer sessions which took place on April 9, 2015 and April 27, 2015, Defendants, having conducted depositions of three of the CIs, notified Plaintiff that it "found it shocking that the deposition testimony elicited . . . failed to substantiate the allegations contained in the [Amended] Complaint that were supposedly based on information provided by the CIs."  *Id.* ¶ 43.  During the April 27, 2015 conference, "Plaintiff acknowledged that Defendants had correctly determined the name of each CI, but declined to provide additional contact information. . . ."  *Id.*  As Plaintiff conducted additional depositions of the CIs, it continued to voice its "concerns regarding the failure of the CIs' testimony to support Plaintiff's allegations."  *Id.* ¶¶ 45-46.  In light of these concerns, Defendants "requested that Plaintiff provide certain information about the dealings Plaintiff's counsel had had with the CIs prior to filing the [Amended] Complaint."  *Id.* ¶ 46.  Although further discussions ensued as to whether Plaintiff would supply the information "regarding the role of Plaintiff's counsel in investigating allegations that are included in [c]omplaints on the basis of information provided by confidential informants," Plaintiff, on June 23 2015, "definitively stated that it would not be providing the information requested."  *Id.* ¶¶ 47-49.

Following Plaintiff's continued refusal to turn over nine of the fourteen Interview Memoranda,[4] Defendants' filed the instant motion on June 30, 2015, seeking "production of the

---

[4]     Although Plaintiff initially refused to turn over any of the fourteen Interview Memoranda in advance of the depositions of the CIs conducted by Defendants, "Plaintiff used five of the Memoranda to cross examine certain CIs at their depositions."  *Id.* ¶ 44.  As such, Plaintiff provided Defendants with Interview Memoranda 1, 5-6, 9-10.  *Id.* ¶¶ 4, 23, 44; Ex. A (Plaintiff's Privilege Log).  These Memoranda correspond with interviews conducted with the following CIs:  CI #1 (Interview Memoranda 1 and 9), CI #8 (Interview Memoranda 5), CI #7 (Interview Memoranda 6), CI #9 (Interview Memoranda 10).  *Id.*, Ex. A.  In addition, Plaintiff has called

nine Memoranda . . . and information about the investigative process followed by Plaintiff's counsel before including allegations in the [Amended] Complaint about what the CIs supposedly said in support of Plaintiff's claims." *Id*. ¶ 50.

### c. Depositions of Confidential Informants

After confirming the identities of the thirteen CIs referenced in the Amended Complaint, Defendants were ultimately successful in conducting depositions of CIs 1-12. *Id*. ¶ 8. These depositions occurred between April 10, 2015 and June 29, 2015. *Id*. ¶¶ 9-20. According to Defendants, the depositions revealed that: (1) "many CIs directly contradicted the factual allegations that the Complaint attributed to them;" and (2) "[m]any of the CIs testified in detail about the job responsibilities they had during the class period and made clear that they would not have had a basis to know whether or not the factual allegations alleged to be supported by their statements were true." *Id*. ¶¶ 21-22 (citing examples of the purported inconsistencies and lack of knowledge).

The Wernke Declaration takes issue with Defendants' characterization of testimony elicited by the CIs, stating that the Massey Declaration: (1) "lists misleading or incomplete references to the Depositions, ignoring the fact that all of the CIs confirmed most of the information provided to Plaintiff's agent and memorialized in the Interview Memoranda;" and (2) "selectively quotes and misquotes the Amended Complaint and the Depositions in an attempt to demonstrate the untenable position that if a particular CI's job responsibilities were not wholly related to an area or division of Symbol that they would have no knowledge of the facts or events relating thereto." Wernke Decl. ¶¶ 35-36 (citing counter-examples in support of its position). In

---

into question the overall reliability of the information contained in each of the five Interview Memoranda it has obtained. *Id*. ¶ 23.

addition, the Wernke Declaration asserts that "[t]he information provided by the CIs in 2006 and memorialized in the Interview Memoranda were almost wholly confirmed in the Depositions [and] [o]nly a few, inconsequential points like a date or a specific job title were taken issue with by the CIs over the entirety of the Depositions." *Id.* ¶ 37.

### 2. *The Parties' Positions*

#### a. **Defendants' Motion**

Defendants seek the disclosure of (1) nine Interview Memoranda (#s 2-4, 7-8 and 11-14) prepared by Plaintiff's investigator which memorialized interviews conducted with the CIs and (2) Information concerning particular aspects of Plaintiff's investigative process.  Memorandum of Defendants in Support of Motion to Compel Production of Documents and Information Relating to the Confidential Informants (Defs.' Mem.") [DE 183-1] at 5.

With respect to the Interview Memoranda, although Defendants concede that "the Memoranda satisfy the basic criteria for work product protection," they nonetheless assert that Plaintiff waived the privilege with respect to Interview Memoranda #s 3-4, 8, 11 and 13 "by selectively disclosing in the [Amended] Complaint portions of the Memoranda that it deemed favorable it its case."[5]  *Id.* at 6-7 (identifying language from the Interview Memoranda which appeared verbatim in the Amended Complaint); *id.* at 5 ("Plaintiff waived protection over many of the Memoranda by quoting extensively from them in the [Amended] Complaint.").  In addition, Defendants assert that they "are also entitled to the Memoranda on the basis of subject matter waiver."  *Id.* at 8.  Specifically, Defendants argue that "Plaintiff's selective use of [the]

---

[5]     Plaintiff has not disclosed the nine Interview Memoranda at issue in the motion.  Thus, the Court presumes that the language Defendants have quoted from the Complaint, which they assert was taken directly from some of the undisclosed Interview Memoranda, was gleaned solely through deductive means since Defendants were not in possession of the nine Interview Memoranda at the time they conducted this comparison.

Memoranda most favorable to itself to cross-examine CIs at their depositions . . . effectively placed those materials at issue and waived Plaintiff's claim of work product protection" and, in any event, "to allow Plaintiff to introduce into evidence and to question witnesses using a select handful of Memoranda containing statements that the CIs have refuted, but to shield the rest from discovery on the basis of work product privilege belies the concepts of fairness and is extremely prejudicial. . . ." *Id*. at 8-9.

In the alternative, Defendants maintain that even if the work product privilege has not been waived, "Defendants are entitled to all of the Memoranda withheld from production based on substantial need." *Id*. at 9. Defendants ground this argument on their position that the Interview Memoranda "constitute fact work product" since the "interviews memorialized in the Memoranda were conducted as part of a factual investigation by an outside investigator who was not an attorney, and that the investigator drafted the Memoranda. . . ." *Id*. On that premise, Defendants state that they "have a substantial need for the Memoranda because the CIs' deposition testimony raised serious questions about the basis for the allegations supposedly supported by the CIs' statements" and that "even though Defendants deposed all but one of the CIs in 2015, Defendants still need the Memoranda to fill in gaps left by the CIs' testimony and shed light on the inconsistencies between the allegations in the [Amended] Complaint [ ] based on the CIs' statements and the CIs' testimony."[6] *Id*. at 11.

As to Defendants' request for "information regarding certain aspects of the investigative process that Plaintiff's counsel followed before including allegations in the [Amended]

---

[6]     With respect to CI #13, upon which "Defendants were unable to effect service . . . before the fact discovery cut-off date," Defendants assert an additional basis for a finding of substantial need due to the fact that CI #13 "could not be deposed prior to the close of fact discovery." *Id*. at 11 n. 5

Complaint [concerning] what the CIs supposedly said," Defendants state they seek only "yes or no answers to five targeted questions about whether [Plaintiff's counsel] took specific steps [during its investigation]." *Id*. at 14.[7]  In particular,

> [f]or each of the 13 CIs, Defendants seek an order compelling Plaintiff to state: (1) whether or not any attorney from Pomerantz ever spoke with that CI before the Complaint was filed; (2) whether or not any attorney from Pomerantz ever reviewed with that CI the quotes or statements attributed to him or her to make sure they were acceptable; (3) whether or not that CI consented to being identified in the Complaint; (4) whether or not that CI was informed before the filing of the Complaint that he or she could be identified in a public filing or during discovery; and (5) whether or not that CI consented to being quoted or having his or her statements attributed to him or her in the Complaint.

*Id*. at 14.  Defendants argue that this information "is not protected . . . under the work product doctrine" since the doctrine as codified in the Federal Rules provides protection only to "documents and tangible things."  *Id*.  In addition, although Defendants recognize that under common law the work product doctrine is "broader than that afforded by the Federal Rules and may in some circumstances protect disclosure of intangible things," they argue that the common law doctrine is inapplicable because "the Information sought does not reflect attorneys' mental impressions, conclusions, opinions or legal theories."  *Id*. at 14-15.

Even if the requested information does constitute work product, Defendants claim that they have a substantial need for the information based upon the perceived inconsistencies concerning the CIs' testimony as it relates to the facts contained in the Amended Complaint — as taken from the Interview Memoranda which Defendants claim "call[s] into serious question the investigative process followed. . . ."  *Id*. at 15.  In addition, Defendants state that the

---

[7]    The Court points out that neither party appears to have addressed whether Defendants previously requested this information in interrogatory form.

"information is necessary to enable Defendants to determine whether they are entitled to further relief, including reconsideration of the Court's denial of Defendants' motion to dismiss [as well as its] grant of class certification and/or sanctions." *Id*.

### b. Plaintiff's Opposition

In its opposition, Plaintiff states that: (1) "Defendants have failed to demonstrate that the Interview Memoranda and Class Counsel's investigation strategies are relevant to the facts . . . in this action;" (2) Defendants' reliance on the "'at issue' waiver standard applied in *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999)" to assert that "Plaintiff's [*sic*] waived work product protection by quoting portions of the Interview Memoranda in the Amended Complaint" is misplaced; Plaintiff points out that "'the Second Circuit expressly rejected those standards as "cut[ting] too broadly" into assertions of the privilege'" (quoting *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2009 WL 3334365, at *3 (E.D.N.Y. Oct. 14, 2009)) and that, in any event, "courts have universally rejected the argument that use of interview memoranda in a complaint waives the work product protection;" (3) Plaintiff's selective use of the Interview Memoranda at certain CI depositions "at most waive[s] the protection as to the entirety of the document and its underlying documents . . . [but the protection is not waived] as to every document Plaintiff's attorneys and their agents generated while prosecuting the litigation, or as to every other separate interview of distinct witnesses;" (4) the Interview Memoranda constitute "opinion work product, the disclosure of which would reveal aspects of Class Counsel's strategies and mental impressions" and since Defendants argue only "that they have a 'substantial need,'" their argument is "insufficient as a matter of law;" (5) Defendants cannot "meet the lower . . . standard of 'substantial need' with respect to the Interview Memoranda; and (6) "Defendants' request for information concerning

how Class Counsel conducted its investigation . . . is inappropriate" since Defendants cite no

case law "requiring counsel to conduct its investigation consistent with the information they

seek" or "requiring disclosure of such information to defendants upon demand" and, in any

event, such information constitutes work product based upon the common law definition and is

thus protected from disclosure on that basis.  Pl.'s Opp'n at 9-18.

### c.  Defendants' Reply

In their reply, Defendants state that:  (1) the Interview Memoranda meet the relevancy

requirement of Federal Rule of Evidence 401 since they "bear directly on whether Defendants

engaged in the alleged scheme to manipulate inventory and inflate revenues and whether

Defendants made any of the alleged misrepresentations and omissions described in the

Complaint;" (2) "[t]he Memoranda and Information are also relevant because they will likely

shed light on whether Defendants have a basis for seeking reconsideration of their motion to

dismiss and Plaintiff's motion for class certification and for initiating the process of making a

possible motion under Rule 11(b);" (3) Plaintiff's arguments against a finding of waiver as

concerns the Interview Memoranda are either "ridiculous" or are otherwise unsupported since

"Plaintiff has not cited any legal authority for the proposition that . . . waiver of work product

should not apply to confidential witness interview memoranda;" (4) Plaintiff's assertion that the

Interview Memoranda constitute opinion work product proceeds on a "false premise" because

the Memoranda "contain only information provided by the CIs to the investigator during their

witness interviews, not content that reveals attorneys' mental processes;" (5) attempts by

Plaintiff to "minimize Defendants' [substantial] need for the Memoranda by asserting, among

other things, that Defendants' seek production of work product 'simply because some of [*sic*]

testimony provided by CIs during discovery in 2015 was inconsistent with the information they

13

provided Class Counsel in 2006'" mischaracterizes the nature and extent of the inconsistencies between the "CIs' deposition testimony" and the information contained in the Interview Memoranda; and (6) with respect to the information sought concerning the investigative process utilized by Plaintiff's counsel, Defendants reiterate that even if such information did constitute fact work product, it is nevertheless discoverable "based on Defendants' substantial need." Reply Memorandum of Defendants in Further Support of Their Motion to Compel Production of Documents and Information Relating to the Confidential Informants ("Defs.' Reply") [DE 185] at 1-9.

## III.   APPLICABLE LAW

### 1.   *Federal Rule 26*

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted); *Denim Habit, LLC v. NJC Boston, LLC*, No. 13 CV 6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016). Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated. Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted). The rationale behind the elimination of this phrase is the reality that it "has been used by some, incorrectly, to define the

scope of discovery." Rule 26 Advisory Committee Notes to 2015 Amendments. Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exact-ingly.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)); *Evans v. Calise,* No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)); *Denim Habit, LLC*, 2016 WL 2992124, at *3. In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted); *see also Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("[m]otions to compel are left to the court's sound discretion."); *Liberty Mut. Ins. Co. v. Kohler*

*Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

### 2.  *The Work Product Privilege*

#### a.  **The Privilege Generally**

The so-called "work product privilege" is codified in Federal Rule of Civil Procedure 26(b)(3) which provides, in part, as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . . But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable . . . ; and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> . . . .

If a court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other legal representative concerning the litigation.  Fed. R. Civ. P. 26(b)(3).

Essentially, the work product privilege "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003)); *see also United States v. Adlman*, 134 F.3d 1194, 1196–97 (2d Cir. 1998) (noting that "work product privilege 'is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries") (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).  The party asserting the privilege bears the "heavy burden of establishing its applicability."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F. 3d at 183.

16

"Because the work product protection arises only for materials 'prepared in anticipation of litigation,' the doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer.  Rather the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'"  *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015) (quoting *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)).  Significantly, work product protection does not apply to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation. . . ."  *Adlman*, 134 F.3d at 1202.  In making a determination, a court must ask "not merely whether [the party invoking the privilege] contemplated litigation when it generated the materials at issue, but rather whether these materials 'would have been prepared in essentially similar form irrespective of litigation.'"  *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) (quoting *Adlman*, 134 F.3d at 1204).

Nevertheless, "[n]othing" in Rule 26(b)(3) states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope."  *Adlman*, 134 F.3d at 1198-99; *see Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) ("Documents prepared in anticipation of litigation are work product, even when they are also intended to assist in business dealings."); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015); *Patel v. L-3 Commc'ns Holdings, Inc.*, No. 14-CV-6038, 2016 WL 4030704, at *2 (S.D.N.Y. July 25, 2016).  Further, as *Adlman* made clear, "[t]here is no requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected [a]s [such a requirement is] at odds with

the text and the policies of the Rule.  Nowhere does Rule 26(b)(3) state that a document must have been prepared to *aid* in the conduct of litigation in order to constitute work product, much less *primarily* or *exclusively* to aid in litigation.  Preparing a document 'in anticipation of litigation' is sufficient."  *Adlman*, 134 F.3d at 1198.  Therefore, to establish that documents are protected under the work-product privilege, a party need only demonstrate that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation."  *Schaeffler*, 806 F.3d at 43 (quoting *Adlman*, 134 F.3d at 1202) (emphasis in original).

The burden of establishing that the doctrine applies rests on the party asserting the privilege, and, as such, it is that party who is tasked with showing what "would have" happened in these circumstances.  *Wultz*, 2015 WL 362667, at *11.  As the court noted in *Allied Irish Banks*,

> it is not easy for a factfinder to determine what "would have" happened in some hypothetical situation. . . .  Nonetheless, this is the question that the *Adlman* test requires us to answer and it is an exercise that courts have regularly performed.

240 F.R.D. at 106; *see Verizon Directories Corp. v. Yellow Book USA, Inc.*, No. 04-CV-251, 2004 WL 4054842, at*2 (E.D.N.Y. July 22, 2004) (e-mail released where no showing made that it would not have been created in essentially similar form irrespective of the litigation); *DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, No. 04 Civ. 4099, 2006 WL 357825, at *1 (S.D.N.Y.  Feb. 15, 2006) (documents created by management consultant not work product where consultant "would have created" them in similar form "even if the potential for litigation had been remote"); *In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.*, No. 03 Civ. 4304, 2005 WL 1473925, at *1 (S.D.N.Y.  June 22, 2005) (factual statement prepared following collision of

boats not work product where "business reasons for obtaining a statement from their captain's" would have compelled the report regardless of litigation).

### b.  Subject Matter Waiver

Subject matter waiver is a type of implied waiver "which allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed," and is grounded in "fairness considerations at work in the context of litigation."  *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 84 (E.D.N.Y. 2000) (quoting *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)).  In applying subject matter waiver, "courts have invoked the metaphors of 'sword' and 'shield' to describe the type of strategic assertion of privilege that would implicate fairness considerations."  *Falise*, 193 F.R.D. at 84; *see, e.g.*, *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.*, No. 95–CV–8833, 1997 WL 801454 at *1 (S.D.N.Y. Dec. 31, 1997); *In re Kidder Peabody*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996); *Stratagem Development Corp. v. Heron Intern. N.V.*, 153 F.R.D. 535, 545 (S.D.N.Y. Feb. 28, 1994).  In general, [t]he test for waiver is "whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.'"  *In re Vitamin C Antitrust Litig.*, No. MD 06–1738, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (quoting *In re Visa Check/Master Money Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000)); *see NL Indus., Inc. v. ACF Indus. LLC*, No. 10CV89W, 2015 WL 4066884, at *5 (W.D.N.Y. July 2, 2015).

Federal Rule of Evidence 502 codifies the doctrine of subject-matter waiver where disclosure is made in a federal proceeding or to a federal office or agency.  *See* Fed. R. Evid. 502(a).  Specifically, "Rule 502 of the Federal Rules of Evidence, titled 'Attorney-Client Privilege and Work Product; Limitations on Waiver,' provides that 'when [a] disclosure is made

in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding *only if*:  (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; *and* (3) they ought in fairness to be considered together.'"  *In re GM LLC Ignition Switch Litig*., 80 F. Supp. 3d at 533 (quoting Fed. R. Evid. 502(a)) (emphasis added); *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 371 (S.D.N.Y. 2015) (recognizing that "Fed. R. Evid. 502(a) addresses the precise issue of when a partial disclosure of protected information results in a waiver of undisclosed information.").  "As the Advisory Committee Notes state, the Rule — enacted in 2008 — 'provides that a voluntary disclosure in a federal proceeding or to a federal office or agency . . . generally results in a waiver *only* of the communication or information disclosed.'"  *Id.* (quoting Fed. R. Evid. 502, Committee Notes (emphasis added)).  "In particular, such disclosure results in a subject matter waiver of undisclosed materials only in those 'unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective  and misleading presentation of evidence to the disadvantage of the adversary.'"  *Id*. (quoting Fed. R. Evid. 502, Committee Notes); *see Mitre Sports Int'l Ltd.*, 304 F.R.D. at 372 ("Subject matter waiver is reserved for the rare case where a party either places privileged information affirmatively at issue, or attempts to use privileged information as both a sword and a shield in litigation."); *Favors v. Cuomo*, 285 F.R.D. 187, 200 (E.D.N.Y. 2012) ("[C]ourts generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege."); *Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 365–66 (E.D.N.Y. 2009) (collecting cases); *see also*

*In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (internal quotation marks omitted) (recognizing that subject matter waiver is appropriately found "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged materials potentially capable of rebutting the assertion."); *United States v. Treacy*, No. S208 CR 366, 2009 WL 812033, at *3 (S.D.N.Y. March 24, 2009) (subject-matter waiver of attorney-client privilege necessary "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary").

Generally, in analyzing whether and to what extent waiver may have occurred, the court must review the facts and circumstances of each case. *See Lugosch v. Congel*, 218 F.R.D. 41, 50 (N.D.N.Y. 2003) ("the work product doctrine is not absolute. Such protection, like any other privilege, can be waived and the determination of such a waiver depends on the circumstances."); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 142 (N.D.N.Y. 2007) ("The waiver of the doctrine depends upon the circumstances and each case is judged on its own facts."). Thus, "there is no *per se* rule that all voluntary disclosures constitute a waiver of the work product doctrine because there is no way the court can anticipate all the situations when and how such disclosure is required." *Lugosch*, 218 F.R.D. at 51; *see Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 339 (N.D.N.Y. 2006) ("[T]he work product doctrine is not absolute either. Such protection, like any other privilege, can be waived and the determination of such a waiver depends on the circumstances.").

However, "[a] voluntary disclosure of work product, for some or any inexplicable benefit, to a third party, especially if the party is an adversary, may waive the privilege." *Id.*; *see In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234–37 (2d Cir. 1993); *Trudeau*, 237 F.R.D. at 339; *U.S. v. Stewart*, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003) ("[C]ourts have found parties to have

21

waived protection of the [work product] doctrine by voluntarily submitting documents to potential adversaries. . . .”); *Bank of Am., N.A. v. Terra Nova Ins. Co.* 212 F.R.D. 166, 170 (S.D.N.Y. 2002) (“One circumstance that is inconsistent with the need for work product protection is when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary.”); *Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373, 381 (E.D.N.Y. 2011); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000); *Strougo v. BEA Associates*, 199 F.R.D. 515, 521–22 (S.D.N.Y. 2001).  It follows that, “when a party makes a strategic decision, no matter how broad and sweeping or limited, to disclose privilege information, a court can find an implied waiver.  Moreover, a party cannot partially disclose a privileged document nor selectively waive the privilege and then expect it to remain a shield.” *Lugosch*, 218 F.R.D. at 51 (citing *In re Grand Jury Proceedings*, 219 F.3d at 190–92); *see also In re Steinhardt Partners, L.P.*, 9 F.3d at 235 (“Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.”).

The party asserting that the work-product privilege applies “bears the burden of demonstrating that it has not been waived.”  *Norton v. Town of Islip*, No. CV 04-3079, 2015 WL 5542543, at *3 (E.D.N.Y. Sept. 18, 2015) (quoting *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009)); *see NL Indus., Inc.*, 2015 WL 4066884, at *5; *Curto*, 783 F. Supp. 2d at 380 (“[t]he party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived” (internal quotation and citation omitted).

## IV.    D̲ISCUSSION

### 1.    *Relevance of the Interview Memoranda and Information*

#### a.   **The Interview Memoranda**

Despite Plaintiff's assertion that the Interview Memoranda are not discoverable since "they are not admissible evidence" nor are they "likely to lead to admissible evidence," this argument misses the mark.  Pl.'s Opp'n at 7.  As stated above, Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case."  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015); *Denim Habit, LLC*, 2016 WL 2992124, at *3; *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 CIV 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, No. 14 CV 9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).  As such, the issue of whether the Interview Memoranda themselves constitute admissible evidence is inapposite to the inquiry required under Rule 26.  *Crespo v. Beauton*, No. 15-CV-412, 2016 WL 525996, at *1 (D. Conn. Feb. 9, 2016) ("At the discovery stage, information need not be admissible in evidence to be discoverable.") (internal quotations and citation omitted); *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 356 (W.D.N.Y. 2011) ("To be discoverable, the information need not be admissible at the trial. . . .) (internal quotations and citation omitted); *Koncelik v. Savient Pharm., Inc.*, No. 08 CIV. 10262, 2009 WL 2448029, at *2 (S.D.N.Y. Aug. 10, 2009) "[T]o be relevant and therefore discoverable, information need not be admissible. . . .") (internal quotations, citation and emphasis omitted); *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 20 (W.D.N.Y. 1997) ("It is not grounds for an objection that the information sought will be inadmissible at trial. . . ."); *see also Estee Lauder, Inc. v. Fragrance*

*Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("[T]he concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility, but rather is broad enough to afford parties liberal access to evidence in advance of trial.").

Having reviewed the 14 Memoranda *in camera*, the Court finds that they encompass relevant information regarding the claims at issue in this action. Specifically, each of the 14 Memoranda contain factual information elicited from the CIs bearing upon Plaintiff's allegations of Symbol's wrongdoing, including that Symbol:

> (a) engaged in various ship-and-store, double-counting, and other schemes to artificially inflate revenues and understate inventories; (b) maintained and implemented internal controls that were wholly deficient and ineffective, notwithstanding their repeated public statements to the contrary; (c) issued false certifications in SEC filings attesting to the efficacy of such controls and the Company's compliance with Generally Accepted Accounting Principles ("GAAP"); and (d) consistently published revenue guidance that they either knew to be false or which lacked any reasonable basis.

Am. Compl. ¶ 5. Thus, the information contained in each of these Interview Memoranda is unquestionably relevant since such information evidences a direct nexus to the factual issues striking at the very core of this litigation. Therefore, the Interview Memoranda fall squarely within Rule 26(b)(1) and should be produced unless a privilege applies to shield such information from disclosure. *See Lightsquared Inc. v. Deere & Co.*, No. 13 CIV 8157, 2015 WL 8675377, at *2 (S.D.N.Y. Dec. 10, 2015) ("The amendments to Rule 26(b)(1) allow discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . .'" (quoting Fed. R. Civ. P. 26(b)(1)); *State Farm Mut. Auto. Ins. Co.*, 2015 WL 7871037, at *2.

In addition, although Plaintiff asserts that "[e]ven if there is some minimal relevance as to the Interview Memoranda [ ] it is outweighed by the burden imposed on Plaintiff and Class

Counsel in divulging their work product," this argument is unpersuasive. Pl.'s Opp'n at 7.

Significantly, Plaintiff appears to conflate its "burden," as that term is utilized in Rule 26(b)(1)

— which states that in determining proportionality, a court should consider "whether the burden

or expense of the proposed discovery outweighs its likely benefit" — with any burden it

purportedly may face in asserting that these materials are (1) protected pursuant to the work

product doctrine and (2) that the protection has not been waived. However, "burden" as applied

to Rule 26(b)(1)'s proportionality requirement is exclusive from and unrelated to any purported

burden associated with the premise that protection under the work product doctrine applies and

that it has not been waived. Plaintiff's perfunctory argument therefore fails. In addition, the

Court points out that Plaintiff is currently in possession of the nine Interview Memoranda. As

such, there are no issues regarding Plaintiff's access to the materials or any prohibitive costs

associated with producing the same. *See* Fed. R. Civ. P. 26(b)(1) (setting forth factors courts

should consider in weighing proportionality).

### b. The Information

Defendants also seek "information regarding certain aspects of the investigative process

that Plaintiff's counsel ("Pomerantz") followed before including allegations in the Complaint

about what the CIs supposedly said in support of Plaintiff's claims." Defs.' Reply at 13. As

pointed out earlier, Defendants request that Plaintiff provide "yes or no answers" to the

following "five targeted questions:"

> (1) whether or not any attorney from Pomerantz ever spoke with that CI before the Complaint was filed; (2) whether or not any attorney from Pomerantz ever reviewed with that CI the quotes or statements attributed to him or her to make sure they were acceptable; (3) whether or not that CI consented to being identified in the Complaint; (4) whether or not that CI was informed before the filing of the Complaint that he or she could be identified in a public filing or during discovery; and (5) whether or not that CI consented to

being quoted or having his or her statements attributed to him or her in the Complaint.

*Id*. at 14.  In arguing that such information is relevant, Defendants contend that

> [g]iven the significant discrepancies between and among what Plaintiff alleges in the Complaint, what the CIs testified to in their depositions and what the Memoranda say about what the CIs told Plaintiff's investigator, there are serious questions about whether Plaintiff's counsel conducted an "inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b). Since the Memoranda and Information bear on whether Plaintiff had a reasonable basis for including allegations in the Complaint about what the CIs supposedly said about the claims asserted against Defendants, the material sought bears directly on whether Plaintiff had a reasonable basis for filing the Complaint. Thus, Production of the Memoranda and the Information sought would enable Defendants to determine whether it would be appropriate to begin the Rule 11 process.

*Id*. at 2.  In response, Plaintiff argues that "Defendants have not even attempted to demonstrate how Class Counsel's procedures for investigating this case meet Rule 26's relevancy requirement.  Indeed, the information sought has nothing to do with the factual allegations in this case."  Pl.'s Opp'n at 15.

As an initial matter, the Court points out that the information sought by Defendants (*i.e.*, the answers to the 5 questions set forth above) is not presently memorialized in any tangible medium that could be turned over to Defendants.  To the contrary, such information would need to be "created" in documentary form.  However, in general, a party is not required to create documents responsive to another party's request.  *See Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, No. 01 CIV. 7677, 2002 WL 31309232, at *4 (S.D.N.Y. Oct. 15, 2002) ("It is well-established . . . that courts may not compel the creation of documents to comply with a discovery demand."); *Atwell v. City of N.Y.*, No. 07 CIV. 2365, 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008) (same); *Montesa v. Schwartz*, No. 12 CIV 6057, 2015 WL 13016354, at *3 (S.D.N.Y. Nov. 3, 2015); *In re Air Crash Near Clarence Ctr., N.Y.*, No. 09-

CV-769S, 2013 WL 6073635, at *4 (W.D.N.Y. Nov. 18, 2013) ("Plaintiff is not required . . . to create an asset or valuation list, or any other documents, in response to [defendants' discovery] demand."); *see Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV126383, 2016 WL 4703656, at *11 (E.D.N.Y. Sept. 7, 2016) ("[T]he Nationwide Defendants are not required to create documents responsive to Plaintiff's request.").  It is undisputed that the information Defendants demand does not presently exist in tangible form.  Further, Defendants have not cited, nor is the Court aware, of any authority applying an exception to this general rule in a situation analogous to the one that exists here.[8]  In the absence of such an exception, and in accordance with the general rule cited, the Court is not inclined to compel Plaintiff to "create" written answers to Defendants' questions pertaining to certain actions taken (or not taken) in conjunction with Plaintiff's decade-old investigation of the factual allegations encompassed within the Amended Complaint.

Even if the information sought presently existed in a tangible form, the Court does not find that the answers to these 5 questions — focusing strictly on certain actions (or inactions) taken by Plaintiff's counsel in conjunction with their investigation — are relevant to either the underlying claims or defenses of this case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case) (emphasis added).  Without such a nexus, this information, even if it existed in documentary form, would lie beyond the bounds of discoverability.  Indeed,

---

[8]     To the extent Defendants cite two unpublished Orders in the case of *In re Millennial Media, Inc. Sec. Litig.*, No. 14 CIV. 7923, Defs.' Reply at 9, such Orders are of questionable precedential value and, in any event, are entirely dependent on the facts of that case.  In addition, such information was to be created and then provided to the court for review, as opposed to defendants.  The information thus did not constitute traditional discovery of the type sought here. As such, the Court declines to apply *Millenial Media* to the facts that exist in this case.

in arguing that such information is relevant, Defendants do not identify any direct relationship between the information sought and the claims or defenses at issue. Rather, Defendants focus solely on the purported inconsistencies that exist between "what the Plaintiff alleges in the [Amended] Complaint, what the CIs testified to in their depositions and what the Memoranda say about what the CIs told Plaintiff's investigator" as that information relates to their ability to seek reconsideration of their motion to dismiss and file a motion seeking Rule 11 sanctions. Defs.' Reply at 2. It is not the Court's job to pave the way for Defendants to bring a Rule 11 motion. This case is seemingly well beyond that stage.

As Defendants themselves acknowledge, they have completed depositions of 12 of the 13 CIs, are presently in possession of five of the 14 Interview Memoranda and have compared these statements with those attributed to the CIs in the Amended Complaint. Massey Decl. ¶¶ 21-29 (setting forth alleged inconsistencies in CIs' deposition testimony and statements made in Interview Memoranda). If Defendants have a good faith basis (based on the exemplars set forth in the Massey Declaration) to file a motion seeking reconsideration of their motion to dismiss or for Rule 11 sanctions — purportedly based upon "new facts" as gleaned from these depositions, a review of the five Interview Memoranda and the assertions made in the Amended Complaint (based on the statements of the CIs) — that is their decision to make. However, such purpose does not bear any direct relationship to the claims or defenses at issue in the underlying securities action. To the contrary, the provision of such information, and any strategic maneuvers made in response, implicate matters that are collateral and at best are remotely related to the subject matter directly at issue in this litigation. There is a significant difference between information that is directly relevant to the allegations made in the Amended Complaint compared to information that is relevant only as to whether Plaintiff had a "reasonable basis for filing the

Complaint." Defs.' Reply at 2. This litigation is primarily concerned with the former situation as opposed to the latter. As such, the Court finds that Defendants have not made the requisite *prima facie* showing of relevance to warrant discovery of such information. *See Barbara*, 2013 WL 1952308, at *2 ("The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."); *Evans*, 1994 WL 185696, at *1; *Denim Habit, LLC*, 2016 WL 2992124, at *3; *see also EM Ltd.*, 695 F.3d 201, 207 ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process."); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins*, 2014 WL 495646, at *2 (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.").

In sum, the issue whether Plaintiff's counsel and its investigator may have run afoul of ethical duties when conducting the investigation (and the Court takes no position on this issue) is wholly divorced from the subject matter and claims in the underlying action itself. Any relevance to the same is far too attenuated to permit discovery relating to such collateral matters. As such, Plaintiff's reliance on guidance set forth in the case of *In re Millennial Media, Inc. Sec. Litig.*, No. 14 CIV. 7923, 2015 WL 3443918, at *1 (S.D.N.Y. May 29, 2015) is misplaced. In *Millennial Media*, the court reviewed certain actions taken by Plaintiff's counsel in the course of its investigation into potential violations of the securities laws. In *dicta*, the court set forth certain best practices that it believed should be followed when conducting an investigation in such an action. *See id.* at *1. However, *Millennial Media* does not apply here because: (1) *Millennial Media* did not involve questions of relevance or discoverability of information concerning the investigation conducted by Plaintiff's counsel that is at issue in this case; (2) the

guidance outlined there consists solely of "best practices," as the court itself stated that it was "unaware of any case or ethics canon requiring that plaintiffs' counsel" follow any particular set of guidelines or rules when conducting its investigation; and (3) in the instant case, Plaintiff's counsel conducted its investigation over 10 years ago, long before *Millennial Media* was decided in 2015. *Id*. at 13. Thus, to the extent the guidance in *Millennial Media* is applicable at all, it would be prejudicial to apply it retroactively. In addition, at least one court has found the *dicta* in *Millennial Media* unpersuasive. *See The Dep't of the Treasury of the State of New Jersey & its Div. of Inv. v. Cliffs Nat. Res., Inc.*, No. 1:14 CV 1031, 2015 WL 6870110, at *4 (N.D. Ohio Nov. 6, 2015) ("With regard to *In re Millennial Media, Inc. Sec. Lit.*, No. 14-7923, 2015 WL 3443918 (S.D.N.Y. May 29, 2015), the Court notes that the district court's pronouncements are *dicta*, not followed by at least one other court in that district, have no precedential effect on this Court, and relate only to the facts of that case.").

Based upon the foregoing analysis, the Court finds that the Interview Memoranda are relevant, but the information relating to the investigation conducted by Plaintiff's counsel is not. Having reached this conclusion, the Court need not address whether the information concerning counsel's investigation is otherwise protected by the work product privilege since that information is not discoverable in the first instance. Thus, the Court turns its attention to whether the nine Interview Memoranda are required to be disclosed, notwithstanding their eligibility for protection under the work product doctrine.

### 2. *Whether the Nine Memoranda are Discoverable*

#### a. **Waiver of the Work Product Privilege**

Initially, the Court points out that it will dispense with embarking of an analysis as to whether the nine Interview Memoranda are eligible for protection as work product since

Defendants concede that these documents fall within the ambit of the work product doctrine.  *See* Defs.' Mem. at 6 ("Defendants do not dispute that the Memoranda satisfy the basic criteria for work product protection. . . .").  As such, the Court turns its attention to whether subject matter waiver has occurred which would necessitate disclosure of the nine Interview Memoranda.

In cases involving a potential waiver of the work product doctrine, a court must review the facts and circumstances of each case.  *See Lugosch*, 218 F.R.D. at 50 ("the work product doctrine is not absolute.  Such protection, like any other privilege, can be waived and the determination of such a waiver depends on the circumstances."); *NXIVM Corp.*, 241 F.R.D. at 142 ("The waiver of the doctrine depends upon the circumstances and each case is judged on its own facts.").  In addition, because this is a federal proceeding, the Court will apply the test set forth in Federal Rule of Evidence 502 to the facts here in order to determine whether and to what extent the privilege may have been waived.  *See Mitre Sports Int'l Ltd.*, 304 F.R.D. at 371 (recognizing that "Fed. R. Evid. 502(a) addresses the precise issue of when a partial disclosure of protected information results in a waiver of undisclosed information.").

After confirming the identities of the thirteen CIs referenced in the Amended Complaint, Defendants conducted depositions of CIs 1-12.  Massey Decl. ¶ 8.  These depositions occurred between April 10, 2015 and June 29, 2015.  *Id*. ¶¶ 9-20.  During the course of the depositions, "Plaintiff used five of the Memoranda to cross examine certain CIs. . . . ,"  *id*. ¶ 44, and so Plaintiff provided Defendants with Interview Memoranda 1, 5-6 and 9-10.  *Id*. ¶¶ 4, 23, 44, Ex. A (Plaintiff's Privilege Log).  As noted, these Memoranda correspond to interviews conducted with the following CIs:  CI #1 (Interview Memoranda 1 and 9), CI #8 (Interview Memoranda 5),      CI #7 (Interview Memoranda 6), CI #9 (Interview Memoranda 10).  *Id*., Ex. A.  Plaintiff does not dispute the fact that it intentionally utilized these five Interview

Memoranda to cross-examine certain CIs during their depositions or that it waived the privilege with respect to these intentional disclosures. *See* Pl.'s Opp'n at 2, 10 ("When a memorandum was utilized in a deposition, the entire memorandum was disclosed. . . ."); *see also In re Nat. Gas Commodity Litig.*, 229 F.R.D. 82, 85 (S.D.N.Y. 2005) ("[T]he voluntary production of a privileged document waives any claim of privilege with respect to that document.") (citing *United States v. Rigas*,   281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003)); *United States v. Gangi*, 1 F. Supp. 2d 256, 263 (S.D.N.Y. 1998) ("If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential."); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) ("Disclosure to an adversary waives the work product protection as to items actually disclosed    . . . ."); *see also Curto*, 783 F. Supp. 2d at 380 ("A party will waive work product protection when it uses the protected documents in a manner that is inconsistent with the protection.") (internal citation omitted); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 436 (S.D.N.Y. 2013) ("As a general rule, work product is waived only when the disclosure is to an adversary or materially increases the likelihood of disclosure to an adversary.") (internal citation omitted). Thus, the precise issue in this case is whether Plaintiff's voluntary waiver of the five Interview Memoranda operated as an implicit waiver as to the nine remaining Interview Memoranda that it continues to withhold.

Pursuant to Federal Rule of Evidence 502(a), "'when [a] disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding *only if*:  (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; *and* (3) they ought

in fairness to be considered together.'" *In re GM LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 533 (quoting Fed. R. Evid. 502(a)) (emphasis added); *Mitre Sports Int'l Ltd.*, 304 F.R.D. at 371. The Rule is grounded upon notions of fairness in order to "'prevent selective and misleading presentation of evidence to the disadvantage of the adversary.'" *Id.* (quoting Fed. R. Evid. 502, Committee Notes); *see Favors*, 285 F.R.D. 18 at 200 ("[C]ourts generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege."). The Court turns to each of these three factors in order to determine if a subject matter waiver has occurred in light of the facts present here.

With respect to the first factor, there is no dispute based upon the currently known facts that the waiver of the five Interview Memoranda, giving rise to the potential subject matter waiver of the remaining nine Interview Memoranda, was anything but intentional. Indeed, Plaintiff tacitly acknowledges that it made a conscious choice to intentionally waive the privilege by affirmatively injecting these memoranda into the depositions of certain CIs. *See* Pl.'s Opp'n at 10.

Turning to the second factor, having reviewed the 14 Interview Memoranda *in camera*, and having compared the contents of the five memoranda previously disclosed with the contents of the nine memoranda still being withheld, the Court concludes that the 14 memoranda concern the same overall subject matter. Indeed, each Interview Memoranda memorializes facts gleaned by the investigator from her interviews with each of the 13 CIs. These facts, in turn, bear directly on the allegations contained in the Amended Complaint. Significantly, in reviewing the Amended Complaint, it is apparent that Plaintiff relied almost exclusively on information elicited from the CIs (as memorialized in each memorandum) in order to frame its allegations relating to

33

Defendants' (1) fraudulent scheme to inflate revenues and underreport inventories, *id*. ¶¶ 45-60, and (2) their ineffective internal controls. *Id*. ¶¶ 61-76. Pl.'s Opp'n at 4; *see, e.g.*, Am. Compl. ¶¶ 45-76 (referring to and quoting CIs' statements as memorialized in the Interview Memoranda). Further, the group of individuals ultimately interviewed by the investigator were likely chosen precisely because their individual roles and experiences as employees of Symbol — or its distribution partners — would provide Plaintiff with potentially relevant information in support of the allegations (*i.e.*, fraudulent inflation of revenues, underreporting inventory and having ineffective internal controls). Having conducted its own review of the nine Interview Memoranda, the Court confirms that these topics — the precise allegations at issue in this case — were addressed with varying degrees of factual detail in each of these memoranda. Although an argument may be made that subject matter differences exist at a very granular level concerning each of the CI's varying roles, responsibilities, types of potential malfeasance each allegedly observed or heard about, and precise information that each was able to provide to the investigator, any such argument would yield a distinction without a difference. Focusing on such differences would fail to recognize and give meaning to the inherent similarities which exist between the over-arching subject matter and issues which are the primary focus of this litigation.

With respect to the third and perhaps most important factor, fairness concerns militate in favor of disclosure of the nine Interview Memoranda. *See Falise*, 193 F.R.D. at 84 ("Subject matter waiver is a form of implied waiver . . . and is rooted in 'fairness considerations at work in the context of litigation.'" (quoting *In re von Bulow*, 828 F.2d at 103). Here, Plaintiff made a conscious, strategic decision to affirmatively utilize the five Interview Memoranda in order to cross-examine certain CIs' during their depositions. Having done so, Plaintiff ran the risk that not only those five memoranda but the nine other memoranda that have not been disclosed would

lose protection afforded by the privilege.  Presumably, Plaintiff's counsel measured this risk when the decision was made to selectively utilize five of the 14 Interview Memoranda.

In any event, by making deliberate, affirmative and selective use of five memoranda for Plaintiff's benefit while continuing to seek protection for the remaining nine memoranda which were not disclosed, and which contain the same subject matter, implicates precisely the situation the concept of subject matter waiver was meant to address — *i.e.*, cases in which one party attempts to use the privilege both offensively and defensively in order to gain a strategic advantage, *i.e.*, as both a sword and a shield.  *See Falise*, 193 F.R.D. at 84 ("In applying subject matter waiver, courts have invoked the metaphors of 'sword' and 'shield' to describe the type of strategic assertion of privilege that would implicate fairness considerations."); *Mitre Sports Int'l Ltd.*, 304 F.R.D. at 372 ("Subject matter waiver is reserved for the rare case where a party either places privileged information affirmatively at issue, or attempts to use privileged information as both a sword and a shield in litigation."); *Granite Partners, L.P. v. Bear Stearns & Co. Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("The work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege.  It is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.'") (internal quotation marks and citation omitted); *see also The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d at 365("[C]ourts generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have affirmatively been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege. . . .); *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) ("The scope of the work product privilege waiver is determined by considering whether a party has made

affirmative and selective use of privileged documents, as well as the underlying purposes for the work product doctrine.").

The Court stresses that the application of subject matter waiver is dependent upon concepts of fairness, and, therefore, the ultimate admissibility of the underlying information that is subject of the waiver inquiry is of no moment. *See Granite Partners, L.P.*, 184 F.R.D. at 54 (recognizing that "[T]he issue of waiver rests not on whether a privileged document is admissible into evidence but rather whether the party's use of the document is unfair and inconsistent with a claim of privilege."). Thus, it matters not whether the nine memoranda are ultimately admissible or whether Plaintiff would attempt to make use of these memoranda at trial. Rather, the focus at this stage is concerned with whether "plaintiffs are attempting to use the report as both a sword and a shield by using the privilege to prejudice defendants' case or to disclose some selected communications or documents for self-serving purposes." *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 167 (S.D.N.Y. 2008). Here, Plaintiff has disclosed selected memoranda for its own purposes (*i.e.*, to cross-examine deponents) which may well have been necessary in the circumstances. But in doing so, Plaintiff made a choice to get the information in the record, utilizing those five memoranda as a sword. Consequently, Plaintiff cannot simultaneously shield the remaining nine memoranda — which involve precisely the same subject matter — from disclosure. For the Court to permit such action would subvert both the basis on which the work product privilege rests and the rationale for invoking subject matter waiver.

Principles of fairness dictate that Plaintiff cannot have it both ways. In using the five memoranda for its own strategic benefit, it ran the very real risk that the privilege would be waived with respect to the other nine memoranda. *See Tribune Co. v. Purcigliotti*, No. 93 CIV. 7222, 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997), *modified*, No. 93 CIV. 7222, 1998 WL

36

175933 (S.D.N.Y. Apr. 14, 1998) ("[W]here there is partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject.").

While the Court is mindful that "subject matter waiver of undisclosed materials [is warranted] only in those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary," the Court finds this to be the "unusual case." Fed. R. Evid. 502, Committee Notes. Indeed, affirmatively utilizing and selectively disclosing five of the memoranda, while attempting to cloak the remaining nine memoranda under the privilege would result in a patently unfair situation. It would effectively permit Plaintiff to obtain both an offensive and defensive advantage inconsistent with the rationale underlying the work product privilege. *See Lugosch*, 218 F.R.D. at 51 ("[W]hen a party makes a strategic decision, no matter how broad and sweeping or limited, to disclose privilege information, a court can find an implied waiver. Moreover, a party cannot partially disclose a privileged document nor selectively waive the privilege and then expect it to remain a shield.").

Based upon the foregoing analysis, Plaintiff's contention that Defendants "have failed to identify even a single case finding waiver of work product asserted over confidential witness interview memoranda" misses the mark. Pl.'s Opp'n at 11. The fact that Defendants have not presented the Court with a case on all fours with this one is not a basis for denying their motion. Where issues of waiver are implicated, each case must be judged upon its own distinctive facts. *See NXIVM Corp.*, 241 F.R.D. at 142 ("The waiver of the [work product] doctrine depends upon the circumstances and each case is judged on its own facts."). In addition, it is Plaintiff, as the party asserting the privilege, who has the burden of showing that no waiver has occurred. *See*

*Norton*, 2015 WL 5542543, at *3 (the party asserting that the work-product privilege applies "bears the burden of demonstrating that it has not been waived."); *NL Indus., Inc.*, 2015 WL 4066884, at *5; *Curto*, 783 F. Supp. 2d at 380 ("The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived") (internal quotation and citation omitted).

Further, the cases cited by Plaintiff for the proposition that subject matter waiver should not apply here do not compel a different result. For example, Plaintiff cites *United States v. Nobles*, 422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975) ostensibly for the proposition that waiver should generally be limited in scope "only [to] the portion of the report that related to the testimony the investigator would offer. . . ." *Id.* at 241, 95 S. Ct. at 2171; Pl.'s Opp'n at 10. However, *Nobles* involved the application of the work product doctrine in a criminal case involving an entirely distinct set of facts from those presented here. In addition, the language Plaintiff refers to in *Nobles* is arguably *dicta* since the Supreme Court noted only that "the District Court properly exercised its discretion . . . [in limiting waiver of the work product doctrine] only [to] the portion of the [investigator's] report that related to the testimony the investigator would offer . . . ." *Id.* at 241, 95 S. Ct. at 2171. Further, *Nobles* did not specifically discuss or otherwise address the applicability of subject matter waiver in light of the facts which were presented. Thus, the Court is not persuaded that *Nobles* compels a different result here.

Plaintiff also relies upon *Makowski v. SmithAmundsen LLC*, No. 08 C 6912, 2010 WL 3184483, at *1 (N.D. Ill. Aug. 11, 2010), a decision rendered outside of this Circuit. *Makowski* involved allegations arising under Title VII and the Family and Medical Leave Act. In an opinion containing little reasoning, the court in *Makowski* held that "Plaintiff must produce the draft affidavit, interview notes, and other documents describing what Ms. Lengiewicz said to Mr.

DeGrande, unless Plaintiff enters into a stipulation that she will not use the witness's prior statements (and any documentation of them) in any manner at trial." *Id*. at *4. However, the court did not require "Plaintiff to produce draft affidavits or other documents pertaining to other witnesses who may have been interviewed since these are protected by the work product doctrine and, at this juncture, the Court is not persuaded that Defendants have a substantial need for the materials or that Plaintiff has waived the protection." *Id*.; Pl.'s Opp'n at 10. The court based its decision to shield certain other witness information from disclosure on the fact that such materials constituted work product — similar to the instant case where the nine memoranda similarly constitute work product. *Id*. However, without further reasoning, the court went on to find only that no waiver of these materials had yet occurred which would otherwise warrant disclosure, nor had the defendants shown a substantial need for the information. *Id*. Nevertheless, the district court left open the possibility that its ruling "could change, particularly if Plaintiff were to make testimonial or other use of information obtained from witnesses at trial or otherwise." *Id*. Thus, the holding in *Makowski*, to the extent it has any persuasive value, is limited to its own set of facts and is not otherwise in tension with the Court's decision here since the distinguishing facts in this case lead to a different result.

In addition, to the extent Plaintiff seeks to undermine the continuing vitality of the waiver analysis used in *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999) — in light of the Second Circuit's implicit rejection of the continued viability of the waiver test originally announced in *Hearn v. Rhay*, 68 F.R.D 574 (E.D. Wash. 1975) — the Court respectfully disagrees with Plaintiff's interpretation. Pl.'s Opp'n at 9. Although it is true that *Granite Partners* cited with approval the waiver test set forth in *Hearn* (*Granite Partners*, 184 F.R.D. at 55) — a test which the Second Circuit has since pronounced "cuts too broadly" (*In re*

*Cnty. of Erie*, 546 F.3d at 229) — it is questionable to what extent, if any, *Granite Partners* actually relied on the test set forth in *Hearn* since the factors themselves were not explicitly applied by the court to the facts of that case.  Rather, the court in *Granite Partners* appears to have grounded its ultimate finding of waiver upon concepts of fairness — a factor that still remains critical to a waiver inquiry.  *See Granite Partners*, 184 F.R.D. at 55 ("[T]he issue of waiver rests not on whether a privileged document is introduced . . . but rather whether the party's use of the document is unfair and inconsistent with the claim of privilege) and ("waiver . . . is designed to assure fairness to litigants").  Further, it is far from a certainty that the Second Circuit's observation that the *Hearn* factors "cut [ ] too broadly" forecloses altogether the continued application of certain aspects of the *Hearn* test.  Rather, the language used appears to be limited to the particular set of facts addressed by the court.  *See In re Cnty. of Erie*, 546 F.3d at 229 (stating that "the *Hearn* test cuts too broadly" but concluding that "the District Court erred in *applying it here*") (emphasis added).  In any event, *In re County of Erie* reaffirmed the continued importance of the concept of unfairness when confronting issues involving waiver, stating that "[u]nderlying any determination that a privilege should be forfeited is the notion of fairness" and that "[w]hether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted."  *Id.* (internal citation omitted) (second alteration and ellipsis in original).  Thus, the Court finds that the reasoning and ultimate findings set forth in *Granite Partners* remains good law.  *See,e.g.*, *Martin v. Giordano*, No. 11-CV-4507, 2016 WL 2354239, at *3 (E.D.N.Y. May 4, 2016) (citing *Granite Partners* with approval); *BNP Paribas v. Bank of N.Y. Trust Co.*, No. 11 CIV. 350, 2013 WL 2434686, at *7 (S.D.N.Y. June 5, 2013) (same); *see also Crawford v. Coram Fire Dist.*,

No. 12 CV 3850, 2014 WL 1686203, at *4 (E.D.N.Y. Apr. 29, 2014) (analyzing issue of waiver and relying on the *Hearn* factors as set forth in *Granite Partners*).

The Court points out that "[d]iscovery is not a matter of gamesmanship nor conducted like a game of chess." *Phelan v. Cambell*, No. 9:10-CV-540, 2012 WL 407161, at *2 (N.D.N.Y. Jan. 19, 2012), *report and recommendation adopted*, 2012 WL 407147 (N.D.N.Y. Feb. 8, 2012), *aff'd*, 507 F. App'x 14 (2d Cir. 2013). Rather, the over-arching purpose of the discovery rules is to "encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field" for both parties to the litigation. *United States v. Smith*, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013); *see Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01CV1974, 2006 WL 5097357, at *8 (N.D.N.Y. Nov. 13, 2006) *order clarified*, 2007 WL 4324094 (N.D.N.Y. May 16, 2007), *aff'd sub nom.*, *Cornell Univ. v. Hewlett-Packard Co.*, 2007 WL 4302778 (N.D.N.Y. July 23, 2007) ("The court has consistently reminded the parties that one of its goals, in carrying out its discovery oversight responsibilities, has been to ensure a level playing field for both sides.").

In the instant case, Plaintiff made a strategic decision to utilize and disclose five of the 14 Interview Memoranda while withholding the remaining nine based upon assertion of the work product doctrine. Where the initial waiver itself was intentional and the disclosed and undisclosed information concerned the same subject matter, notions of fairness dictate that they should be considered together. *See In re GM LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 533 (quoting Fed. R. Evid. 502(a)); *Mitre Sports Int'l Ltd.*, 304 F.R.D. at 371. Taking all of these factors into account, the Court finds that the nine Interview Memoranda at issue are to be turned over to Defendants.

In rendering this decision, the Court remains mindful of (1) the different levels of protection associated with fact work product on the one hand and opinion work product on the other as well as (2) the fact that "courts have 'been reluctant to hold that implied waiver of non-opinion work product extends to opinion work product.'" *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (quoting *Shinnecock Indian Nation*, 652 F. Supp. 2d at 367) (listing cases). *See BNP Paribas*, 2013 WL 2434686, at *3; *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, No. 13 CIV. 1582, 2013 WL 1609250, at *5 (S.D.N.Y. Apr. 15, 2013); *see also In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (recognizing that "There are two types of work product, ordinary or fact (herein "fact") and opinion.  As we have stated previously, fact work product may encompass factual material, including the result of a factual investigation.  In contrast, opinion work product reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and is entitled to greater protection than fact work product.") (internal citation omitted); *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 459 (S.D.N.Y. 2008) (same); *see also Costabile*, 254 F.R.D. at 167 ("A party seeking discovery of attorney work product must show 'substantial need,' for fact work product, and work product that shows 'mental impressions, conclusions, opinions, or legal theories of an attorney . . . is to be protected unless a highly persuasive showing [of need] is made.'") (internal citation omitted).

Here, despite Plaintiff's assertion that the Interview Memoranda created by the investigator constitute opinion work product, the Court respectfully disagrees.  Pl.'s Opp'n at 7-8, 11.  After reviewing each of the nine Interview Memoranda *in camera*, it is apparent that each contains a factual summary concerning each individual CI's interview as memorialized by the investigator.  Significantly, none of the memoranda divulge the mental impressions,

conclusions, legal theories or opinions of Plaintiff's counsel, which would otherwise transform these memoranda from fact work product into opinion work product. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("[F]act work product may encompass factual material, including the result of a factual investigation."); *Koumoulis*, 295 F.R.D. at 39 (recognizing that "fact work product" includes "factual investigation results"). Rather, the memoranda consist of basic factual summaries prepared from information relayed directly to the investigator during each interview.  As such, given the fact-based content of these memoranda, there is no basis to cloak them with opinion work product protection. *See In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982) (finding attorney notes of employee interview constituted only fact work product where "[t]he notes recite in a paraphrased, abbreviated form, statements by Employee A relating to [certain] events . . . [and therefore] [ ] their production will not trench upon any substantial interest protected by the work-product immunity."); *S.E.C. v. Thrasher*, No. 92 CIV. 6987, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995), *aff'd*, 1995 WL 456402 (S.D.N.Y. Aug. 2, 1995) ("[T]o the extent that the [interview] notes constitute summaries of what a party or witness has stated to the attorney or his representative, it is treated as factual work product. . . ."); *see also Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73 (S.D.N.Y. 2010) ("Although factual material, including the result of a factual investigation, falls within the ambit of the work product doctrine, it does not receive the heightened protection afforded opinion work product.") (internal citation omitted); *Crosby v. City of N.Y.*, 269 F.R.D. 267, 278 n. 50 (S.D.N.Y. 2010) ("According to Black's Law Dictionary, factual work product is '[a] lawyer's tangible work product that includes facts but not the lawyer's mental impressions[,]' whereas core work product, also known as opinion work product, is '[a] lawyer's

opinions, conclusions, and legal theories arising from a client's case.'" (quoting Black's Law Dictionary (9th ed. 2009)).

Likewise, the cases cited by Plaintiff — purportedly for the proposition that the memoranda at issue here constitute opinion work product and require a heightened level of scrutiny— contain facts and circumstances which diverge from those in the instant case and are therefore distinguishable.  *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053-54 (8th Cir. 2000) (finding that "hand-written notes taken by GM's attorneys during interviews . . . hand-written notes taken by a non-attorney member of GM's litigation team during an interview conducted in the presence of a GM attorney . . . [and] a typed summary prepared by a GM attorney shortly after an interview" all were entitled to protection as opinion work product); *S.E.C. v. Nadel*, No. CV 11-215, 2012 WL 1268297, at *8 (E.D.N.Y. Apr. 16, 2012) (finding that interview notes taken by non-attorney staff members of SEC were entitled to protection as opinion work product primarily because:  (1) "[t]he note takers were instructed by SEC attorneys to record only the most relevant information;" (2) "[d]uring the interviews, the attorneys would at times indicate to the staff members that they should take note of particular statements made by the witnesses that the attorneys felt were particularly important;" (3) "[s]ome of the notes also contain underlining, the disclosure of which would reveal what the staff note takers and/or attorneys felt was important information;" and (4) "[g]iven these circumstances, there is a real concern that the notes are permeated with [the attorneys'] inferences." and emphasizing that such a decision "must be made on a case-by-case basis"); *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) (finding that any work product protection that had previously attached to "executed affidavits of non-party witnesses" had been waived when "the lawyer elected to serve and file them"); *S.E.C. v. Roberts*, 254

F.R.D. 371, 383 (N.D. Cal. 2008) (declining to order disclosure of interview notes taken by attorney, where, in light of the particular facts at issue, such notes were "likely inextricably tied with the attorneys' mental thoughts and impressions"); *Nat'l Union Fire Ins. Co. of Pittsburgh v. AARPO, Inc.*, No. 97 CIV. 1438, 1998 WL 823611, at *1 (S.D.N.Y. Nov. 25, 1998) (reaffirming the general proposition that "where interview notes or transcripts reflect little more than the verbatim statements of a witness, there is no reason for the Court to protect them from disclosure" but reasoning that under the circumstances the transcribed interview notes constituted opinion work product where the notes encompassed "transcriptions of discussions between a lawyer, an investigator and a cooperating witness in which discussion of the facts is intermingled with conversations concerning the development of the case that do reveal counsel's thought processes and legal theories" and concluding that "[i]t would not be possible to separate out those parts that are factual from those that disclose theories and thought processes in a way that would not distort the witnesses' statements."). As such, none of these cases contravenes the Court's ruling here or otherwise necessitates a heightened level of scrutiny based upon the specific set of facts and circumstances noted.

## V. CONCLUSION

For the reasons set forth in this Memorandum and Order, Defendants' motion to compel is GRANTED, in part, and DENIED, in part. Plaintiff shall produce the withheld Interview Memoranda to the Defendants within ten (10) days.


**SO ORDERED.**

Dated:  Central Islip, New York
        March 31, 2017

/s/ A. Kathleen Tomlinson

A. KATHLEEN TOMLINSON
U.S. Magistrate Judge