**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

IN RE SYMBOL TECHNOLOGIES, INC.  )
SECURITIES LITIGATION             )
                                  )   Case No.: 05-cv-3923
                                  )   (DRH-AKT)
                                  )
                                  )
                                  )
                                  )
                                  )
_____  )


**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**


**POMERANTZ LLP**
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Fax: (212) 661-8665


*Class Counsel*

## TABLE OF CONTENTS

I.     OVERVIEW OF THE LITIGATION ............................................................................ 1

       A.     Filing of the Amended Complaints and Defendants' Motion to Dismiss............. 2

       B.     Lead Plaintiff's Motion For Class Certification ...................................................... 2

       C.     Discovery .................................................................................................................. 2

       D.     Settlement Negotiations ........................................................................................... 4

       E.     Preliminary Approval and Notice ............................................................................ 4

II.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................................ 5

       A.     The Settlement Is Entitled to a Presumption of Fairness Because it is the Product
              of Arm's-Length Negotiations Among Experienced Counsel And A Mediator's
              Recommendation ...................................................................................................... 6

       B.     The Settlement is Substantively Fair, Reasonable and Adequate Under the
              *Grinnell* Factors ........................................................................................................ 8

              1.     Continued Litigation Would be Complex, Expensive, and Protracted ...... 9

              2.     The Reaction of the Class Members to the Settlement ............................ 10

              3.     Lead Plaintiff Had Sufficient Information to Make Informed Decisions
                     About Settling This Case ......................................................................... 12

              4.     Lead Plaintiff's Case is Strong, But Entails Risks ................................... 14

                     a.     Risk of Establishing Liability ....................................................... 15

                     b.     Risk of Establishing Loss Causation and Damages ..................... 16

              5.     The Risk Of Maintaining Class Action Status Throughout The Trial ..... 19

              6.     The Amount Offered in the Settlement ..................................................... 19

       C.     The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P.
              23(e) ....................................................................................................................... 21

III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ......................... 22

IV.   CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx)
   2014 U.S. Dist. LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ...................................................18

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...........................................................................8, 21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).......................................................................... *passim*

*City of Providence v. Aéropostale*, No. 11 Civ. 7132 (CM),
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014)...........................8, 9, 14, 22

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................6

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).......................................................................................16

*Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS),
   2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010),
   *aff'd*, 634 F.3d 647 (2d Cir. 2011) .......................................................................16

*Xuechen Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM) (GWG),
   2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. Sep. 4, 2014).......................................7

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).............................................................................8

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH),
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) .......................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .......................................................................17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................14, 22

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597,
   2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) .......................................9

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx),
2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .....................................................18

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................10, 11, 16, 23

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV. 5575 (SWK),
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................................................................... *passim*

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................................. *passim*

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
999 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................................6

*In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS),
2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 19, 2000).........................................................20

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d. Cir. 2001).................................................................................................20

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................................6

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................................................9

*In re Datatec Sys. Inc. Sec. Litig.*, No. 04-CV-525 (GEB),
2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007)...........................................................23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV- 3400 (CM) (PED),
2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) .....................................................19

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................7

*In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510,
2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Apr. 19, 2007) ........................................................9

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ....................................................................... *passim*

*In re Heritage Bond Litig.*, MDL Case No.: 02-ML-1475 DT,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .....................................................15

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................5, 12, 17, 22

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................9

*In re Marsh & McLennan Cos., Sec. Litig.*, No. 04 CIV. 8144 (CM),
  2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ....................................5, 18, 19, 22

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK),
  2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007) ........................................11, 20

*In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS,
  2000 U.S. Dist. LEXIS 304 (S.D.N.Y. Jan. 18, 2000) ...........................................23

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...................................................................5

*In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP
  2014 U.S. Dist. LEXIS 92951 (S.D.N.Y. July 8, 2014) ........................................18

*In re Scientific Atl., Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ................................................................17

*In re Sony Corp. SXRD*,
  448 F. App'x 85 (2d Cir. 2011) .........................................................................8

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP),
  2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) .........................................14

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................9

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................6, 7

*In re Warner Comm. Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................................18

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................9, 14, 20

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 (CM),
  2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 24, 2014) .......................................8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................10

*Van Oss v. New York*, No. 10 CIV. 7524 (SAS),
   2012 U.S. Dist. LEXIS 91684 (S.D.N.Y. Jul. 2, 2012) ........................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................... *passim*

*Weseley v. Spear, Leeds & Kellogg*,
   711 F. Supp. 713 (E.D.N.Y. 1989) .................................................................................9

## **Statutes**

Exchange Act § 20(a)....................................................................................................2

PSLRA, 15 U.S.C. § 78u-4(a)(7)...........................................................................13, 21

Securities Exchange Act of 1934 § 10(b) ......................................................................2

## **Rules**

Federal Rules of Civil Procedure Rule 23 ...................................................1, 18, 21, 22

Rule 26(f)......................................................................................................................2

Lead Plaintiff and Class Representative Ironworkers Local #580 Pension Fund ("Lead Plaintiff" or "Plaintiff"), through its undersigned counsel ("Class Counsel"), submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 23(e) for final approval of the class action Settlement, as set forth in the Stipulation and Agreement of Settlement, dated April 30, 2018 (the "Settlement Stipulation"). This Action has been settled for a $15 million cash payment. The Settlement will inure to the benefit of investors in Symbol Technologies, Inc. ("Symbol" or the "Company"). The Defendants are Symbol, Salvatore Iannuzzi ("Iannuzzi"), Todd Abbott ("Abbott"), James M. Conboy ("Conboy"), William R. Nuti ("Nuti") and Mark T. Greenquist ("Greenquist") (collectively, the "Defendants"). The Settlement results from Lead Plaintiff's vigorous case prosecution over more than twelve years and arm's-length settlement negotiations between the Parties.[1]

## I.   OVERVIEW OF THE LITIGATION[2]

On August 16, 2005, Robert Waring filed a putative class action complaint styled as *Robert Waring v. Symbol Technologies Inc, et al.*, No. 2:05-cv-03923-DRH-AKT (the "Action").   ECF No. 1. On October 31, 2005, the Court "So Ordered" a stipulation consolidating eight actions and requiring all future filings in the consolidated action to use the caption *In re Symbol Technologies, Inc. Securities Litigation*, No. 05-cv-03923. On April 26,

---

[1] Unless otherwise defined, all capitalized terms used herein have the meaning ascribed to them in the Settlement Stipulation. *See* ECF No. 211.

[2] The Declaration of Michael J. Wernke in Support of Lead Plaintiff's Motion For Final Approval of The Proposed Class Action Settlement and Plan of Allocation, and Class Counsel's Motion For Approval of Attorneys' Fees and Expenses ("Wernke Declaration" or "Wernke Decl."), filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation for the Settlement proceeds. All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Wernke Declaration.

1

2006, the Court entered an order appointing Ironworkers Local #580 Pension Fund as Lead Plaintiff, and Pomerantz LLP as Lead Plaintiff's Counsel. ECF No. 24.

### A.     Filing of the Amended Complaints and Defendants' Motion to Dismiss

On August 30, 2006, Lead Plaintiff filed the Consolidated Amended Class Action Complaint ("Amended Complaint") alleging violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against all named defendants, and alleging violations of § 20(a) of the Exchange Act against Iannuzzi, Abbott, Arthur O'Donnell, Conboy, Nuti and Greenquist. ECF No. 26.

On February 26, 2007, Defendants filed a motion to dismiss the Amended Complaint, which was thereafter fully briefed. ECF No. 44. On December 3, 2013, the Court denied defendants' motion to dismiss. ECF No. 80. On January 31, 2014, defendants filed their Answer to the Amended Complaint, denying all allegations of wrongdoing and liability. ECF No. 83.

### B.     Lead Plaintiff's Motion For Class Certification

On September 29, 2014, Lead Plaintiff filed its motion for class certification, defendants' opposition papers and Lead Plaintiff's reply papers.  ECF No. 100.

On June 25, 2015, the Court granted Lead Plaintiff's motion for class certification (ECF No. 132), and through an August 3, 2015 Order certified a class consisting of all investors who purchased Symbol common stock between April 29, 2003 and August 1, 2005, inclusive and who were injured by virtue of the misconduct alleged. On June 20, 2016, the Court granted the parties' joint motion to modify the definition of the class to consist of all investors who purchased Symbol common stock between March 12, 2004 and August 1, 2005 (the "Class Period"), inclusive and who were injured by virtue of the misconduct alleged.

### C.     Discovery

Discovery commenced following the Court's denial of Defendants' motion to dismiss. On February 18, 2014, Lead Plaintiff and Defendants filed a joint Rule 26(f) discovery plan.

ECF No. 84. On February 21, 2014, the Court held a scheduling conference. Pursuant to the Court's instruction during the discovery conference, the parties submitted a Proposed Civil Case Management Plan and Scheduling Order on March 3, 2014. ECF No. 86.

Lead Plaintiff served document requests on defendants on January 31, 2014 and April 22, 2014. ¶ 42. Defendants served their responses and objections on March 24, 2014 and May 22, 2014. *Id.*

Lead Plaintiff also served subpoenas for the production of documents on various third-parties, including Ernst & Young, Deloitte & Touche LLP, EisnerAmper LLP, Chadbourne & Parke LLP, Kasowitz, Benson, Torres & Friedman LLP, and Scansource, Inc., pursuant to which documents were produced. ¶ 43.

On February 23, 2015, Lead Plaintiff served Defendants with Lead Plaintiff's first set of interrogatories. ¶ 44. On March 2, 2015, Lead Plaintiff served Defendants with Lead Plaintiff's second set of interrogatories.  Defendants responded to both sets of interrogatories on April 1, 2015. *Id.*

Pursuant to Lead Plaintiff's document requests, Defendants have produced (and Lead Plaintiff has reviewed) approximately 300,000 pages of documents. ¶ 45.

On October 31, 2015, Lead Plaintiff served Defendants with the expert reports of Steven P. Feinstein, Ph.D., Steven Henning, and David Taber. On December 11, 2015, Defendants served Lead Plaintiff with the expert reports of R. Glenn Hubbard, Ph.D., Paul Gompers, Ph.D., David Tabak, Ph.D., and J. Duross O'Bryan. ¶¶ 47-48. On April 22, 2016, defendants served Lead Plaintiff with the expert report of Brooks L. Hilliard. On May 24, 2016, Lead Plaintiff served defendants with the rebuttal expert report of David Taber. ¶ 49.

During the course of discovery, the Parties took approximately 40 depositions in 12 cities across the country.  ¶ 46. The parties disputed three motions to compel and Lead Plaintiff prosecuted a motion for sanctions for the spoliation of evidence. ¶¶ 50-74.

3

Once fact and expert discovery was complete and "ready for trial", on February 6, 2018, the Court Ordered that Defendants serve their motion for summary judgment by March 9, 2018. ECF No. 206. Upon a joint motion by the Parties informing the Court that they had scheduled a mediation session for March 15, 2018 (ECF No. 207), the Court ordered that the briefing of summary judgment would be extended to April 30, 2018 to allow the Parties to focus resources on mediation. *Id*.

### D.     Settlement Negotiations

On July 30, 2015, Class Counsel and Defendants' Counsel participated in a mediation session before former United States District Judge Layn R. Phillips of Phillips ADR. ¶ 76. In advance of that session, the parties exchanged detailed mediation statements with numerous exhibits, addressing liability and damages, which were submitted to Judge Phillips. ¶ 77. That mediation session ended without any agreement being reached. ¶ 78.

On March 15, 2018, Class Counsel and Defendants' Counsel participated in a full-day mediation session before Judge Phillips. ¶ 79. In advance of that session, the Parties exchanged and submitted to Judge Phillips supplemental mediation statements with numerous exhibits, addressing factors impacting liability and damages that arose during the approximately 30 months since the last mediation. *Id.* That mediation session culminated in Judge Phillips issuing a mediator's proposal that the Action settle for $15,000,000 in cash, subject to certain terms and conditions, which was accepted and memorialized in a term sheet dated March 15, 2018 (the "Term Sheet"). *Id.* On March 29, 2018, counsel for Lead Plaintiff and Defendants notified the Court that a settlement in principle had been reached between the Parties. ECF No. 208; ¶ 80.

### E.     Preliminary Approval and Notice

On May 22, 2018, the Court preliminarily approved the Settlement permitting the notice process to begin. ECF No. 214.  To date, 106,998 Notice of Proposed Settlement of Class Action (the "Settlement Notice") and the Proof of Claim and Release (the "Claim Form" and,

collectively with the Settlement Notice, the "Settlement Notice Packet") have been sent by first-class mail to potential Class Members, and a Summary Notice has been timely published transmitted over the *Globe Newswire* and published in *Investor's Business Daily*. *See* Wernke Decl., Ex. 2 (Declaration of Justin R. Hughes Regarding: (A) Notice of Pendency Mailing; (B) Report on Exclusion Requests Received; (C) Mailing of the Settlement Notice Packet; (D) Publication of the Summary Notice; (E) Updates to Settlement Website; and (F) Report on Objections Received to Date ("KCC Decl.")), ¶¶ 16, 17. Copies of the Settlement Notice Packet were posted in downloadable form on a website specific to the Settlement, www.symboltechnologiessecuritieslitigation.com. *Id.* ¶¶ 9, 18. The deadline to object to any aspect of the Settlement is October 9, 2018. To date, there have been no objections and only 11 requests for exclusion. *Id.* ¶¶ 11, 19.

## II.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and quotations omitted). Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."). Furthermore, "[i]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *In re Marsh & McLennan Cos., Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *17 (S.D.N.Y. Dec. 23, 2009) (same).

### A. The Settlement Is Entitled to a Presumption of Fairness Because it is the Product of Arm's-Length Negotiations Among Experienced Counsel And A Mediator's Recommendation

Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to the recommendations of counsel regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Parties' negotiations, with the assistance of a third-party mediator, did not commence until after Class Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case. ¶ 75. Specifically, the litigation had been ongoing for over twelve years, fact and expert discovery had been completed, and summary judgment and the joint pretrial order were on the horizon.  As part of the mediation process facilitated by Judge Layn R. Philips of Phillips ADR, the Parties exchanged written statements and presentations concerning liability, damages, loss causation, and ability to pay, which informed each side as to the strengths and weaknesses of their respective cases.  Declaration of Layn R. Phillips ("Phillips Decl." or "Mediator Decl."), Wernke Decl. Ex. 4, at ¶ 6. The Parties also engaged in-person mediation on July 30, 2015, and an all-day session on March 15, 2018, where Judge Phillips ultimately made a mediator's recommendation that the Action be settled for $15 million, which the Parties accepted. *Id.* at ¶ 9.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Judge Layn R. Phillips support the conclusion that the Settlement is presumptively fair, adequate, and reasonable.  *See In re Bear Stearns Cos. Sec.,*

6

*Derivative & ERISA Litig.*, 999 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement where parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (approving settlement and finding it was entitled to a presumption of fairness where the "settlement was the product of prolonged, arms-length negotiation" facilitated by Judge Phillips, "a respected mediator"). As Judge Phillips explains: "it is apparent from the submissions and presentations made by Class Counsel before and during the mediation sessions, as well as from my numerous discussions with them, that Class Counsel performed a thorough examination of the merits of the claims in this action." Phillips Decl. at ¶ 13.

> I believe that the $15 million settlement represents a well-reasoned and sound resolution of highly uncertain litigation and that the result is fair, adequate, reasonable and in the best interests of the Class. Therefore, I respectfully endorse final approval of the Settlement by the Court.

*Id.* at ¶ 12.

The conclusion of Lead Plaintiff and Class Counsel that the Settlement is fair, adequate, and reasonable and in the best interests of the Class further supports its approval. Class Counsel, which has extensive experience in prosecuting securities class actions, has also concluded that the Settlement is in the Class's best interests, and their judgment is entitled to "great weight." *Telik*, 576 F. Supp. 2d at 576; *Xuechen Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM) (GWG), 2014 U.S. Dist. LEXIS 126738, at *12 (S.D.N.Y. Sep. 4, 2014) ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

These facts strongly weigh in favor of affording the Settlement the presumption of fairness and granting final approval. *See Van Oss v. New York*, No. 10 CIV 7524 (SAS), 2012 U.S. Dist. LEXIS 91684, at *3 (S.D.N.Y. Jul. 2, 2012) (finding "a strong presumption of fairness

attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations.").

### B.     The Settlement is Substantively Fair, Reasonable and Adequate Under the *Grinnell* Factors

The Settlement is also substantively fair, adequate, and reasonable. It is well-established that "in this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors", which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart,* 396 F. 3d at 1117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

 "[N]ot every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances," *City of Providence v. Aéropostale*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *10 (S.D.N.Y. May 9, 2014), (citation and quotations omitted), aff'd sub nom. *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). A court's function in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved. *See*, e.g., *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 (CM), 2014 U.S. Dist. LEXIS 37872, at *21-*22 (S.D.N.Y. Mar. 24, 2014).

As demonstrated below, the Settlement satisfies the criteria for approval under *Grinnell*.

### 1.    Continued Litigation Would be Complex, Expensive, and Protracted

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *14 (quoting *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)). Indeed, courts recognize that "[s]ecurities class actions are generally complex and expensive to prosecute," *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 U.S. Dist. LEXIS 68964, at *36 (E.D.N.Y. Apr. 19, 2007).[3] Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

This Action is no exception. Further litigation would have required substantial additional expenditures of time and money, involving complex issues of law and fact, with a significant risk of a lower recovery. *See In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004 U.S. Dist. LEXIS 24129, at *5-*6 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition

---

[3] *See similarly Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989).

to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Substantial time and expense would also be expended in further motion practice, including at the summary judgment stage, and preparing the case for trial. The trial itself would be time-consuming, expensive, and uncertain – and no matter the outcome, appeals would be likely.  Here, the complexity and risk are compounded by the fact that this Action has been ongoing for over twelve years.

Even if Lead Plaintiff prevailed through motion practice, and ultimately won at trial and on appeal, the appeals process could span several years, during which the Class would receive nothing. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

In contrast, the Settlement results in an immediate and substantial tangible recovery for the Class, without the risk, expense, and delay of further litigation. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class).  This factor favors approval.

## 2.     The Reaction of the Class Members to the Settlement

The reaction of the class to a proposed settlement is a significant factor to weigh in considering its fairness and adequacy. *See Bear Stearns*, 909 F. Supp. 2d at 266-67. The absence of valid objections and low number of requests for exclusion provides evidence of Class

members' approval of the terms of the Settlement. *See Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Am. Bank Note*, 127 F. Supp. 2d at 425 (noting "the lack of objections may well evidence the fairness of the Settlement").

Following class certification by the Court and the Court's December 21, 2017 Order Establishing Program and Schedule for Class Notice, Kurtzman Carson Consultants LLC ("KCC") mailed the Notice of Pendency of Class Action ("Pendency Notice") to 105,417 potential Class Members. KCC Decl. ¶ 7. KCC also established a website to provide members of the Class with information concerning the Action, including the Pendency Notice. *Id*. ¶ 9. KCC also caused the Notice of Pendency Summary Notice to be transmitted over GlobeNewswire. *Id*. ¶ 10. The Pendency Notice informed potential Class Members of their right to request exclusion from the Class. *Id.* ¶ 11. As of September 20, 2018, KCC has received only 11 timely requests for exclusion from the Class. *Id*.

Pursuant to the Preliminary Approval Order (ECF No. 214), the Court-appointed Claims Administrator, KCC, began mailing copies of the Settlement Notice and the Claim Form (together, the "Notice Packet") on June 5, 2018. KCC Decl. ¶ 13. As of September 20, 2018, KCC had disseminated a total of 106,998 Notice Packets to potential members of the Class and nominees. *See id*., ¶ 16. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over GlobeNewswire on June 11, 2018. *See id*., ¶ 17. The Settlement Notice contains a description of the Action, the Settlement, and information about Class Members' rights to participate in the Settlement by submitting a Claim Form; to object to the Settlement, the Plan of Allocation, or Class Counsel's motion for attorneys' fees and expenses. While the Court's deadline for Class Members to object – October 9, 2018 – has not yet passed, to date, no objections have been received. KCC Decl. at ¶ 19; Wernke Decl. at ¶ 96.

The Class's favorable reaction supports approving the Settlement. *See Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of

exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33-*34 (S.D.N.Y. Feb. 1, 2007) (finding that 34 requests for exclusion in response to the mailing of nearly 400,000 notices was a "minimal" number that "militates in favor of approving the settlement as be fair, adequate, and reasonable.").

### 3. Lead Plaintiff Had Sufficient Information to Make Informed Decisions About Settling This Case

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, the Parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement." *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *37; *IMAX*, 283 F.R.D. **a**t 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

Here, Settlement was achieved only after over twelve years of litigation and after the Parties had completed all fact and expert discovery. Before entering into the Settlement, Class Counsel reviewed over 300,000 pages of documents produced by Defendants and participated in 40 fact and expert depositions and thoroughly evaluated the strengths and weaknesses of Lead Plaintiff's claims. ¶¶ 45-46, 75. As set forth in greater detail in the Wernke Declaration, over the over twelve years of prosecution of this Action, Class Counsel extensively developed the record by, among other things: (1) reviewed and analyzed Symbol's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and industry and investment

conference transcripts, and other public statements; (2) collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on Symbol; (3) reviewed and analyzed stock trading data relating to Symbol; (4) reviewed Lead Plaintiff's qualifications to serve as a class representative; (5) reviewed and analyzed other publicly available information regarding Symbol, including media and analyst reports; (6) consulted with experts concerning the effect of the alleged fraud on Symbol's stock price; (7) interviewed and consulted with various witnesses; (8) drafted the amended complaint in compliance with the PSLRA; (8) researched and drafted a successful opposition to Defendants' motion to dismiss; (9) consulted with experts concerning market efficiency for Symbol's securities; (10) defended two depositions of Lead Plaintiff; (11) researched and drafted a successful motion for class certification, which included an expert report on market efficiency by Dr. Steven Feinstein; (12) drafted and served discovery requests, including requests for production of documents and interrogatories to Defendants; (13) served subpoenas for the production of documents on third-parties; (14) engaged in meet and confers concerning discovery requests; (15) drafted and served a motion for sanctions for the spoliation of evidence that included substantial research and two evidentiary hearings; (16) reviewed and coded over approximately 300,000 pages of documents produced by Defendants and third-parties; (17) noticed and prepared for approximately 40 depositions; (18) served and responded to a total of eight expert reports (and participated in depositions of each) regarding, among other things, industry-specific sales databases and platforms, accounting and SEC disclosure issues, market efficiency, loss causation, and damages; (19) prepared for and engaged in two mediation sessions, including drafting a mediation statement and reply statement, as well as continued negotiation efforts over the weeks following the mediation in order to finalize the Settlement.  Wernke Decl. ¶¶ 15-80.

In light of these efforts, Lead Plaintiff and Class Counsel were in an excellent position to evaluate the strengths of their allegations against Defendants as well as the mediator's recommendation to settle the Action for $15 million before further time and resources were

expended on further litigation. Indeed, courts routinely approve settlements where absolutely no merits discovery has been conducted. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *37; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *20 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.    Lead Plaintiff's Case is Strong, But Entails Risks

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

While Lead Plaintiff and Class Counsel believe that they could ultimately prevail against Defendants, they recognize that numerous risks and uncertainties would accompany further

litigation of the Class's claims. "[S]ecurities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *14 (S.D.N.Y. May 9, 2014) (internal quotations omitted); *In re Heritage Bond Litig.*, MDL Case No.: 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). Even for cases that survive a motion to dismiss, a positive result is far from guaranteed. Cases that reach summary judgment are often undercut by a ruling. For those cases that make it to trial (in whole or in part), it is always a challenge and never a guarantee to succeed in establishing liability. For the reasons stated below, this case likely would have been no different.

### a.    Risk of Establishing Liability

In order to prevail on its claims, Lead Plaintiff would bear the burden of proving falsity, materiality, reliance, scienter, loss causation, and damages.  Each of these issues would be vigorously contested. "The difficulty of establishing liability is a common risk of securities litigation," particularly where, as here, Defendants had credible defenses. *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39.

There can be no doubt that Lead Plaintiff and the Class faced significant hurdles to establishing liability. As set forth in more detail at ¶¶ 82-85 in the Wernke Declaration, the core of Lead Plaintiff's case is that during the Class Period there were material weaknesses in Symbol's internal controls over financial reporting, which caused Symbol to have no reasonable basis for issuing accurate revenue guidance, and Symbol executives nevertheless stated the Symbol's internal controls were "effective" and issued revenue guidance for which they had no reasonable basis. Investors were harmed when the market learned that the Company's financial results fell short of its guidance and as the Company's executives resigned contemporaneously with those results. ¶ 87.

Lead Plaintiff would have confronted considerable challenges in establishing falsity and scienter. Defendants would have raised credible arguments that their statements that Symbol's internal controls were overall "effective" were not materially misleading because these statements were qualified with identification of certain deficiencies in those controls. ¶ 83. Defendants would also likely argue that the revenue guidance provided to the market was not false and misleading because the statements were forward-looking statements of opinion for which Defendants had based on a reasonable analysis. ¶ 84.

Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *see In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Although Lead Plaintiff and Class Counsel believe that the Defendants knowingly made false statements, satisfying Lead Plaintiff's burden of proof would, as in any case, be a challenge. *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial."). Defendants would argue that Lead Plaintiff could not prove scienter because Defendants subjectively believed that Symbol's internal controls surrounding revenue forecasting were effective and that they believed the revenue guidance issued to the market was accurate. Wernke Decl. ¶ 85. Thus, Defendants would have likely argued that the market was aware of certain weaknesses and that management held an honest belief that Symbol's guidance was reasonable and accurate. While Lead Plaintiff would have argued that the misconduct of certain Defendants supported an inference of scienter, had the litigation continued, it was not guaranteed that Lead Plaintiff would have prevailed at summary judgment and trial

### b.      Risk of Establishing Loss Causation and Damages

If the litigation had proceeded, Lead Plaintiff could have encountered significant causation and damages defenses. Lead Plaintiff must establish that it was the revelation of

Defendants' misrepresentations or omissions which caused Plaintiff to incur a loss, and not non-fraud related business or macroeconomic factors. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *Global Crossing*, 225 F.R.D. at 459. Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *Id.*

The Parties held extremely disparate views with respect to loss causation and damages, and Defendants' challenges to loss causation and damages could pose a serious risk to the Class at summary judgment, trial, and on appeal. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

Specifically, Defendants would argue that Symbol's revenue misses and the resulting decline in stock price were not a result of any false revenue guidance but, rather, weak economic conditions that affected Symbol and its competitors, resignation of certain of Symbol's officers, or other news unrelated to the alleged fraud. ¶ 87.  If Defendants were to prevail on such an argument at any stage, it would significantly reduce potential damages. ¶ 88-89.

Moreover, in complex securities cases, it is axiomatic that the Parties would rely on expert testimony to assist the jury in determining damages. *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Lead Plaintiff would argue that the stock price declines were attributable to the disclosure and corrections of the alleged

17

misstatements and omissions and present expert testimony addressing loss causation and damages, Defendants would proffer their own experts to offer contrary testimony with respect to all of the price declines. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts.").

> In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 U.S. Dist. LEXIS 118442, at *26 (C.D. Cal. Apr. 29, 2014) ("battle of the experts" are "inherently risky"); *In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 U.S. Dist. LEXIS 92951, at *12, *18-*19 (S.D.N.Y. July 8, 2014) (entering summary judgment in favor of defendants after excluding Plaintiffs' experts on damages pursuant to *Daubert*); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *29-*31 (C.D. Cal. July 28, 2014) (noting that plaintiffs must turn to experts to disaggregate losses from nonactionable and actionable factors).

Had any of the arguments defendants' raised throughout the litigation been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery for the Class. *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *21 ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). Further, Lead Plaintiff would have had to prevail at several stages –summary judgment, trial – and if it prevailed on those on the appeals that were likely to follow. The Settlement avoids these litigation risks and guarantees the Class a favorable and immediate cash recovery of $15 million. As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### 5.     The Risk Of Maintaining Class Action Status Throughout The Trial

While Lead Plaintiff successfully obtained class certification, there was no guarantee that status would remain throughout the trial, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *23. The Settlement avoids the uncertainty with respect to the maintaining certification and, thus, supports approval of the Settlement.

### 6.     The Amount Offered in the Settlement

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *57 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Lead Plaintiff submits that the $15 million settlement is well within the range of reasonable in light of the best possible recovery and all the attendant risks of litigation. If Lead Plaintiff was able to establish liability, the realistic maximum recoverable damages at trial range from of approximately $40 million to $400 million, depending on which alleged false statements, corrective disclosures and corresponding stock price declines are included in the analysis. Thus, the $15 million settlement represents a recovery of between 3.75% and 37.5% of the estimated damages – well within the historical norm for settlements in securities class actions. *See, e.g.,* Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis* at 7 (2017), https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis (noting that the median securities class-action settlement in 2016 was for 2.5% of estimated damages). *See, e.g., In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365. This case has been pending for over twelve years, and could be expected to last several more years (with appeals) had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater

recovery." *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2000 U.S. Dist. LEXIS 6920, at *13 (S.D.N.Y. May 19, 2000).

In sum, the *Grinnell* factors – including Lead Plaintiff's well-developed understanding of the strengths and weaknesses of the case, and the significant risks, expense, and delay of further litigation – support a finding that the Settlement is fair, adequate, and reasonable.

### C.  The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)

"The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). The Settlement Notice satisfied Fed. R. Civ. P. 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. The Settlement Notice also satisfies Fed. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Both the substance of the Pendency Notice and Settlement Notice and the method of dissemination to potential members of the Class satisfy these standards. The notice program was carried out by KCC, a nationally-recognized claims administrator. ¶ 91. The Pendency Notice and Settlement Notice contain the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Class Members' right to request exclusion from the Class and to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on

Class Members. KCC Decl., Ex. A. The Settlement Notice also provides instructions for submitting a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund, relevant deadlines, and contact information. *Id.*, at Ex. D.

As discussed above, in accordance with the Preliminary Approval Order, as of September 20, 2018, KCC had mailed 106,998 copies of the Notice Packet by first-class mail to potential members of the Class and nominees. *See* KCC Decl. at ¶ 16. KCC also caused the Summary Notice to be published in *Investor's Business Daily* on June 11, 2018 and transmitted over the *GlobeNewswire* on June 11, 2018. *See id.*, ¶ 17. The Notice Packet listed a toll-free telephone number and contact information for Class Counsel and KCC. *See id.*, ¶ 8 & Ex. D (Settlement Notice) at 9. KCC also established a website to provide members of the Class with information concerning the Settlement, all applicable deadlines, and copies of the Settlement Notice containing the Plan of Allocation, Preliminary Approval Order, the Claim Form and the Stipulation. *See* KCC Decl., ¶¶ 9, 18.

Notice via first-class mail to all members of the Class who could be identified with reasonable effort, supplemented with notice in widely-circulated publications and over a newswire, and a dedicated website, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Advanced Battery*, 298 F.R.D. at 182-83 (individually mailed postcards and publishing through *Investor's Business Daily* and *PR Newswire* met the notice standard); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *16.

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270 (same). In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *41 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation is set forth in the Settlement Notice disseminated to the Class. KCC Decl., Ex. D, at 4-7. Class Counsel developed the Plan of Allocation in consultation with Lead Plaintiff's damages expert with the objective of equitably distributing the Net Settlement Fund. The Plan of Allocation was developed based on an event study, which calculated the estimated amount of artificial inflation in the per share closing prices of Symbol common stock on each day of the Class Period as a result of Defendants' alleged false and misleading statements and omissions. Wernke Decl. Ex. 3 ("Feinstein Decl."), at 6. In calculating this estimated alleged artificial inflation, the damages expert considered price changes in Symbol's common stock in reaction to the alleged corrective disclosures, adjusting for factors attributable to market or industry forces and the strength of the claims, as advised by Class Counsel. *Id*. Under the Plan of Allocation, a "Recognized Loss" or "Recognized Gain" will be calculated for each purchase of Symbol common stock during the Class Period for which adequate documentation is provided. *Id*. at 8. The calculation of Recognized Claims is explained in detail in the Settlement Notice and incorporates several factors, including when and for what price Symbol common stock were purchased and sold, the estimated artificial inflation in Symbol common stock's respective prices at the time of purchase and sale, as determined by Lead Plaintiff's damages expert, and the strength of the claims. *See In re Datatec Sys. Inc. Sec. Litig*., No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *15 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Claim.

Class Counsel as well as Lead Plaintiff's damages expert believe that the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as result of the conduct alleged in the Action, (Wernke Decl. ¶ 99; Feinstein Decl. ¶ 13), and their opinion as to allocation is entitled to

"considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430.

Moreover, in response to over 106,998 Settlement Notices sent, to date, no objections to the Plan of Allocation have been received, suggesting that the Class also finds the Plan of Allocation to be fair and reasonable. *See* KCC Decl., ¶ 16; Wernke Decl., ¶ 96; *In re Nasdaq Mkt.-Makers Antitrust Litig*., No. 94 Civ. 3996 RWS, 2000 U.S. Dist. LEXIS 304, at *6 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan). Moreover, similar plans have repeatedly been approved by courts in this District. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

For each of the forgoing reasons, Lead Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

## IV.   CONCLUSION

Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and the proposed Plan of Allocation.

Dated:  September 25, 2018

Respectfully Submitted,

**POMERANTZ LLP**

/s/ *Michael J. Wernke*
Marc I. Gross
Jeremy A. Lieberman
Michael J. Wernke
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: migross@pomlaw.com

jalieberman@pomlaw.com
mjwernke@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Joshua B. Silverman
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

***Class Counsel for Lead Plaintiff and for
the Class***

25

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael J. Wernke*
Michael J. Wernke
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Tel: (212) 661-1100
Fax: (917) 463-1044

mjwernke@pomlaw.com

26